Slip Op. 06-49

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| THE HOME DEPOT, U.S.A., INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | Before: Carman, Judge |
| v. | : | |
| | : | Consol. Court No. 00-00061 |
| UNITED STATES, | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

[Judgment for Plaintiff in part and Defendant in part.]

Dated: April 7, 2006

*Bryan Cave LLP* (*Adam J. Thurston, David R. Stepp, Michael B. Zara*), Los Angeles, CA, for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, U.S. Department of Justice; *Jack S. Rockafellow*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Beth Brotman*, Of Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Bureau of Customs and Border Protection, for Defendant.

**OPINION**

**CARMAN, Judge:** The matter before this Court follows a bench trial in October 2005. Plaintiff Home Depot, U.S.A., Inc., ("Home Depot" or "Plaintiff") challenges the United States Customs Service's[1] ("Customs" or "Defendant") classification of lighting fixtures. The subject goods are identified by Stock Keeping Unit ("SKU") numbers assigned by Home Depot. This case involves a total of 124 SKUs, twenty of which are agreed upon represented SKUs. This

---

[1] Now known as the United States Bureau of Customs and Border Protection.

consolidated case includes nine court numbers: 00-00061; 00-00062; 00-00063; 00-00064; 00-00363; 00-00364; 00-00365; 00-00440; and 01-00107.  This Court finds for Plaintiff in part and for Defendant in part as discussed herein.

## BACKGROUND

Home Depot is the importer of record for the entries which are the subject merchandise at issue.  Customs classified the subject merchandise – various lighting fixtures – under the Harmonized Tariff Schedule of the United States ("HTSUS") subheading 9405.10.60 with a 7.6 percent duty.  Home Depot claims the subject merchandise is properly classified under HTSUS subheading 9405.10.80 with a 3.9 percent duty.[2]  Home Depot timely filed protests and summons, and all liquidated duties were paid.  Nine cases were properly filed with this court between December 2001 and January 2002.  In July 2003, parties met in Atlanta, Georgia, to review physical samples of the merchandise and attempted to designate representative SKUs with settlement as an ultimate goal.  These negotiations, however, were unsuccessful.  In September 2004, parties began a parallel track of discovery in preparation of litigation.  In March 2005, this Court granted parties joint motion to consolidate cases.  This Court held a bench trial during the week of October 17th-21st, on October 24th, during October 26th-28th, and adjourned on November 2, 2005.

_____

[2] This Court notes that the subject merchandise was entered into the customs territory of the United States during the years of 2001 and 2002.  During this period of import, the classifications and duty rates remained unchanged.

## STANDARD OF REVIEW

Jurisdiction of this Court is found under 28 U.S.C. § 1581(a) (2000). Although Custom's decisions are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2639(a)(1) (2000), this Court makes its determinations upon the basis of the record before it, not upon the record developed by Customs. *See United States v. Mead Corp.*, 533 U.S. 218, 233 n.16 (2001). Accordingly, this Court makes the following findings of fact and conclusions of law *de novo*. *See* 28 U.S.C. § 2640(a) (2000).

## DISCUSSION

The common issue throughout this consolidated case is the correct classification of the subject goods, more specifically whether metal or non-metal imparts the essential character of the lighting fixtures. Parties stipulated that the proper heading is 9405 and six-digit subheading is 9405.10. The parties assert that the ultimate determination is between two potentially applicable eight-digit subheadings: 9405.10.60 and 9405.10.80.[3] *See* Final Amended Pretrial Order ("Final

---

[3] The relevant heading and subheadings cover:

| | | |
|---|---|---|
| 9405 | Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: | |
| 9405.10 | Chandeliers and other electric ceiling or wall lighting fittings, excluding those of a kind used for lighting public open spaces or thoroughfares:<br>Of base metal: | |
| 9405.10.40 | Of brass...........3.9% ad valorem | |
| 9405.10.60 | Other................7.6% ad valorem | |

Pretrial Order"), Schedule C, ¶ 6. Customs originally classified the subject fixtures under

HTSUS subheading 9405.10.60, claiming that these goods were "of base metal other than of

brass."[4] Home Depot, however, claims the subject merchandise is properly classified under

HTSUS subheading 9405.10.80, challenging that these fixtures are "other than of base metal,"

and the non-metal consists of glass, plastic or wood. Regardless of competing tariff

classifications purposed by parties, this Court is charged with reaching the correct classification.

*See Jarvis Clark Co. v. United States*, 733 F.2d 873, 880 (Fed. Cir. 1984).

Parties urge this Court to adopt a single factor objective test for the essential character

analysis. This the Court cannot do because both statute and case law instructs otherwise.

Plaintiff claims the subject goods are decorative light fixtures, evidenced by Home Depot's

selling these fixtures in a separate department from its utility fixtures, such as mere lamp

holders.[5] (Pl. The Home Depot, U.S.A., Inc.'s Post-Trial Br. ("Pl. Post-Trial Br.") 7.) Plaintiff

advances that "Defendant seeks to remove the 'decorative' from 'decorative light fixtures.'" (Pl.

Post-Tr. Br. 1.) Plaintiff advocates that "this Court can primarily look to the visible surface area

---

    9405.10.80          Other............................3.9% ad valorem

[4] Although in some instances the finish on the metal was brass, polished brass or antique brass, Plaintiff's witness Mr. St. John explained that the metal component is "plated steel with an electroplate polished brass finish." (Trial Tr. 66, Oct. 17.) This Court finds that parties sufficiently demonstrated that the metal base is not "of brass" so that the proper metal subheading for consideration is 9405.10.80, of base metal other than of brass.

[5] A lamp holder "is simply the utility holder that the bulb screws in." (Trial Tr. 77, Oct. 17.) Lamp holders are just one component of these lighting fixtures. Neither a lamp holder nor a lighting fixture, however, emit light. The lamp, which is known in the vernacular as a light bulb, produces light. This Court notes that the subject fixtures are imported without lamps, and there is a separate heading for lamps – 8539 – in the HTSUS. (Trial Tr. 1737, Nov. 2.)

of that fixture" to determine the essential character of the subject fixtures.[6]  (Pl. Post-Tr. Br. 19.)
Defendant offers a different test that focuses on the "structural framework" as the essential
character for all 124 SKUs.  (Def.'s Proposed Finds of Fact & Post-Trial Brief ("Def. Post-Tr.
Br.") 11.)

Both parties' recommendations have appeal.  Industries and parties should be able to rely
on prior case law and decisions because "international trade prospers best when the participants
can rely on established rules and regulations."  *Hemscheidt Corp. v. United States*, 72 F.3d 868,
872 (Fed. Cir. 1995).  However, reliance on uniformity cannot be obtained by forsaking a court's
duty of a proper legal analysis.  Despite the appeal that a single factor, bright line test has for
predictability and uniformity, this Court must reject both parties' suggestions.  An essential
character inquiry requires a fact intensive analysis.  *See Toy Biz, Inc. v. United States*, 26 CIT
816, 828, 219 F. Supp. 2d 1289 (2002).

While Defendant asserts "metal . . .  is always the **only indispensable material** . . .
which function as a structure" (Def. Post-Tr. Br. 2 (footnote omitted)), this Court notes that
structure is only one factor that must be considered.  The same applies to Plaintiff's submission
of a visible surface area bright line rule.  In the case at bar, this Court is to consider all facts in
evidence to determine essential character.  In reviewing an essential character determination in
*Better Home Plastics Corp. v. United States*, the Court of Appeals for the Federal Circuit
("CAFC") saw "no error in the [Court of International Trade's] ultimate conclusion of essential
character" because the trial court "carefully consider[ed] all of the facts" and conducted a

---

[6] Plaintiff notes that "[o]ther facts may override this presumption in a special case, but
this general, objective standard [the visible surface area test] serves the task at hand."  (Pl. Post-
Tr. Br. 19.)

"reasoned balancing of all the facts."  119 F.3d 969, 971 (Fed. Cir. 1997) ("Better Home II").

Although the task is laborious, this Court will accomplish its duty by considering all of the

evidence presented, assigning weight to each piece of evidence, and deciding whether the metal

or non-metal components impart the essential character of the subject fixture.

## I.      FACTS

### A.      Uncontested Facts to Which the Parties Stipulate

The parties agreed upon certain facts, and this Court adopts them.  The Uncontested Facts

to Which the Parties Stipulate ("Uncontested Facts") are as follows:

> 1.      The merchandise at issue in the nine consolidated cases consists of the
>
> lighting fixtures, identified by Stock Keeping Unit ("SKU") number, listed
>
> in the joint report by the parties filed September 20, 2005, entitled *Joint*
>
> *Report Regarding Lighting Fixtures In The Nine Consolidated Cases And*
>
> *Stipulations Regarding Representative Fixtures* (the "Joint Report").[7]
>
> 2.      Plaintiff is importer of the merchandise at issue set forth in the Joint
>
> Report.
>
> 3.      The Court has [j]urisdiction over all of the [] protests and entries listed on
>
> the Joint Report.
>
> 4.      The protests and summonses at issue in the above-captioned nine
>
> consolidated cases were timely filed.

---

[7] This Court notes that the "Amended (10/4/05) Joint Report Regarding Lighting Fixtures in the Nine Consolidated Cases and Stipulations Regarding Representative Fixtures" ("Joint Report"), Schedule K of Final Pretrial Order, supercedes the previous one and reference in this decision is to the Amended (10/4/05) Joint Report.

5.      All liquidated duties have been paid.

6.      The subject merchandise listed on the Joint Report consists of "chandeliers and other electric ceiling or wall lighting fittings, excluding those of a kind used for lighting public open spaces or thoroughfares," within the meaning of subheading 9405.10 of the [HTSUS].

7.      The subject merchandise listed on the Joint Report was classified by Customs as chandeliers and other electric ceiling or wall lighting fittings, excluding those of a kind used for lighting public open spaces or thoroughfares, of base metal [other than of brass], under HTSUS subheading 9405.10.60, and were assessed with duty at the rate of 7.6 percent *ad valorem*.

Final Pretrial Order, Schedule C.

## B.      Findings of Fact Established at Trial

In addition to the Uncontested Facts, this Court finds the following facts were established by a preponderance of the evidence during the bench trial.  The following findings are not exhaustive as specific findings will be discussed in the individual fixture analyses below.

1.      Home Depot imported the subject merchandise into the United States from various countries, under numerous entries, and through different ports.

2.      There are 124 SKUs at issue in this consolidated case for which parties presented evidence during trial.  (Trial Tr. 1785, Nov. 2.)

3.      Of the 124 SKUS at issue, eleven were deemed "representative SKUs" covering twenty "represented SKUs" by stipulation.  (Joint Report.)

4.     The subject goods consist of indoor and outdoor ceiling and wall light fixtures.

5.     The subject goods are sold in Home Depot's decorative light department.

6.     The subject merchandise is for personal homes and their surrounding exterior spaces.

7.     Plaintiff's proposed classification is HTSUS subheading 9405.10.80 with a duty rate of 3.9 percent *ad valorem*.

8.     Plaintiff's fact witness Greg St. John, Interior Lighting Merchant for Home Depot, is credible.

9.     Plaintiff's expert witness David Mintz, Lighting Designer of Mintz Lighting Group, is credible.

10.    Plaintiff's expert witness Alan Goedde, Economist at Freeman & Mills, Inc., in Los Angeles, is credible.[8]

11.    Plaintiff's witness Patricia Golembieski, Senior Analyst of Customs Compliance at Home Depot, is credible.

12.    Plaintiff's witness Edward Kozloski, Corporate Director of Quality at Specialized Technology Resources, Inc. ("STR"),[9] is credible.

---

[8] Although admitted as an expert witness, this Court finds Mr. Goedde's testimony largely irrelevant to the issues in this case.

[9] STR is the consulting firm retained by Home Depot in March 2003 to measure the component visible surface area and weight of the physical samples of the fixtures at issue. "STR provides consumer products testing, auditing and consulting services to major manufactures, importers and retailers around the world." (Trial Tr. 1539, Oct. 28.)

13.     The STR process used to take estimated visible surface area and weight

        measurements is sufficiently reliable.

14.     Defendant's expert witness, Mark S. Rea, who holds a P.h.D. in

        biophysics, is credible.[10]

15.     Subject fixtures are composite goods, but the main two components vying

        for essential character are: (1) base metal, which is not of brass; and

        (2) nonmetal, which is usually glass except for a few instances in which

        plastic or wood replaces glass.[11]

16.     Subject merchandise is imported without lamps.[12]

---

[10] Although admitted as an expert witness, Dr. Rea's lighting expertise "focused on various technical aspects of lighting and the human response to lighting." (Trial Tr. 724, Oct. 21.)  Not only are neither of these aspects of lighting at issue but this Court also notes that the subject fixtures are not imported in an illuminated state.  Therefore, the Court accords minimal weight to Dr. Rea's testimony.

[11] In all but four of the fixtures, glass comprises the main non-metal component.  There are a few instances where plastic – SKUs 342-071, 342-103, and 342-104 – or wood – SKU 630-304 – is considered the main component in lieu of glass.

[12] Parties presented testimony regarding these fixtures in their illuminated state notwithstanding the fact that fixtures are imported without lamps.  (Trial Tr. 684, Oct. 20.)  This Court, however, is confined by the well-established principle that "the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported." *Worthington v. Robbins*, 139 U.S. 337, 341 (1891); *see also Simod Am. Corp. v. United States*, 872 F.2d 1572, 1577 (Fed. Cir. 1989) ("It is a principle of Customs law that imported merchandise is dutiable in its condition as imported.")  Accordingly, testimony regarding the fixtures in their illuminated state will be considered only insofar as it may affect another factor, such as function or marketability.

## II.     EVIDENCE

### A.     Admissibility

Prior to trial, parties submitted respective lists of proposed exhibits for trial.  (Final Pretrial Order, Schedule H-1, H-2.)  Plaintiff originally listed 1341 exhibits, and Defendant offered 23 exhibits to be admitted as evidence.  (Final Pretrial Order, Schedule H-1, H-2; *see also* Pl.'s Mot. for Identification of Ex. Subject to Objection, and Admission into Evidence of Ex. Not Subject to Objection ("Pl. Ex. Mot.").)  On the first day of trial, Plaintiff made an application for its uncontroverted exhibits – some photographs, some physical samples, all protests and all entries – to be moved into evidence and the balance of its controverted exhibits to be marked for identification.  (Pl. Ex. Mot., Ex. A.)  Defendant declined to raise an objection, and this Court granted, from the bench, Plaintiff's motion.  (Trial Tr. 9-10, Oct. 17.)

After Plaintiff's application was granted, Defendant moved for its list of exhibits, Schedule H-2 of the Final Pretrial Order, to be marked for identification.[13]  This Court granted Defendant's application upon no objection from Plaintiff.  (*Id*. at 20.)  Throughout the trial, various exhibits were marked for identification, some admitted into evidence and others withdrawn.  Upon the close of trial, approximately 1339 exhibits were admitted into evidence.

### B.     Photographs

One contentious issue regarding admissibility was the photographs of the SKUs for which there are no physical samples.[14]  Defendant objected to these exhibits on the basis of authenticity

---

[13] Defendant informed the Court that Defendant's Exhibit O was not available at trial. Thus, Defendant's Exhibit O was omitted from Defendant's list of exhibits to be marked for identification.  (Trial Tr. 19-20, Oct. 17.)

[14] Plaintiff did not have physical samples for sixty-five of the fixtures at issue.  (The Home Depot, U.S.A., Inc.'s Br. Regarding Admis. of Photographic Ex.; and Offer of Proof ("Pl.

for the images displayed in the photographs and inadmissible hearsay for the written content

shown in the photographs.  (*See* Def.'s Objections to Pl.'s Tr. Mot. to Admit Photographs of

Lighting Fixtures Which Have No Samples Associated with Them ("Def. Photo Opp'n") 4 n.6.)

Plaintiff introduced Patricia Golembieski, a customs compliance analyst and licensed customs

broker at Home Depot, as a fact witness with knowledge of the photographs.  (Trial Tr. 448, Oct.

19.)  Ms. Golembieski explained that these photographs are kept in Home Depot's files "as part

of the regular course of business activities that it conducts," (*id*. at 450), and that she "maintained

the records as part of [her] job" (*id*. at 451).  According to Ms. Golembieski, Home Depot relies

on the images displayed in the photographs in the customs compliance files "to help [] classify

[a] product."  (*Id*. at 507.)

Ms. Golembieski testified that the SKU numbers on the photographs are "highly

reliable," (Trial Tr. 596, Oct. 20), and as a matter of course, when setting up vendor files, the

SKU number is checked for, or if necessary assigned to, a photograph of a fixture (*id*. at 581,

583-84).  Ms. Golembieski explained the photographs are kept in Home Depot's vendor files.

(*Id*. at 578, 584, 591.)  Home Depot makes "all kinds of business decisions" based upon the

vendor files, according to Ms. Golembieski.  (*Id*. at 585.)  She offered that the customs

compliance group, of which she was the team leader, within Home Depot verifies information –

such as base tables that are created from the vendor files where the photographs are kept –

through self-audits.  (*Id*. at 587.)  Ms. Golembieski testified that she is "familiar with the manner

in which the base tables are maintained and the manner in which information is put into the base

tables."  (*Id*. at 586.)

---

Photo Br.") 1.)

Ms. Golembieski proffered that there are three kinds of photographs at issue:

(1) photographs she took; (2) photographs from Home Depot's Advertising Department ("AD");

and (3) photographs from vendors.[15]  During trial, Defendant withdrew its authenticity objection

to the two photographs taken by Ms. Golembieski, and thus upon application by Plaintiff, this

Court admitted them into evidence.[16]  (Trial Tr. 514-15, Oct. 19.)  Ms. Golembieski testified that

the vendor photographs are commonplace for Home Depot "in anticipation of an importation, to

help us classify."  (*Id*. at 513-14.)  She testified that vendor photographs are reliable and

explained that Home Depot's contract with the vendors explicitly requires reliability in their

transactions.  (Trial Tr. 578, 589-90, Oct. 20.)  Ms. Golembieski further explained that the AD

photographs are also "very reliable," with not only legal ramifications but also economic

repercussions if a photograph is inaccurate.  (Trial Tr. 504, Oct. 19.)

Upon conclusion of Ms. Golembieski's testimony, Plaintiff sought:

[A]dmission of the photographic portion of the exhibits on the grounds that
[Plaintiff] laid a sufficient foundation for authenticity under [Federal Rule of
Evidence] 901,[17] and the written information that correlates the photograph to the

---

[15] Ms. Golembieski demonstrated the photographs are distinguishable from each other by
their labeling.  (Trial Tr. 502-03, Oct. 19.)  The AD photographs are exhibits: 10, 13, 15, 21, 22,
24, 25, 28, 29, 30, 31, 32, 34, 35, 39, 40, 41, 47, 50, 56, 57, 62, 64, 68, 69, 70, 74, 76, 77, 78, 79,
80, 81, 82, 85, 86, 101, 104, 115, 119, 120, 121, 122.  (Trial Tr. 674, Oct. 20.)  The vendor
photographs are exhibits: 2, 3, 19, 23, 36, 48, 54, 55, 58, 60, 65, 73, 87, 102, 105, 108, 110, 113,
114, 116.

[16] This applied to Plaintiff's Exhibits 4 and 126.  This Court admitted these exhibits into
evidence with Defendant reserving "its right to argue about the weight that should be accorded
[to these] photograph[s]."  (Trial Tr. 514-15, Oct. 19, *see also id.* at 559.)

[17] Federal Rule of Evidence 901(b) (2005) provides, in relevant part:

**Rule 901. Requirement of Authentication or Identification**

. . .

SKU number into evidence on the grounds that it qualifies as an exception to the hearsay rule under [Federal Rule of Evidence] 803, subparagraph 6,[18] and the basis for the authenticity and for the hearsay exception is the same from the standpoint of the factual foundation that it has to be laid for either theory.

(Trial Tr. 671, Oct. 20.)  It is well-established that the business records exception has been

construed generously in favor of admissibility.  *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391

(Fed. Cir. 1997).  Case law directs, and Defendant concedes, that the witness who authenticates

the "business records need not be the person who prepared or maintained the records, or even an

employee of the record-keeping entity, as long as the witness understands the system used to

---

**(b) Illustrations.**  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

**(1) Testimony of witness with knowledge**.  Testimony that a matter is what it is claimed to be.
. . .
**(9) Process or system.**  Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

[18] Federal Rule of Evidence 803(6) (2005) provides:

**Rule 803.  Hearsay Exceptions; Availability of Declarant Immaterial**

**(6) Records of Regularly Conducted Activity.** – A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), and Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

prepare the records." *Id*.; (*see also* Def. Photo Opp'n 2.)  This Court found that Ms. Golembieski

not only met this threshold standard of understanding the system used to prepare the records but

also was the employee in charge of this system.

Furthermore, the CAFC has adopted the incorporation doctrine into the business record

exception.  *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999).

The incorporation doctrine allows third party documents generated by third parties to be admitted

if "the incorporating business rely upon the accuracy of the documented incorporated" and "there

are other circumstances indicating the trustworthiness of the document."  *Id*.  This Court found

that the vendor photographs fell under the rubric of the incorporation doctrine because Plaintiff

satisfied both the business reliance and additional assurances factors based upon Ms.

Golembieski's testimony.  Upon consideration of evidence and court-directed briefs, this Court,

from the bench, granted Plaintiff's application for the admission of the controverted photographs

and ruled that they were properly authenticated.  (Trial Tr. 674, Oct. 20.)

### C.      Worksheets (Schedule J)

During a pretrial conference, this Court and parties created a worksheet scheme for each

fixture to facilitate judicial efficiency.  Because there is a large volume of subject merchandise at

issue, these worksheets were intended to organize information.  The worksheets are deemed

"W-" followed by a chronological number which corresponds to the SKU number sequence.[19]

These worksheets are part of the Final Pretrial Order as Schedule J.  Originally there were a total

---

[19] Although they were included in the worksheet number sequence, the twenty represented SKUs do not have separate worksheets.  (Trial Tr. 1785, Nov. 2.)  These represented SKUs without worksheets are: W-6, W-7, W-8, W-18, W-26, W-37, W-42, W-51, W-52, W-53, W-61, W-66, W-67, W-71, W-88, W-89, W-92, W-99, W-100, W-123.

106 worksheets, but two worksheets were withdrawn during the course of the trial.[20]

Consequently, by trial's adjournment, there were only 104 worksheets in evidence. (Trial Tr. 1785, Nov. 2.)

On the first day of trial in its application for admission of exhibits, Plaintiff included the worksheets of Schedule J in its application. (*See* Pl. Ex. Mot., Ex. C.) Plaintiff moved for page two of each worksheet in Schedule J to be moved into evidence (Trial Tr. 12, Oct. 17) and Defendant abstained from objection (*id*. at 13). Because Defendant objected to the some of the content on pages one, three and four,[21] Plaintiff moved for these pages to be marked for identification. (*Id*.) This Court granted Plaintiff's application. (*Id*. at 14.)

Page one of the worksheets contain: a brief narrative description of the fixture; the relevant exhibits to be presented for that fixture; witnesses who will testify regarding that fixture; a table listing the fixture's component breakdown, each component's estimated visible surface area and weight in absolute and comparative measurements; each component's functions; and what, if any, are Defendant's objections on that page. Page two of the worksheets lists the entries and protest numbers associated with that SKU number. Pages three, and, if any, four, summarize the testimony of Plaintiff's witnesses.

The measurements supplied on the first page of the worksheets were explained by Plaintiff's witness Mr. Kozloski, who is the Corporate Director of Quality at STR. An STR

---

[20] Worksheets W-20 and W-118 were withdrawn during trial. (Trial Tr. 1785, Nov. 2.)

[21] At the start of trial, there were two worksheets that had four pages – W-78 and W-87 – while the balance of the worksheets had three pages. (Trial Tr. 12-13, Oct. 17.)

technician took estimated visible surface area[22] and weight measurements for the components of the physical samples. In preparation for litigation, Mr. Kozloski checked the technician's measurements by comparing the figures with photographs of the fixtures. (Trial Tr. 1552-53, Oct. 28.) Mr. Kozloski concluded that some of the technician's measurements should be revised. Some corrections were already reflected in the worksheets and others were introduced during trial. This Court notes that these measurements are only estimates. Accordingly, the Court considers this fact when assigning weight to each measurement as a factor in determining essential character.

Upon completion of its case-in-chief, Plaintiff applied to have pages one, three and four moved into evidence. (*Id*. at 1613-14.) This Court found that the content on pages one, three and four were either directly testified to or adequately adopted by witnesses as part of their testimony. Upon consideration of all evidence and noting that there was no objection from Defendant,[23] this Court granted, from the bench, Plaintiff's application to admit the 104 worksheets in their entirety into evidence.[24] (*Id*. at 1615.)

---

[22] Visible surface area is "what a person can actually see[] [w]hen the fixture is mounted in its normal mounted position." (Trial Tr. 1605, Oct. 28.) STR instructed its technician, Mike Kelting, to measure the fixture's "basic shape." (*Id*. at 1641.) He took the fixture's visible surface area measurements by "either holding it at an arm's length or possibly inverting it on a bench." (*Id*. at 1606.) Apparently, there were some instances where glass shades obscured the metal rims and where metal ovals was measured as rectangles thereby understating or overstating some measurements. (*Id*. at 1608-09.)

[23] Defendant did not object to admitting these worksheets into evidence but did dispute the accuracy of some portions. (Trial Tr. 1614, Oct. 28.)

[24] This Court granted Plaintiff's application noting some observations and commentaries: the worksheets were treated "as amended because they have been amended all over the place." (Trial Tr. 1614, Oct. 28.) Furthermore, the worksheets in their entirety were admitted into evidence with two exceptions: (1) on page one, the "Relevant Exhibits" and "Plaintiff's Witnesses" lines were "treated just for informational purposes only and not treated for

## III.    CLASSIFICATION SCHEME

### A.    Presumption of Correctness

Customs enjoys a statutory presumption of correctness.  An agency's decision is "presumed to be correct," and "[t]he burden of proving otherwise shall rest upon the party challenging such decision" under 28 U.S.C. § 2639(a)(1) (2000).[25]  This presumption of correctness allocates the burden of proof to Plaintiff to present evidence that Customs' classification of the subjects goods was incorrect.  The CAFC has discussed this statutory presumption and its resultant effect on litigation.  It instructs:

> The presumption of correctness is a procedural device that is designed to allocate, between the two litigants to a lawsuit, the burden of producing evidence in sufficient quantity.  Specifically, the importer must produce evidence (the burden of production portion of the burden of proof) that demonstrates by a preponderance (the burden of persuasion portion of the burden of proof) that Customs' classification decision is incorrect.  The presumption of correctness certainly carries force on any factual components of a classification decision, such as whether the subject imports fall within the scope of the tariff provision, because *facts* must be proven via *evidence*.

*Universal Elec., Inc. v. United States,* 112 F.3d 488, 492 (Fed. Cir. 1997) (footnote omitted).

This presumption does not apply to pure questions of law.  *See id.*  Accordingly, Plaintiff bears the burden to produce sufficient evidence to rebut the statutory presumption of correctness

---

evidentiary purposes;" and (2) on page three, fact witness Patricia Golembieski's paragraph was "not [] treated as substantive evidence, [the Court] rel[ied] upon that which she testified to."  (*Id.* at1615.)

[25] 28 U.S.C. § 2639(a)(1) provides:

[I]n any civil action commenced in the Court of International Trade under section 515, 516, or 516A of the Tarriff Act of 1930, the decision of the secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct.  The burden of proving otherwise shall rest upon the party challenging such decision.

accorded to Customs.  Unless specified in the individual SKU discussions below, this Court finds

that Plaintiff met its burden and rebutted the statutory burden of presumption.

**B.      General Rules of Interpretation**

Tariff classification of imported merchandise is governed by HTSUS General Rules of

Interpretation ("GRI").  *See The Pillsbury Co. v. United States*, 431 F.3d 1377, 1379 (Fed. Cir.

2005); *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).  The GRIs

"are considered statutory provisions for all purposes."  *Toy Biz,* 26 CIT at 819.  The GRIs should

be applied in numerical order.  *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir.

1999).

The HTSUS is organized systematically: first by headings, which "set forth general

categories of merchandise;" then the headings are divided into subheadings, which provide a

"more particularized segregation of the goods within each category."  *Orlando Food*, 140 F.3d at

1439.  This Court must follow the GRIs according to a set scheme:

> The first step in analyzing the classification issue is to determine the applicable
> heading, if possible, by looking to the terms of the headings and section or chapter
> notes, in accordance with GRI 1.  Provided that the product is classifiable under a
> heading, the court must then look to the subheadings to find the correct
> classification of the merchandise in question.

*Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246, 1250 (Fed. Cir. 2004) (citation

omitted).  Here, the heading is not in dispute as parties stipulate that the proper HTSUS heading

is 9405.  (*See* Final Pretrial Order, Schedule C, ¶ 6.)  This Court agrees.

Once the proper heading has been determined, the classification scheme moves into

subheading segregation under GRI 6.  *See Dolly, Inc. v. United States*, 27 CIT __, 293 F. Supp.

2d 1340, 1343, 1351 (2003).  Parties submit that the correct six-digit subheading is 9405.10

under the HTSUS.  This Court is in agreement.  The dispute arises, however, with the proper

eight-digit subheading, which is the ultimate issue to be determined.  Parties assert that the

subject fixtures *prima facie* fall under one of the following two subheadings: 9405.10.60 or

9405.10.80.  (Final Pretrial Order, Schedule D-1, 11, Schedule D-2, 15.)  Again, this Court

agrees.

> If a subheading is at issue, GRI 6 instructs:
>
> For legal purposes, the classification of goods in the subheadings of a heading
> shall be determined according to the terms of those subheadings and any related
> subheading notes, and *mutatis mutandis*, to the above rules, on the understanding
> that only subheadings at the same level are comparable.  For the purposes of this
> rule, the relative section, chapter and subchapter notes also apply, unless the
> context otherwise requires.

GRI 6 (1999).  Parties agreed that the subject merchandise is composite goods of base metal and

non-base metal, such as glass or plastic.  (*See* Final Pretrial Order, Schedule D-1, 11, Schedule

D-2, 15.)  Despite the fact that the subject fixtures when imported do not include a lamp, which

is necessary for performance, this Court finds that the subject goods are imported in their

finished state and accordingly applies GRI 2(b).[26]  This Court finds that the subject goods are

composite and *prima facie* classifiable under two different subheadings.  Consequently, GRI 2(b)

directs us to GRI 3, which provides:

---

[26] GRI 2(b) states:

Any reference in a heading to a material or substance shall be taken to include a
reference to mixtures or combinations of that material or substance with other
materials or substances.  Any reference to goods of a given material or substance
shall be taken to include a reference to goods consisting wholly or partly of such
material or substance.  The classification of goods consisting of more than one
material or substance shall be according to the principles of rule three.

3.      When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows:

(a)      The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarding as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b)      Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

(c)      When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

GRI 3(a)-(c) (1999).  The CAFC outlined the framework for GRI 3:

The [GRI] of the [HTSUS] help determine which subheading should govern the duty to be assessed on imports of these [subject goods].  According to the GRI 3(a), when 'goods are, *prima facie*, classifiable under two or more headings,' the court must choose the heading providing the most specific description.  This is the so-called relative specificity test.  GRI 3(a) provides an exception to the applicability of this test, however, when 'two or more headings each refer . . . to only part of the items [].'  Pursuant to GRI 3(b), goods not classifiable under GRI 3(a) are classified by the 'component which gives them their essential character.'  This is the so-called essential character test.  GRI 3(c) provides a default rule for goods not classifiable after resort to either GRI 3(a) or (b)."

*Better Home II*, 119 F.3d at 970-71. The Explanatory Notes ("EN")[27] instructs that GRI 3

methods of classification "operate in the order in which they are set out in the Rule."

---

[27] Although not binding, the EN are instructive and persuasive in classification analyses. *See Bauer Nike Hockey*, 393 F.3d at 1250 ("[Courts] may look to the [EN] accompanying a tariff subheading as a persuasive, but not binding, interpretative guide.") (citation omitted).

*Harmonized Commodity Description and Coding System*, *Explanatory Notes* to GRI 3 (I).

Because the two subheadings at issue each refer to only part of this composite good, this Court

finds that GRI 3(b), the essential character test, is the applicable provision to determine

classification, or in cases whereby essential character is indeterminable, then this will Court

resort to GRI 3(c), the default provision.

Although the GRI do not define essential character, the EN to GRI 3(b) coupled with case

law offer guidance. The EN explain that "[t]he factor which determines essential character will

vary as between different types of goods. It may, for example, be determined by *the nature of the*

*material or component, its bulk, quantity, weight or value, or by the role of a constituent*

*material in relation to the use of the goods*." EN GRI 3(b), (VIII) (emphasis added). Although

the EN provide an instructive list of sample factors to consider in an essential character analysis,

it is not exhaustive.

Case law provides other possible considerations for an essential character inquiry. This

court's predecessor, the United States Customs Court ("Customs Court"), stated that "[t]he best

evidence of the essential character of the article is the representative sample." *United China &*

*Glass Co. v. United States*, 61 Cust. Ct. 386, 389, C.D. 3637, 293 F. Supp.734 (1968).[28] In its

analysis, the *United China* court also considered the article's "name . . . other recognized names

. . . invoice and catalogue descriptions . . . size, primary function, uses . . . and *ordinary common*

*sense*." *Id*. (emphasis added). This Court concludes that this exemplary list is useful for the

---

[28] Although this definition applied to the Tariff Schedule of the United States ("TSUS") – HTSUS's predecessor – there are no reported cases defining essential character under the HTSUS and thus later decisions have been guided by TSUS case law. *See, e.g., Better Home Plastics Corp. v. United States*, 20 CIT 221, 224, 916 F. Supp. 1265 (1996) ("Better Home I"), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997); *Toy Biz,* 26 CIT at 827.

forthcoming analyses. In a subsequent decision, the Customs Court explained that "[t]he

character of an article is that attribute which strongly marks or serves to distinguish what it is. Its

essential character is that which is indispensable to the structure, core or condition of the article,

i.e., what it is." *A.N. Deringer, Inc. v. United States*, 66 Cust. Ct. 378, 383, C.D. 4218 (1971).

The court reiterated, however, that in an essential character determination, "the situation must be

reviewed as a whole." *Id*. at 384 (citation omitted).

## IV.   SKU ANALYSES

### *SKU Groupings*:

Before trial, parties placed some thirty-one SKUs into representative and represented

categories. The eleven representative SKUs cover twenty represented SKUs by party stipulation.

(*See* Joint Report.)[29] Plaintiff presented these eleven representative SKUs, all of which had

physical samples as evidence, the first two days of trial. Thereafter, Plaintiff artificially grouped

the remaining SKUs in an attempt at judicial efficiency. (*See* Am. Status Report Re: Order of

Trial - Phase Two ("Phase II").) While the order of the SKU analyses generally mirrors

Plaintiff's grouping order, the Court occasionally diverges to facilitate the flow of the discussion.

This Court analyzes 104 SKUs.[30]

---

[29] The agreed upon eleven representative and corresponding twenty represented SKUs are: 104-305 covering 491-770; 113-892 covering 113-908, 113-925, 113-942, 252-552; 240-210 covering 240-216, 280-746; 258-008 covering 356-093; 385-091 covering none; 385-186 covering 384-894, 385-141, 385-236, 385-303; 385-432 covering 385-429; 385-477 covering 384-961, 491-784, 794-187; 469-258 covering 469-528; 482-393 covering 379-609, 457-581; 794-885 covering 441-371. (Joint Report 2-6.) Because the represented SKUs were stipulated to in advance of trial, there was no evidence presented for them, except for SKU 280-746.

[30] As noted under "Findings of Fact at Established at Trial" (see *supra* § I.B.), there are 124 SKUs at issue in this case, but this Court need only consider evidence for 104 SKUs, as

*__Divisional SKUs__*:

During trial, Plaintiff explained Home Depot's SKU numbering system. The first time Home Depot orders a product its system assigns a SKU number in sequential order, regardless of whether the product is a light fixture or another item. (Trial Tr. 575, Oct. 20.) Each fixture also has a model number assigned by the vendor. (*Id*. at 569, 575.) A SKU number may have different model numbers if different vendors produce the same product.

Evidence presented at trial revealed that a few identical fixtures were assigned different SKU numbers. Mr. St. John explained that Home Depot did not have a centralized purchasing system at the time of importation of the subject merchandise but rather had nine regional divisions ordering products and assigning their own SKU numbers. (Trial Tr. 174-75, Oct. 17.) Decentralized buying resulted in the possibility of identical products being assigned different SKU numbers throughout the nine divisions. (Trial Tr. 1059, Oct. 26; Trial Tr. 1268-69, Oct. 27.) During trial, parties referred to the identical fixtures that were purchased by different divisions as "divisional SKUs." (Trial Tr. 1059, Oct. 26.) Plaintiff submitted a list of divisional SKUs: SKUs 113-892 and 280-740; SKUs 385-477 and 385-544; SKUs 385-463 and 385-513; SKU 113-861 and agreed upon represented SKU 280-746. (Trial Tr. 1266-68, Oct. 27.) This Court accepts Plaintiff's submission that these fixtures are identical with different SKU numbers as explained by the decentralized ordering system. Although Defendant did not consent to Plaintiff's submission of divisional SKUs, it also did not offer any evidence to the contrary. (*Id*. at 1266, 1269-70.) Because they represent identical fixtures, the Court will conduct one classification analysis for the set of divisional SKUs.

_____

these determinations will cover the twenty represented SKUs.

A.      **INTERIOR FIXTURES**

1.      **GLOBE**[31]

This group of fixtures is known as "globe," which refers to the glass component. The name of an article is a factor that case law instructs is persuasive indicia of essential character because "it is not uncommon that an article is called by the name denoted by its essential character." *United China*, 61 Cust. Ct. at 389-90; *see supra* § III.B. Mr. Mintz advanced that this group of fixtures is substantially the same. (Trial Tr. 1231-32, Oct. 27.) Mr. St. John testified that "without the globe, [the fixture] has no structure," and thus, the most outstanding characteristic of the fixture is the glass globe. (Trial Tr. 116, Oct. 17; Trial Tr. 950-56, Oct. 24.) Mr. Mintz explained that this fixture uses a "standard metal fitter." (Trial Tr. 382, Oct. 18.) In the light fixture industry, a standard fitter is a "universal part which is used to support multiple glass shapes and is not specific to this lighting fixture." (Pl. Ex. 63 at 3.) This Court gives less weight to the metal component when it includes a standard fitter because such a fitter is less likely to "strongly mark[] or serve[] to distinguish what [the fixture] is."[32] *A.N. Deringer,* 66 Cust. Ct. at 383.

(a)      SKU 385-186 (Pl. Ex. W-63)

SKU 385-186 is an agreed upon representative SKU covering SKUs 384-894, 385-141, 385-236, and 385-303. (Joint Report 4.) SKU 385-186 is a "[f]lush mounted ceiling fixture known as '6[-inch] Globe.' The fixture consists of a 6[-inch] diameter translucent glass 'globe' shade that mounts into a fitter ring of smaller diameter and antique brass finish." (Pl. Ex. W-63

---

[31] This fixture is sometimes called "gumball," according to Mr. St. John. (Pl. Ex. W-63 at 3.)

[32] This applies to all the standard fitters throughout this decision.

at 1.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 217), photograph (Pl. Ex. 156)

and SKU information packet (Pl. Ex. 63).  Mr. St. John noted, "If you look on the package, it

says it's a 6-inch globe."  (Trial Tr. 115, Oct. 17.)  Furthermore, "the best evidence of the

essential character of an article is the representative sample."  *United China*, 61 Cust. Ct. at 389.

Therefore, this Court closely examined the physical sample.[33]  This Court gives weight to the

fixture's name and characteristics of the physical sample, if any, when determining essential

character.[34]

The glass has a visible surface area of 103.9 square inches, which constitutes ninety-two

percent of the whole, and weighs 6.0 ounces, which constitutes fifty-six percent of the total

weight.  (Pl. Ex. W-63 at 1.)  The metal has a visible surface area of 8.9 square inches, which

constitutes eight percent of the whole, and weighs 2.8 ounces, which constitutes twenty percent

of the total weight.  (*Id*.)  This Court finds that the glass has much greater visible surface area and

weighs notably more than the metal.  This Court also considers the factor "material's role in

relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal

"contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp

from view.  (*Id.*)

The Court finds that the metal component: consists of a standard metal fitter of an antique

brass finish; comprises approximately one-tenth of the total visible surface area; weighs

approximately one-fifth of the entirety of the fixture; contributes minimally to decorative

---

[33] This applies to all the physical samples presented throughout the trial.

[34] This applies to all fixtures with names and physical samples throughout this decision.

appearance and structure; houses the electrical components, and mounts the fixture to the ceiling.

This Court finds that the glass component: consists of a globe-shaped shade that gives the fixture

its name; comprises nine-tenths of the total visible surface area; weighs approximately three-

fifths of the entirety of the fixture; directs and softens light through diffusion; protects the lamp;

shields the lamp from view; contributes to the decorative appearance and structure; and defines

this fixture from design and marketability standpoints.  Upon careful consideration of the totality

of these various factors, this Court finds that the essential character of SKU 385-186 is imparted

by its glass. Accordingly, this Court holds that SKU 385-186 and its agreed upon represented

SKUs 384-894, 385-141, 385-236, and 385-303 properly fall under HTSUS subheading

9405.10.80.

(b)      SKU 385-205 (Pl. Ex. W-64)

SKU 385-205 is a "[f]lush mounted ceiling fixture consisting of a translucent glass

'globe' that mounts into a fitter ring of smaller diameter and brass finish."  (Pl. Ex. W-64 at 1.)

Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the

fixture.  (Pl. Ex. 64.)  Both Mr. Mintz and Mr. St. John testified that the only difference between

SKUs 385-186 and 385-205 is the finish on the metal, with the former in antique brass and the

latter in polished brass.  (Trial Tr. 951, Oct. 24; Trial Tr. 1231, Oct. 27.)  This Court agrees with

the witnesses.

Upon examination of all the evidence presented, this Court finds that SKUs 385-186 and

385-205 are substantially identical fixtures.  This Court finds that a different finish on an

otherwise identical fixture does not affect the essential character analysis.  Therefore, adopting

and applying the analysis of SKU 385-186 to SKU 385-205, this Court finds that the essential

character of SKU 385-205 is imparted by the glass. Accordingly, this Court holds that SKU 385-205 properly falls under HTSUS subheading 9405.10.80.

(c)     SKU 385-219 (Pl. Ex. W-65)

SKU 385-219 is apparently a "[f]lush mounted ceiling fixture consisting of a translucent glass 'globe' that mounts into a fitter ring of smaller diameter." (Pl. Ex. W-65 at 1.) The metal finish of this fixture is unknown. (*Id.*) Plaintiff produced as evidence a SKU information packet with an unclear black and white image. (Pl. Ex. 65.) This Court finds that the black and white image included in Plaintiff's Exhibit 65 is of extremely low quality and thus not sufficient to support Plaintiff's arguments.

Plaintiff's counsel admitted that the image "is a rather poor quality photograph," (Trial Tr. 952, Oct. 24), and Mr. Mintz testified that he could not discern the metal finish from the image (Trial Tr. 1231, Oct. 27). Upon its own examination of the image, this Court finds it can only guess, without certainty, what the image represents. As aforementioned, Customs enjoys a statutory presumption of correctness in its original classification determinations. Although an importer may overcome this presumption by a preponderance of the evidence, this Court finds that Plaintiff has not produced sufficient evidence for SKU 385-219 to rebut the statutory presumption of correctness enjoyed by Customs. Accordingly, this Court holds that Customs' classification of SKU 385-219 under HTSUS subheading 9405.10.60 stands.

(d)     SKU 385-155 (Pl. Ex. W-62)

SKU 385-155 is a "[f]lush mounted ceiling fixture consisting of a translucent glass 'globe' shade that mounts into a fitter ring of smaller diameter and brass finish." (Pl. Ex. W-62 at 1.) This fixture "[i]ncludes a pull chain switch." (*Id.*) Plaintiff produced as evidence a SKU

information packet consisting of a clear, color image of the fixture. (Pl. Ex. 62.) Mr. Mintz and Mr. St. John testified that there are two differences between SKUs 385-155 and 385-186: (1) SKU 385-155 has a brass finish while SKU 385-186 has an antique brass finish (*compare* Pl. Ex. W-62 at 1 *with* Pl. Ex. W-63 at 1); and (2) SKU 385-155 includes a pull chain (Trial Tr. 946, Oct. 24). Mr. St. John explained that the pull chain on this fixture "creates a different application in an area where there is no wall switch." (*Id*. at 949.) The addition of this feature, however, does not change Mr. St. John's opinion that the most outstanding characteristic of this fixture, as with the other globe fixtures, is the glass. (*Id*. at 949-50.)

Upon examination of all the evidence, this Court finds that SKUs 385-186 and 385-155 are substantially identical fixtures. This Court finds that a different finish and the addition of a pull chain switch on an otherwise identical fixture do not significantly affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-186 to SKU 385-155, this Court finds that the essential character of SKU 385-155 is imparted by the glass. Accordingly, this Court holds that SKU 385-155 properly falls under HTSUS subheading 9405.10.80.

(e)      SKU 384-930 (Pl. Ex. W-87)

SKU 384-930 is apparently a "[f]lush mounted ceiling fixture consisting of a translucent, frosted glass 'globe' that mounts into a metal fitter ring of smaller diameter. [The] [m]etal has [a] polished brass finish. [The] [g]lass globe has [an] escutcheon shape molded into bottom portion." (Pl. Ex. W-87 at 1.) Plaintiff produced as evidence a SKU information packet with a low quality image of the fixture. (Pl. Ex. 87.)

Mr. St. John observed that "there is a small escutcheon that's been molded into the end of the glass[;] I'm going off the image here," (Trial Tr. 939, Oct. 24) but later admitted, "there's no way for me to confirm. The image is poor," (*id*. at 942). Upon its own examination, this Court agrees that the image is poor. As with SKU 385-219, this Court finds that this image is of extremely low quality and thus inadequate to support Plaintiff's arguments. With only a poor image and witness testimony unable to confirm the differences of this fixture compared with others in this globe group, this Court finds that Plaintiff has not produced sufficient evidence for SKU 384-930 to rebut the statutory presumption of correctness enjoyed by Customs. Accordingly, this Court holds that Customs' classification of SKU 384-930 under HTSUS subheading 9405.10.60 stands.

### 2.      BUBBLE

The fixtures in this bubble group are "in a similar family[35]" with "slightly different" shapes of glass and mounting plates. (Trial Tr. 1237, Oct. 27.) This Court finds instructive that the name of the fixtures in this group is "bubble," which refers to the glass. *See supra* § III.B.

(a)      SKU 104-305 (Pl. Ex. W-1)

SKU 104-305 is an agreed upon representative SKU covering SKU 491-770. (Joint Report 2.) SKU 104-305 is a "[f]lush mounted ceiling fixture known as a '14-Inch Bubble.' The

---

[35] The term "family" slightly differed between Plaintiff's witnesses. Mr. St. John referred to a family of fixtures as being "designed with the exact same components," (Trial Tr. 1072, Oct. 26), "exactly the same shape, exactly the same profile, exactly the same glass, same cap, same ball . . . It would be the exact same fixture in, like, a small, medium and large style" (*id.* at 1108). Mr. Mintz instructed that family means configuration and style, plus "the variety of sizes and number of lamps," (Trial Tr. 1327, Oct. 27), and asserted the most outstanding characteristic for an entire family is the same because "what applies to one really applies to all of them" (*id.* at 1281). However, Mr. Mintz asserted that family in a design sense sometimes includes different finishes on the metal. (*Id*. at 1324-26.)

fixture is 14 inches in diameter, with a translucent white glass 'bubble' shade, surrounded by a metal trim ring with a polished brass finish." (Pl. Ex. W-1 at 1.) As previously stated, this Court finds instructive that this fixture's name is "14-inch bubble." Plaintiff produced as evidence a physical sample (Pl. Ex. 188), photograph (Pl. Ex. 127) and SKU information packet (Pl. Ex. 1).

According to Mr. St. John, "the [metal] pan is typically used to cover the electrical box and disguise the mechanical materials, including the insulation in the back [], and mount the sockets. And the glass is used as a diffuser to disperse the light evenly across whatever room it's placed in in addition to disguising the bulb and the very mechanical components, including the insulation pad that's inside, the two sockets, and [] the insulated wire that's inside, as well as covering up the actual mechanical mounting to the ceiling." (Trial Tr. 67-68, Oct. 17.) Mr. Mintz testified that a customer's purchasing decision is driven by the shape of the glass because "[i]t would be very odd for a customer to go in and say: I'd like to buy a brass trim, [sic] can we find a piece of glass that fits it." (Trial Tr. 341-42, Oct. 18.)

The glass has a visible surface area of 122.8 square inches, which constitutes sixty percent of the whole, and weighs 20.5 ounces, which constitutes thirty-six percent of the total weight. (Pl. Ex. W-1 at 1.) The metal has a visible surface area of 80.8 square inches, which constitutes forty percent of the whole, and weighs 33.4 ounces, which constitutes fifty-eight percent of the total weight. (*Id*.) This Court finds that the glass has greater visible surface area than the metal, but the metal weighs more than the glass. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to

shield the lamp from view, while the metal further functions to protect the ceiling and to attach the glass. (*Id*.)

This Court finds that the metal component: consists of a pan of a polished brass finish; comprises approximately two-fifths of the total visible surface area; weighs approximately three-fifths of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components; and mounts the fixture to the ceiling. This Court finds that the glass component: consists of a bubble shape that gives the fixture its name; comprises approximately three-fifths of the total visible surface area; weighs approximately one-third of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to decorative appearance and structure; and defines this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 104-305 is imparted by its glass. Accordingly, this Court holds that SKU 104-305 and its agreed upon represented SKU 491-770 properly fall under HTSUS subheading 9405.10.80.

(b)     SKU 104-306 (Pl. Ex. W-2)

SKU 104-306 is a "[f]lush mounted ceiling fixture consisting of a translucent glass 'bubble' surrounded by a metal trim ring with a polished brass finish." (Pl. Ex. W-2 at 1.) Plaintiff produced as evidence a SKU information packet with a grainy but adequate image. (Pl. Ex. 2.) Mr. St. John submitted that "SKU 104-306 is so similar to SKU 104-305 that my testimony is the same for [SKU]104-306 as far as [SKU]104-305, [however,] [SKU 104-306] has a different profile.[36]" (Trial Tr. 967, Oct. 24.)

_____

[36] The term "profile" slightly differed between Plaintiff's witnesses. Mr. St. John sometimes referred to the profile of the pan and other times referred to the profile of the overall

Upon examination of all the evidence, this Court finds that SKUs 104-305 and 104-306 are substantially identical fixtures. This Court finds the slight difference in profile does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 104-305 to SKU 104-306, this Court finds that the essential character of SKU 104-306 is imparted by the glass. Accordingly, this Court holds that SKU 104-306 properly falls under HTSUS subheading 9405.10.80.

(c)     SKU 491-798 (Pl. Ex. W-101)

SKU 491-798 is a "[f]lush mounted ceiling fixture consisting of a translucent white frosted glass 'bubble' shade, surrounded by a metal trim ring with a bronze finish." (Pl. Ex. W-101 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 101.) This fixture has a profile similar to SKU 104-306. (Pl. Ex. W-101 at 1.) Mr. St. John declared that SKUs 104-306 and 491-798 is the same, except for the finish. (Trial Tr. 969, Oct. 24.) Mr. Mintz corroborated by stating that SKUs 491-798, 104-306 (*supra*) and 491-803 (*infra*) "are identical [] except for the finish on the mounting plate." (Trial Tr. 1237, Oct. 27.) This Court agrees.

Upon examination of all the evidence, this Court finds that SKUs 491-798 and 104-306 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 104-306 to SKU 491-798, this Court finds that the essential character of SKU 491-798 is imparted by the glass. Accordingly, this Court holds that SKU 491-798 properly falls under HTSUS subheading 9405.10.80.

---

fixture. (*See, e.g.*, Trial Tr. 962, Oct. 24.) Mr. Mintz, however, discussed profile in terms of the overall fixture as "the backplate plus the glass or plastic." (Trial Tr. 1397, Oct. 27.)

(d)      SKU 491-803 (Pl. Ex. W-102)

SKU 491-803 is a "[f]lush mounted ceiling fixture consisting of a translucent white frosted glass 'bubble' shade, surrounded by a metal trim ring with a white finish." (Pl. Ex. W-102 at 1.) Plaintiff produced as evidence a SKU information packet consisting of an adequate image of the fixture. (Pl. Ex. 102.) This fixture has a profile similar to SKUs 104-306 and 491-798. (Pl. Ex. W-102 at 1.) Mr. St. John testified that "[SKU 491-803] is just like [SKU 491-798] and just like [SKU 104-306], except it's in a white finish." (Trial Tr. 972, Oct. 24.)

Upon examination of all the evidence, this Court finds that SKUs 104-306, 491-798 and 491-803 are substantially identical fixtures. This Court finds that a different finish on the base metal of an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKUs 104-306 to SKU 491-803, this Court finds that the essential character of SKU 491-803 is imparted by the glass. Accordingly, this Court holds that SKU 491-803 properly falls under HTSUS subheading 9405.10.80.

**3.      MUSHROOM**

This Court finds instructive that the name of these fixtures is "mushroom," which refers to the glass. *See supra* § III.B. This mushroom group uses a standard fitter. (Trial Tr. 990, Oct. 26; Trial Tr. 1243, Oct. 27; Pl. Ex. W-75 at 3.) Therefore, according to Plaintiff's witnesses, the most outstanding characteristic of this mushroom group is the glass shade. (Trial Tr. 985-96, Oct. 26; Trial Tr. 1246, Oct. 27.)

(a&b)   SKUs 385-477 (Pl. Ex. W-75) & 385-544 (Pl. Ex. W-77)

SKUs 385-477 and 385-544 are divisional SKUs. As discussed in the divisional SKU section above, this Court accepts Plaintiff's submission that SKUs 385-477 and 385-544 are

identical fixtures that received different SKU numbers when regional divisions placed orders. *See supra* § IV. Finding that they are identical fixtures, this Court applies the same analysis to SKUs 385-477 and 385-544. Furthermore, SKU 385-477 is an agreed upon representative SKU covering SKUs 384-961, 491-784, and 794-187. (Joint Report 5.)

These fixtures are "[f]lush mounted ceiling fixture[s] known as an [sic] '7-[i]nch Mushroom.' The[se] fixture[s] [are] 7 inches in diameter, with a translucent white glass bowl that mounts into a metal fitter. The translucent glass bowl extends beyond the diameter of the fitter and then narrows where it mounts into the fitter, creating a shape similar to that of a mushroom." (Pl. Ex. W-75 at 1.) These fixtures have a white metal finish. (*Id*.) Plaintiff produced as evidence a physical sample (Pl. Ex. 222), photograph (Pl. Ex. 161) and SKU information packets (Pl. Ex. 75; Pl. Ex. 77).

The glass has a visible surface area of 53.3 square inches, which constitutes sixty-five percent of the whole, and weighs 7.5 ounces, which constitutes fifty percent of the total weight. (Pl. Ex. W-75 at 1.) The metal has a visible surface area of 28.6 square inches, which constitutes thirty-five percent of the whole, and weighs 5.7ounces, which constitutes thirty-eight percent of the total weight. (*Id*.) This Court finds that the glass has greater visible surface area and weighs more than the metal. While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-75 at 1; Pl. Ex. W-77 at 1.)

This Court finds that the metal component: consists of a standard metal fitter of a painted white finish; comprises approximately one-third of the total visible surface area; weighs

approximately two-fifths of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components; and mounts the fixture to the ceiling. This Court finds that the glass component: consists of a stylized decorative shade that gives the fixture its name; comprises approximately two-thirds of the total visible surface area; weighs one-half of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to decorative appearance and structure; and defines this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKUs 385-477 and 385-544 is imparted by its glass. Accordingly, this Court holds that SKUs 385-544 and 385-477 and its agreed upon represented SKUs 384-961, 491-784, and 794-187 properly fall under HTSUS subheading 9405.10.80.

(c&d)  <u>SKUs 385-463 (Pl. Ex. W-74) & 385-513 (Pl. Ex. W-76)</u>

SKUs 385-463 and 385-513 are divisional SKUs. As discussed above, this Court accepts Plaintiff's submission that SKUs 385-463 and 385-513 are identical fixtures that received different SKU numbers when regional divisions placed orders. *See supra* § IV. Finding that they are identical fixtures, this Court applies the same analysis for SKUs 385-463 and 385-513. Plaintiff produced as evidence SKU information packets consisting of clear, color images of the fixtures. (Pl. Ex. 74; Pl. Ex. 76.) These identical fixtures have a different finish than those discussed immediately above but are otherwise the same. (Trial Tr. 994, Oct. 26.)

Mr. St. John testified that there are no differences between SKUs 385-463, 485-513, and 385-477. (*Id.*) This Court notes, however, that the metal finish on SKUs 385-463 and 385-513 is different from that of SKU 385-477. As discussed above, this Court finds that a different

finish on an otherwise identical fixture does not affect the essential character analysis. Therefore,

adopting and applying the analysis of SKU 385-477 to SKUs 385-463 and 385-513, this Court

finds that the essential character of SKUs 385-463 and 385-513 is imparted by the glass.

Accordingly, this Court holds that SKUs 385-463 and 385-513 properly fall under HTSUS

subheading 9405.10.80.

(e)     <u>SKU 385-334 (Pl. Ex. W-68)</u>

SKU 385-334 is a "7-inch mushroom[,] [f]lush mounted ceiling fixture consisting of a

faceted glass shade that mounts into a metal fitter with a chrome finish. The glass shade extends

beyond the diameter of the fitter and then narrows where it mounts into the fitter, creating a

shape similar to that of a mushroom." (Pl. Ex. W-68 at 1.) Plaintiff produced as evidence a SKU

information packet consisting of a clear, color image of the fixture. (Pl. Ex. 68.) Mr. Mintz

advanced that SKU 385-334 has the same shape as SKU 385-477, but SKU 385-334 "has a

pressed or cast glass diffuser" and a fitter "in a polished chrome finish." (Trial Tr. 1242, Oct. 27.)

Upon examination of all the evidence, this Court finds that SKUs 385-477 and 385-334

are substantially identical fixtures. This Court finds the color of finish and type of glass shade do

not significantly affect the essential character analysis. Furthermore, this Court finds that the

faceting in the glass shade favors the importance of the glass component. Therefore, adopting

and applying the analysis of SKU 385-477 to SKU 385-334, this Court finds that the essential

character of SKU 385-334 is imparted by the glass. Accordingly, this Court holds that SKU 385-

334 properly falls under HTSUS subheading 9405.10.80.

(f)      SKU 385-365 (Pl. Ex. W-69)

SKU 385-365 is a "7-inch mushroom[,] [ f]lush mounted ceiling fixture consisting of a faceted glass shade that mounts into a metal fitter with a brass finish.  The glass [shade] extends beyond the diameter of the fitter and then narrows where it mounts into the fitter, creating a shape similar to that of a mushroom." (Pl. Ex. W-69 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex. 69.)  According to Mr. Mintz, SKU 385-365 is  "same fixture as [SKU 385-334] but except [sic] that [SKU 385-365] is polished brass.  It's got the same faux cut glass diffuser."  (Trial Tr. 1243, Oct. 27.)  This Court agrees.

Upon examination of all the evidence, this Court finds that SKUs 385-334 and 385-365 are substantially identical fixtures.  This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis.  Therefore, adopting and applying the analysis of SKU 385-334 to SKU 385-365, this Court finds that the essential character of SKU 385-365 is imparted by the glass.  Accordingly, this Court holds that SKU 385-365 properly falls under HTSUS subheading 9405.10.80.

(g)      SKU 385-446 (Pl. Ex. W-73)

SKU 385-446 is a "7-inch mushroom[,] [f]lush mounted ceiling fixture . . . The fixture is eight inches in diameter, with a translucent white frosted glass bowl shade that mounts into a metal fitter with a brass finish." (Pl. Ex. W-73 at 1.)  Although the fixture is eight inches in diameter, it "uses the same seven inch fitter as all the other mushroom[] [fixtures]." (*Id.*)  Plaintiff produced as evidence a SKU information packet with an adequate image of the fixture.  (Pl. Ex. 73.)  This Court finds that the written content on the image corroborates witness

testimony regarding the different finishes in the mushroom group of fixtures. (Pl. Ex. 73.) Mr. St. John offered that SKUs 385-477 and 385-446 are the same except for the finish on the metal. (Trial Tr. 990, Oct. 26.)

Upon examination of all the evidence, this Court finds that SKUs 385-477 and 385-446 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-477 to SKU 385-446, this Court finds that the essential character of SKU 385-446 is imparted by the glass. Accordingly, this Court holds that SKU 385-446 properly falls under HTSUS subheading 9405.10.80.

### 4.      DOME

Mr. St. John testified that the fixtures in this dome group differ in their metal finish. (Trial Tr. 1099, Oct. 26.) Mr. St. John asserted, however, that the driving force behind a customer's purchasing decision with respect to the domed fixtures is "typically the style of glass . . . [b]ecause of the diffusing and decorative elements of the product." (*Id*. at 1101.) Mr. Mintz explained that the glass dome "has some sort of decorative swirl pattern in it." (Trial Tr. 1398, Oct. 27.) He concluded that "the glass really provides the profile and the performance and the function of the fixture." (*Id*. at 1398-99.) Mr. St. John offered that SKUs 385-625, 385-673, 385-690, 385-706, 385-768 and 385-771 are in the same family. (Trial Tr. 1105, 1107, 1109, Oct. 26.)

(a)      SKU 284-604 (Pl. Ex. W-38)

SKU 284-604 is "[f]lush mounted ceiling fixture consisting of a faux alabaster glass shade, mounted into a metal trim ring of an off-white plaster finish." (Pl. Ex. W-38 at 1.)

Plaintiff produced as evidence a physical sample (Pl. Ex. 205), photograph (Pl. Ex. 144) and

SKU information packet (Pl. Ex. 38). This fixture is held up by a twist lock connection. (Trial

Tr. 1400, Oct. 27.) The glass dome provides the fixture's profile (*id*. at 1395) and shape (*id*. at

1398), according to Mr. Mintz.

The glass has a visible surface area of 122.1 square inches, which constitutes sixty-seven

percent of the whole, and weighs 51.8 ounces, which constitutes sixty-six percent of the total

weight. (Pl. Ex. W-38 at 1.) The metal has a visible surface area of 61.0 square inches, which

constitutes thirty-three percent of the whole, and weighs 22.8 ounces, which constitutes twenty-

nine percent of the total weight. (*Id*.) This Court finds that the glass has much greater visible

surface area and weighs notably more than the metal. This Court also considers the factor

"material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both

the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the

glass further functions to direct and soften light through diffusion, to protect the lamp, and to

shield the lamp from view. (*Id*.)

This Court finds that the metal component: consists of a trim ring in an off-white plaster

finish; comprises approximately one-third of the total visible surface area; weighs approximately

one-third of the entirety of the fixture; contributes to the decorative appearance and structure;

houses the electrical components; and mounts the fixture to the ceiling. This Court finds that the

glass component: consists of a stylized decorative dome shade; comprises approximately two-

thirds of the total visible surface area; weighs approximately two-thirds of the entirety of the

fixture; reflects and refracts light; protects the lamp; contributes to the decorative appearance and

structure; and defines this fixture from design and marketability standpoints. Upon careful

consideration of the totality of these various factors, this Court finds that the essential character

of SKU 284-604 is imparted by its glass. Accordingly, this Court holds that SKU 284-604

properly falls under HTSUS subheading 9405.10.80.

(b)      SKU 385-012 (Pl. Ex. W-54)

SKU 385-012 is apparently a "[f]lush mounted ceiling fixture that consists of a melon

cut[37] glass bowl shade that is mounted into a metal trim ring at the base" of polished brass metal.

(Pl. Ex. W-54 at 1.) Plaintiff produced as evidence a SKU information packet with a low quality

image of the fixture. (Pl. Ex. 54.) This Court finds the image included in Plaintiff's Exhibit 54

is of extremely low quality and thus inadequate to support Plaintiff's arguments. Furthermore,

this Court finds that the written content of Plaintiff's Exhibit 54 does not clearly relate this

fixture.

Mr. Mintz admitted that Plaintiff's Exhibit 54 is "not a very good picture," but "by

experience and seeing similar fixtures," he submitted this fixture is similar to SKU 385-589.

(Trial Tr. 1400, Oct. 27.) This Court is not persuaded by such testimony. Although "[i]t is

hornbook law that direct evidence of a fact is not necessary," the trial court "has the

responsibility to weigh the evidence and credibility of the witnesses in deciding the inferential

reach of [] circumstantial evidence." *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d

1368, 1374 (Fed. Cir. 2005) (citation omitted). This Court finds insufficient that the witness has

seen only similar fixtures with neither personal knowledge of this fixture nor corroborating

evidence.

---

[37] Mr. Mintz explained that melon-cut glass is "melon shape[d]," typically "translucent or frosted," with wide ribs similar to those on a melon or pumpkin. (Trial Tr. 1402-03, Oct. 27.)

As previously discussed, Customs enjoys a statutory presumption of correctness in its original classification determinations. Although an importer may overcome this presumption by a preponderance of the evidence, this Court finds that Plaintiff has not produced sufficient evidence for SKU 385-012 to rebut this statutory presumption. Accordingly, this Court holds that Customs' classification of SKU 385-012 under HTSUS subheading 9405.10.60 stands.

(c)      SKU 385-589 (Pl. Ex. W-78)

SKU 384-589 is a "[f]lush mounted ceiling fixture consisting of a translucent glass dome mounted into a metal trim ring and with a metal finial[38] both of a white finish." (Pl. Ex. W-78 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 78.) Mr. Mintz asserted that this fixture is similar to SKU 284-604 except that this fixture is held together with a finial rather than a twist lock connection. (Trial Tr. 1400, Oct. 27.) This Court notes that the finishes and styles are also slightly different. (Trial Tr. 1106, Oct. 26.)

Upon examination of all the evidence, this Court finds that SKUs 284-604 and 385-589 are substantially identical fixtures. This Court finds the noted differences are minimal and do not significantly affect the essential character analysis. Adopting and applying the analysis of SKU 284-604 to SKU 385-589, this Court finds that the essential character of SKU 385-589 is imparted by the glass. Accordingly, this Court holds that SKU 385-589 properly falls under HTSUS subheading 9405.10.80.

---

[38] A "finial" is a small knob at the bottom of the fixture that holds the components in place. (Trial Tr. 1367-68, Oct. 27.)

(d)      <u>SKU 385-608 (Pl. Ex. W-79)</u>

SKU 385-608 is a "[f]lush mounted ceiling fixture consisting of a frosted glass dome mounted into a metal trim ring and with a metal finial, both of a brass finish." (Pl. Ex. W-79 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 79.) Mr. Mintz testified that SKU 385-608 "is very similar to" SKU 385-589 except for a slightly different backplate and finish. (Trial Tr. 1401, Oct. 27.)

Upon examination of all the evidence, this Court finds that SKUs 385-589 and 385-608 are substantially identical fixtures. This Court finds that a different finish and a slight variance in the backplate do not significantly affect the essential character analysis as discussed above. Adopting and applying the analysis of SKU 385-589 to SKU 385-608, this Court finds that the essential character of SKU 385-608 is imparted by the glass. Accordingly, this Court holds that SKU 385-608 properly falls under HTSUS subheading 9405.10.80.

(e)      <u>SKU 385-625 (Pl. Ex. W-80)</u>

SKU 385-625 is a "[f]lush mounted ceiling fixture consisting of a clear glass dome with swirl fluting, mounted into a metal trim ring and with a metal finial, both of a brass finish." (Pl. Ex. W-80 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 80.) Mr. Mintz testified that this fixture "appears to be very similar" to the SKU 385-589 except for the polished brass finish on the metal pan. (Trial Tr. 1401, Oct. 27.) Upon its own comparison of these two fixtures, however, this Court notes a difference also in the glass – clear versus frosted – and perhaps a slight difference in the profile. (*Compare* Pl. Ex. 78 *with* Pl. Ex. 80.)

Upon examination of all the evidence, this Court finds that SKUs 385-589 and 385-625 are substantially identical fixtures. Although there are a few differences, this Court finds that these differences do not significantly affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-589 to SKU 385-625, this Court finds that the essential character of SKU 385-625 is imparted by the glass. Accordingly, this Court holds that SKU 385-625 properly falls under HTSUS subheading 9405.10.80.

(f)      SKU 385-673 (Pl. Ex. W-81)

SKU 385-673 is a "[f]lush mounted ceiling fixture consisting of a frost[ed] sw[ir]l glass dome mounted into a metal trim ring and with a metal finial, both of a white finish." (Pl. Ex. W-81 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 81.) Mr. St. John testified that SKU 385-673 is identical to SKU 385-625, except for the white finish and the frosted swirl pattern on the glass dome. (Trial Tr. 1104, Oct. 26.) He asserted that SKUs 385-673, 385-625 (*supra*) and 385-690 (*infra*) are in the same family and have the same style. (Trial Tr. 1105, Oct. 26.)

Upon examination of all the evidence, this Court finds SKUs 385-625 and 385-673 are substantially identical fixtures. This Court finds that a different finish and frosted glass on an otherwise identical fixture do not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-625 to SKU 385-673, this Court finds that the essential character of SKU 385-673 is imparted by the glass. Accordingly, this Court holds that SKU 385-673 properly falls under HTSUS subheading 9405.10.80.

(g)     SKU 385-690 (Pl. Ex. W-82)

SKU 385-690 is a "[f]lush mounted ceiling fixture consisting of a frosted swirl glass dome mounted into a metal trim ring and with a metal finial, both of a brass finish." (Pl. Ex. W-82 at 1.) Plaintiff produced as evidence a SKU information packet with a clear, color image of the fixture. (Pl. Ex. 82.) Mr. Mintz claimed that this fixture is "very similar" to the other dome fixtures. (Trial Tr. 1401, Oct. 27.)

Upon examination of all the evidence, this Court finds that SKUs 385-608 and 385-690 are substantially identical fixtures. Therefore, adopting and applying the analysis of SKU 385-608 to SKU 385-690, this Court finds that the essential character of SKU 385-690 is imparted by the glass. Accordingly, this Court holds that SKU 385-690 properly falls under HTSUS subheading 9405.10.80.

(h)     SKU 385-706 (Pl. Ex. W-83)

SKU 385-706 is a "[f]lush mounted ceiling fixture of 13.25 inches in diameter. The fixture consists of a glass shade with close-set ridges in a 'swirl' pattern, surrounded by a metal trim ring with a polished brass finish, and capped by a knob, also of brass finish." (Pl. Ex. W-83 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 223), photograph (Pl. Ex. 162) and SKU information packet (Pl. Ex. 83).

The glass has a visible surface area of 123.8 square inches, which constitutes sixty-three percent of the whole, and weighs 45.5 ounces, which constitutes seventy-two percent of the total weight. (Pl. Ex. W-63 at 1.) The metal has a visible surface area of 71.0 square inches, which constitutes thirty-seven percent of the whole, and weighs 14.6 ounces, which constitutes twenty-three percent of the total weight. (*Id*.) This Court finds that the glass has much greater visible

surface area and weighs notably more than the metal.  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction and diffusion, to protect the lamp, and to shield the lamp from view.  (*Id*.)

This Court finds that the metal component: consists of a trim ring, cap and knob of a polished brass finish; comprises approximately one-third of the total visible surface area; weighs approximately one-fourth of the entirety of the fixture; contributes to decorative appearance and structure; mounts the fixture to the ceiling; and houses the electrical components.  This Court finds that the glass component: consists of a stylized decorative dome shade; comprises approximately three-fifths of the total visible surface area; weighs approximately three-fourths of the entirety of the fixture; directs and distributes light through refraction and diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 385-706 is imparted by its glass.  Accordingly, this Court holds that SKU 385-706 properly falls under HTSUS subheading 9405.10.80.

(i)      SKU 385-740 (W-84)

SKU 385-740 is a 11.25 inch diameter flush mounted ceiling fixture consisting "of a translucent white frosted glass dome shade with close-set fluting in a 'swirl' pattern, surrounded by metal trim ring" capped by a finial, both of a white finish.  (Pl. Ex. W-84 at 1.)  Plaintiff

produced as evidence a physical sample (Pl. Ex. 224), photograph (Pl. Ex. 163) and SKU information packet (Pl. Ex. 84).

The glass has a visible surface area of 73.5 square inches, which constitutes sixty-six percent of the whole, and weighs 29.2 ounces, which constitutes sixty-eight percent of the total weight. (Pl. Ex. W-84 at 1.) The metal has a visible surface area of 37.0 square inches, which constitutes thirty-four percent of the whole, and weighs 11.9 ounces, which constitutes twenty-eight percent of the total weight. (*Id.*) This Court finds that the glass has much greater visible surface area and weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id.*)

This Court finds that the metal component: consists of a trim ring, cap and knob of a white finish; comprises approximately one-third of the total visible surface area; weighs approximately one-fourth of the entirety of the fixture; contributes to the decorative appearance and structure; mounts the fixture to the ceiling; and houses the electrical components. This Court finds that the glass component: consists of a stylized decorative dome shade; comprises two-thirds of the visible surface area; weighs approximately two-thirds of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this

Court finds that the essential character of SKU 385-740 is imparted by its glass. Accordingly, this Court holds that SKU 385-740 properly falls under HTSUS subheading 9405.10.80.

(j)      SKU 385-768 (Pl. Ex. W-85)

SKU 385-768 is a "[f]lush mounted ceiling fixture consisting of a frosted swirl glass dome mounted into a metal trim ring and with a metal finial, both of a brass finish." (Pl. Ex. W-85 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 85.) SKU 385-768 is similar to the other fixtures in this dome group. (Trial Tr. 1107, Oct. 26; Trial Tr. 1402, Oct. 27.) According to Mr. Mintz, this fixture's backplate is slightly different. (Trial Tr. 1402, Oct. 27.)

Upon examination of all the evidence, this Court finds SKUs 385-768 and 385-740 are substantially identical fixtures. This Court finds that a different finish and a slight variance in the backplate on otherwise identical fixtures do not significantly affect the essential character analysis as previously discussed. Therefore, adopting and applying the analysis of SKU 385-740 to SKU 385-768, this Court finds that the essential character of SKU 385-768 is imparted by the glass. Accordingly, this Court holds that SKU 385-768 properly falls under HTSUS subheading 9405.10.80.

(k)      SKU 385-771 (Pl. Ex. W-86)

SKU 385-771 is a "[f]lush mounted ceiling fixture consisting of a clear glass dome, with swirled, vertical fluting, mounted into a metal trim ring and with a metal finial, both a brass finish." (Pl. Ex. W-86 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 86.) SKU 385-771 is similar to the other fixtures in this dome group. (Trial Tr. 1107, Oct. 26; Trial Tr. 1403, Oct. 27.)

Upon examination of all the evidence, this Court finds SKUs 385-625 and 385-771 are substantially identical fixtures. The only difference seems to be that the brass is a little darker in the former but it is unclear whether this an effect created by varied lighting when the photographs were taken. This Court finds this possible difference is inconsequential. Therefore, adopting and applying the analysis of SKU 385-625 to SKU 385-771, this Court finds that the essential character of SKU 385-771 is imparted by the glass. Accordingly, this Court holds that SKU 385-771 properly falls under HTSUS subheading 9405.10.80.

(l)      SKU 494-935 (Pl. Ex. W-104)

SKU 494-935 is a "[f]lush mounted ceiling fixture consisting of a frosted glass dome, with fluting, mounted into a metal trim ring and with a metal finial, both of a gold finish." (Pl. Ex. W-104 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 104.) SKU 494-935 is the same idea but it "has a completely different type of glass" than the others in the dome group. (Trial Tr. 1107, Oct. 26.) Mr. St. John explained this fixture has "a leaf pattern molded into the centrifugal glass" and described the finish of this fixture as antique brass. (*Id*.)

Upon examination of all the evidence, this Court finds SKUs 385-740 and 494-935 are substantially identical fixtures. This Court finds that the differences in metal finish and glass texture on otherwise identical fixtures do not significantly affect the essential character analysis as previously discussed. Therefore, this Court adopts and applies the analysis of SKU 385-740 to SKU 494-935. Consequently, this Court finds that the essential character of SKU 494-935 is imparted by the glass. Accordingly, this Court holds that SKU 494-935 properly falls under HTSUS subheading 9405.10.80.

(m)      SKU 494-949 (Pl. Ex. W-105)

SKU 494-949 is a "[f]lush mounted ceiling fixture consisting of a frosted glass dome, with fluting, mounted into a metal trim ring and with a metal finial, both of an [a]ntique [b]rass finish."  (Pl. Ex. W-105 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex. 105.)  According to Mr. Mintz, SKU 494-949 is similar to SKU 494-935 and appears to have the "same fitter or backplate as [SKU 494-935]."  (Trial Tr. 1404, Oct. 27.)  He testified that "[i]f there are any differences [between SKUs 494-935 and 494-949], they are not significant."  (*Id.*)  This Court agrees.

Upon examination of all the evidence, this Court finds SKUs 494-935 and 494-949 are substantially identical fixtures.  Therefore, adopting and applying the analysis of SKU 494-935 to SKU 494-949, this Court finds that the essential character of SKU 494-949  is imparted by the glass.  Accordingly, this Court holds that SKU 494-949 properly falls under HTSUS subheading 9405.10.80.

## 5.      DRUM

This drum group "has a historical Art Deco reference, which is fully established by the design of the glass shade. . . . [T]he glass shade is intricately detailed and very distinctive.  The use of the white painted bands and different geometric patterns of faceted glass establish the Art Deco design."  (Pl. Ex. W-72 at 3; *see also* Trial Tr. 130, 132, Oct. 17.)  Plaintiff's witnesses testified that the standard fitters in this drum fixture group are the same as those in the mushroom fixture group. (Trial Tr. 132-33, Oct. 17; 395, Oct. 18.)  This Court finds instructive that the name of the fixtures in this group is "drum," which refers to the glass.  *See supra* § III.B.

(a)        SKU 385-432 (Pl. Ex. W-72)

SKU 385-432 is an agreed upon representative SKU covering SKU 385-429.  (Joint

Report 4.)  This fixture is a "[f]lush mounted ceiling fixture known as '7-inch Drum.'  The

fixture is 7 inches diameter, with a glass 'drum' shade that mounts into a [chrome-finished]

metal fitter of about the same diameter.  The circumference of the drum consists of four

alternating bands of glass: two painted white glass bands, a band of glass diamond shapes and

interlocking diagonal channels and a band of vertical flutes.  The bottom of the drum (that which

would be seen by an observer directly below) consists of 5 concentric rings of vertical flutes set

at an angle into the center."  (Pl. Ex. W-72 at 1.)  This Court finds instructive that this fixture's

name is "7-inch drum."  Plaintiff produced as evidence a physical sample (Pl. Ex. 221),

photograph (Pl. Ex. 160) and SKU information packet (Pl. Ex. 72).

The glass has a visible surface area of 52.7 square inches, which constitutes eighty-four

percent of the whole, and weighs 15.4 ounces, which constitutes sixty-eight percent of the total

weight.  (Pl. Ex. W-72 at 1.)  The metal has a visible surface area of 10.1 square inches, which

constitutes sixteen percent of the whole, and weighs 5.3 ounces, which constitutes twenty-four

percent of the total weight.  (*Id*.)  This Court finds that the glass has much greater visible surface

area and weighs notably more than the metal.  This Court also considers the factor "material's

role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and

metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and distribute light through refraction and diffusion, to protect the lamp, and

to shield the lamp from view.  (*Id*.)  According to Mr. Mintz, "[t]he glass shade is so heavily

articulated by a variety of prisms, flutes, concentric rings, painted bands, clearly that's the main

decorative element[s]" (Trial Tr. 394, Oct. 18) and the "articulated drum . . . will both glow in the painted bands and sparkle in the clear prismatic and fluted bands" (*id*. at 396).

This Court finds that the metal component: consists of a standard metal fitter of a chrome finish; comprises approximately one-fifth of the total visible surface area; weighs approximately one-fourth of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components, and mounts the fixture to the ceiling. This Court finds that the glass component: consists of a highly stylized decorative shade with four alternating bands, two of which are painted white, that gives the fixture its name; comprises approximately four-fifths of the total visible surface area; weighs approximately two-thirds of the entirety of the fixture; directs and distributes light through refraction and diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 385-432 is imparted by its glass. Accordingly, this Court holds that SKU 385-432 and its agreed upon represented SKU 385-429 properly fall under HTSUS subheading 9405.10.80.

(b)      SKU 385-396 (Pl. Ex. W-70)

SKU 385-396 is also a "drum" fixture. (Pl. Ex. W-70 at 1.) The description Home Depot provided for this fixture is nearly identical to that for SKU 385-432; however, Home Depot did not specify this fixture's diameter. (*Id*.) Another difference is that this fixture has a white metal finish. (*Id*.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 70.) Both Mr. St. John and Mr. Mintz confirmed that the only

difference between SKUs 385-432 and 385-396 is the finish on the metal. (Trial Tr. 996-97, Oct. 26; Trial Tr. 1247, Oct. 27.) This Court agrees with the witnesses.

Upon examination of all the evidence, this Court finds that SKUs 385-432 and 385-396 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-432 to SKU 385-396, this Court finds that the essential character of SKU 385-396 is imparted by the glass. Accordingly, this Court holds that SKU 385-396 properly falls under HTSUS subheading 9405.10.80.

### 6. HALOPHANE STYLE

Mr. St. John testified that these fixtures are known as Halophane because they all have at least one piece of Halophane style glass. (Trial Tr. 1113, Oct. 26.) This Court finds instructive that these fixtures are known as "Halophane," which refers to the glass. Mr. St. John explained that these fixtures are imitation because true Halophane is glass that has been chemically treated. (*Id*. at 1112.) Halophane "was originally developed as a large area, high bay, warehouse light." (*Id*.) Mr. Mintz elucidated the name Halophane originates from the company that invented this type of glass in the 1920s. (Trial Tr. 1379, Oct. 27.) Halophane has become a generic term for a glass refractor with vertical ribbed prisms in the lighting industry. (*Id*.) Mr. Mintz asserted "the reason that anybody would buy any of these [Halophane] fixtures is because . . . they like the appearance of the [H]alophane or the [H]alophane style refractor." (*Id*. at 1385.)

### (a)      SKU 369-692 (Pl. Ex. W-49)

SKU 369-692 is a "[f]lush mounted wall fixture consisting of a ridged [H]alophane glass shade set into a metal fitter that is attached by a thin, curved metal stem into a metal mounting

plate, all of a polished brass finish." (Pl. Ex. W-49 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 211), photograph (Pl. Ex. 150) and a SKU information packet (Pl. Ex. 49). The Court noted a discrepancy in the evidence. While the photographs depict a glass shade with a metal trim, the physical sample of this fixture lacks a metal trim around the shade. Mr. Mintz testified that he saw the metal ring when he first viewed the sample, and he described that "it was a polished brass finish trim ring that sat on the bottom edge of the refractor . . .[and was] maybe 5/8 to 3/4 of an inch wide." (Trial Tr. 1380, Oct. 27.) This Court accepts the testimony that this fixture included a polished brass metal ring when it was imported. Mr. St. John offered that the "base plate and arm are standard items that are used in a variety of different fixtures, and which have no particular style in and of themselves." (Pl. Ex. 49 at 3.)

The glass has a visible surface area of 66.4 square inches, which constitutes forty-nine percent of the whole, and weighs 17.2 ounces, which constitutes sixty-three percent of the total weight. (Pl. Ex. W-49 at 1.) The metal has a visible surface area of 68.1 square inches, which constitutes fifty-one percent of the whole, and weighs 7.8 ounces, which constitutes twenty-nine percent of the total weight. (*Id*.) It is unclear whether these measurements include the metal trim ring that is missing from the physical sample. Therefore, this Court finds that the visible surface area is too close to favor either component but a weight comparison favors the glass. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute the light through refraction, to protect the lamp, and to shield the lamp from view. (*Id.*)

This Court finds that the metal component: consists of a mounting plate, curved stem, standard fitter and metal trim ring of a polished brass finish; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; and houses the electrical components. This Court finds that the glass component: consists of a highly stylized decorative historical shade that gives the fixture its name; weighs approximately two-thirds of the entirety of the fixture; directs and distributes light through refraction; protects the lamp; shields the lamp from view; breaks up light; and defines and distinguishes this fixture by its Halophane glass. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 369-692 is imparted by its glass. Accordingly, this Court holds that SKU 369-692 properly falls under HTSUS subheading 9405.10.80.

(b)      SKU 522-787 (Pl. Ex. W-106)

SKU 522-787 is a "[h]anging ceiling fixture consisting of a Halophane glass shade that is suspended by a metal mounting cap with a polished brass finish. (Pl. Ex. W-106 at 1.) Although Mr. Mintz noted that Halophane refractors "are curved not straight sided" (Trial Tr. 1382, Oct. 27), he testified that the glass on this fixture has ribs "and to that extent someone might think that it could be classified as a [H]alophane refractor" (*id.*). Plaintiff marked for identification a physical sample of this fixture (Pl. Ex. 239) but failed to move it into evidence. Therefore, the Court did not consider it in this analysis. Plaintiff did produce as evidence a photograph (Pl. Ex. 178) and SKU information packet (Pl. Ex. 106). Upon examination of these exhibits, Plaintiff's Exhibit 178 appears to be missing the metal chain by which the glass shade is suspended. (*Compare* Pl. Ex. 106 *with* Pl. Ex. 178; *see also* Trial Tr. 1082, Oct. 27.)

Mr. St. John insisted that the Halophane glass shade comprises almost the fixture's entire visible surface area. (Pl. Ex. W-106 at 3.) The glass has a visible surface area of 341.7 square inches, which constitutes seventy-five percent of the whole, and weighs 78.9 ounces, which constitutes eighty-six percent of the total weight. (*Id*.) The metal has a visible surface area of 115.1 square inches, which constitutes twenty-five percent of the whole, and weighs 9.5 ounces, which constitutes ten percent of the total weight. (*Id*.) Although it is unclear whether the metal chain was included in these measurements, any impact the chain might have on the measurements is insignificant and would not affect the outcome. Further, this Court finds that the glass has much greater visible surface area and weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute the light through refraction and to protect the lamp. (*Id*.)

This Court finds that the metal component: consists of a mounting cap of a polished brass finish; comprises one-fourth of the total visible surface area; weighs one-tenth of the entirety of the fixture; contributes to the decorative appearance and structure; and suspends the fixture from the ceiling. This Court finds that the glass component: consists of a highly stylized decorative historical shade that gives the fixture its name; comprises three-fourths of the total visible surface area; weighs approximately four-fifths of the entirety of the fixture; directs and distributes light through refraction; protects the lamp; establishes the fixture's scale; and defines and distinguishes this fixture by its Halophane glass. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 522-787 is imparted by

its glass.  Accordingly, this Court holds that SKU 522-787 properly falls under HTSUS

subheading 9405.10.80.

(c)      SKU 629-590 (Pl. Ex. W-112)

SKU 629-590 is a "[w]all sconce consisting of a [H]alophane glass diffuser affixed to a

metal mounting plate with a polished brass finish."  (Pl. Ex. W-112 at 1.)  Plaintiff produced as

evidence a physical sample (Pl. Ex. 243), photograph (Pl. Ex. 182) and SKU information packet

(Pl. Ex. 112).  Mr. St. John explained that this fixture is a "[H]alophane quarter sphere[39] wall

sconce."  (Trial Tr. 1115, Oct. 26.)  Mr. Mintz further offered that this fixture is a wall sconce

with "a ribbed prismatic refractor against a polished metal trapezoidal mounting plate."  (Trial

Tr.1383, Oct. 27.)

The glass has a visible surface area of 54.1 square inches, which constitutes fifty-three

percent of the whole, and weighs 13.8 ounces, which constitutes fifty-six percent of the total

weight.  (Pl. Ex. W-112 at 1.)  The metal has a visible surface area of 47.1 square inches, which

constitutes forty-seven percent of the whole, and weighs 9.9 ounces, which constitutes forty

percent of the total weight.  (*Id*.)  Upon examination of the physical sample, this Court finds that

the metal backplate is visible through the glass, and it appears to comprise as much, if not more,

surface area than the glass.  This Court also finds that the measurements for weight, however,

suitably favor the glass over the metal.  This Court also considers the factor "material's role in

relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal

"contribute[] to decorative appearance" and are "part of [the] structure," the glass further

---

[39] Mr. St. John explained that quarter sphere is when a complete ball is cut in quarters.
(Trial Tr. 1115, Oct. 26.)

functions to direct and distribute the light through the refraction, to protect the lamp excluding the top view, and to shield the lamp from view. (*Id.*)

This Court finds that the metal component: consists of a trapezoidal-shaped backplate of a polished brass; comprises approximately one-half of the total visible surface area but is almost entirely visible through the glass; weighs approximately two-fifths of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale with the backplate. This Court finds that the glass component: consists of a highly stylized decorative historical shade that gives the fixture its name; comprises approximately one-half of the total visible surface area; weighs approximately one-half of entirety of the fixture; directs and distributes light through refraction; protects the lamp; contributes to the fixture's scale with the curved shape of the shade; and defines and distinguishes this fixture from others by its Halophane style glass.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. When a court determines that two or more subheadings merit equal consideration, the GRI is structured with a default provision. "When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration." GRI 3(c). Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando Foods v. United States*, 140 F.3d 1437, 1442 (Fed. Cir. 1998) ("GRI 3(c) . . . provides that if determination of relative specificity is not possible, goods should be classified according to the heading which occurs last in numerical order.") The classifications at issue in this case are subheading 9405.10.60 for light

fittings "of base metal" "other than of brass" and subheading 9405.10.80 for light fittings of "other" than "of base metal." This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 629-590 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(d)     SKU 828-726 (Pl. Ex. W-125)

SKU 828-726 is a "[h]anging ceiling fixture consisting of an umbrella-shaped fluted Halophane glass shade with a metal trim ring of polished brass finish, which mounts into a metal fitter, also of brass finish." (Pl. Ex. W-125 at 1.) Notwithstanding Plaintiff's withdrawal of the physical sample (Pl. Ex. 248),[40] Plaintiff produced a photograph (Pl. Ex. 187) and SKU information packet (Pl. Ex. 125). This Court notes that the images of the fixture differ slightly in Plaintiff's evidence. Plaintiff's Exhibit 125 depicts a bowl-shaped shade with a metal trim ring and suspension chain. Plaintiff's Exhibit 187 depicts a funnel-shaped shade with neither a trim ring nor a chain. Nevertheless, these differences do not impact this Court's conclusion.

Mr. St. John insisted that the Halophane glass shade comprises nearly all of the fixture's visible surface area. (Pl. Ex. W-125 at 3.) The glass has a visible surface area of 365.2 square inches, which constitutes seventy-nine percent of the whole, and weighs 143.3 ounces, which constitutes ninety percent of the total weight. (*Id*. at 1.) The metal has a visible surface area of 97.1 square inches, which constitutes twenty-one percent of the whole, and weighs 13.3 ounces, which constitutes eight percent of the total weight. (*Id*.) Despite the fact there may be a missing metal chain originally included with this fixture, this Court finds that the glass has much greater

---

[40] On the final day of trial, Plaintiff submitted to this Court a list of withdrawn exhibits, including Plaintiff's Exhibit 248, which was only marked for identification during the tenure of the trial. (Trial Tr. 1785, Nov. 2.)

visible surface area and weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute the light through the refraction, to protect the lamp, and to shield lamp from view. (*Id*.)

This Court finds that the metal component: consists of a mounting cap of polished brass finish; comprises approximately one-fifth of the total visible surface area; weighs approximately one-tenth of the entirety of the fixture; contribute to the decorative appearance and structure; and suspends the fixture from the ceiling. This Court finds that the glass component: consists of a highly stylized decorative historical shade that gives the fixture its name; comprises four-fifths of the total visible surface area; weighs nine-tenths of the entirety of the fixture; directs and distributes light through refraction; protects the lamp; shields lamp from partial view; establishes the fixture's scale; and defines and distinguishes this fixture by its Halophane style glass. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 828-726 is imparted by its glass. Accordingly, this Court holds that SKU 828-726 properly falls under HTSUS subheading 9405.10.80.

(e)      SKU 828-734 (Pl. Ex. W-126)

SKU 828-734 is a "[w]all-fixture consisting two fluted Halophane glass shades, each with a metal bottom trim ring and mounted into a fitter that attaches to a small metal center-bar and escutcheon plate[41] by means of a thin, curved metal stem." (Pl. Ex. W-126 at 1.) Plaintiff produced as evidence a SKU information packet which includes an adequate image of this

---

[41] An "escutcheon plate" is a decorative backplate. (Trial Tr. 1280, Oct. 27.)

fixture. (Pl. Ex. 126.) Mr. St. John testified that SKU 828-734 is a two-lamp version of SKU 369-692. (Trial Tr. 1116, Oct. 26.) This Court agrees.

This Court finds that SKUs 369-692 and 828-734 are substantially identical fixtures. This Court finds that the difference of the number of lamps on otherwise identical fixtures does not significantly affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 369-692 to SKU 828-734, this Court finds that the essential character of SKU 828-734 is imparted by its glass. Accordingly, this Court holds that SKU 828-734 properly falls under HTSUS subheading 9405.10.80.

### 7. VICTORIAN STYLE[42]

Mr. Mintz explained that the this fixture's style is called Victorian in the industry because "it's a fancy design. Victorian fabrics, Victorian wallpaper [] had a lot of flower motifs and [were] very decorative." (Trial Tr. 1252-53, Oct. 27.) Mr. Mintz advanced that the first six fixtures in this group have identical shades. (*Id.* at 1262.) He explained that the fixtures in this group have "substantially the same glass shade" which provides the "'Victorian' characteristic" (*id.*) and "distinctive appearance" (*id.* at 1264). This group of fixtures uses a standard fitter. (*Id.* at 1263; Trial Tr. 1007, Oct. 26.)

#### (a)      SKU 361-570 (Pl. Ex. W-43)

SKU 361-570 is a "[f]lush mounted ceiling fixture consisting of a translucent, white, frosted glass shade, with ridges, pebbling and fluting set into a ridged, metal mounting plate of a[n] antique brass finish." (Pl. Ex. W-43 at 1.) Plaintiff produced as evidence a physical sample

---

[42] Although Plaintiff named this group "Victorian Fluted" (see Phase II 3), this Court elects to drop the term fluted since Plaintiff's own witnesses had differing definitions for fluted but they both agreed that all the fixtures in this group are Victorian. (*Compare* Trial Tr. 1004, Oct. 26, *with* Trial Tr.1261-62, Oct. 27.)

(Pl. Ex. 207), photograph (Pl. Ex. 146) and SKU information packet (Pl. Ex. 43.) Although

admitting that "the [metal] canopy is decorative," Mr. Mintz declared that the canopy "is

subordinate in decorative appearance to the shade." (Pl. Ex. W-43 at 3.)

The glass has a visible surface area of 37.7 square inches, which constitutes forty percent

of the whole, and weighs 7.1 ounces, which constitutes fifty-five percent of the total weight. (Pl.

Ex. W-43 at 1.) The metal has a visible surface area of 56.7 square inches, which constitutes

sixty percent of the whole, and weighs 3.9 ounces, which constitutes thirty percent of the total

weight. (*Id*.) This Court finds that the metal has greater visible surface area than the glass, but

the glass weighs more than the metal. This Court also considers the factor "material's role in

relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal

"contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp

from view. (*Id*.)

This Court finds that the metal component: consists of a standard fitter and decorative

canopy of an antique brass finish; comprises approximately three-fifths of the total visible

surface area; weighs approximately one-third of the entirety of the fixture; contributes to the

decorative appearance and structure; houses the electrical components, and mounts the fixture to

the ceiling. This Court finds that the glass component: consists of a highly stylized Victorian era

shade; comprises approximately two-fifths of the total visible surface area; weighs approximately

one-half of the entirety of the fixture; directs and softens light through diffusion; protects the

lamp; shields the lamp from view; contributes to the decorative appearance and structure; and

defines this fixture from design and marketability standpoints. This Court finds that the

Victorian style shade distinguishes this fixture.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 361-570 is imparted by its glass.  Accordingly, this Court holds that SKU 361-570 properly falls under HTSUS subheading 9405.10.80.

(b)     SKU 361-617 (Pl. Ex. W-44)

SKU 361-617 is a "[f]lush mounted ceiling fixture consisting of three translucent, white, frosted glass shades, with ridges, pebbling and fluting set into a ridged, metal mounting plate of a[n] antique brass finish."  (Pl. Ex. W-44 at 1.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 208), photograph (Pl. Ex. 147) and SKU information packet (Pl. Ex. 44).  Mr. St. John submitted that this fixture is "essentially the same fixture [as SKU 361-570]; however, it has three [] Victorian fluted glass shades." (Trial Tr. 1000, Oct. 26.)  Mr. Mintz further explained that this fixture appears to have "the same finish on the fitter, but it's a 3 lamp cluster rather than a single." (Trial Tr. 1253, Oct. 27.)  He also noted that SKUs 361-570 and 361-617 have the same glass shades. (*Id*.)  This Court agrees with the witnesses.

The glass has a visible surface area of 113.1 square inches, which constitutes fifty-four percent of the whole, and weighs 20.4 ounces, which constitutes fifty-nine percent of the total weight.  (Pl. Ex. W-44 at 1.)  The metal has a visible surface area of 95.9 square inches, which constitutes forty-six percent of the whole, and weighs 8.5 ounces, which constitutes twenty-five percent of the total weight. (*Id*.)  This Court finds that the glass has greater visible surface area and weighs notably more than the metal.  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (*Id.*)

This Court finds that the metal component: consists of three standard fitters and a decorative canopy of an antique brass finish; comprises approximately one-half of the total visible surface area; weighs one-fourth of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components, and affixes the fixture to the wall. This Court finds that the glass component: consists of three highly stylized Victorian era shades; comprises approximately one-half of the total visible surface area; weighs approximately three-fifths of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints.  This Court finds that the Victorian style shades distinguishes this fixture.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 361-617 is imparted by its glass. Accordingly, this Court holds that SKU 361-617 properly falls under HTSUS subheading 9405.10.80.

(c)      <u>SKU 361-620 (Pl. Ex. W-45)</u>

SKU 361-620 is a "[f]lush mounted ceiling fixture consisting of three translucent, white, frosted glass shades, with ridges, pebbling and fluting set into a ridged, metal mounting plate of a brass finish."  (Pl. Ex. W-45 at 1.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 209), photograph (Pl. Ex. 148) and SKU information packet (Pl. Ex. 45).  Mr. St. John asserted that this fixture is the same as SKU 361-617 but in a polished brass finish rather than an antique brass finish.  (Trial Tr. 1001, Oct. 26.)

This fixture's visible surface area and weight measurements and the material's roles in relation to the use of the good are identical to SKU 361-617. (*Compare* Pl. Ex. W-44 at 1 *with* Pl. Ex. W-45 at 1.) Upon examination of all the evidence, this Court finds that SKUs 361-617 and 361-620 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 361-617 to SKU 361-620, this Court finds that the essential character of SKU 361-620 is imparted by the glass. Accordingly, this Court holds that SKU 361-620 properly falls under HTSUS subheading 9405.10.80.

(d)      SKU 361-634 (Pl. Ex. W-46)

SKU 361-634 is a "[f]lush mounted wall fixture consisting of a translucent, white, frosted glass shade, with ridges, pebbling and fluting set into a metal fitter that is attached by a thin, curved metal stem into a ridge, metal mounting plate" (Pl. Ex. W-46 at 1), all of an antique brass finish (Trial Tr. 1256, Oct. 27). Plaintiff produced as evidence a physical sample (Pl. Ex. 210), photograph (Pl. Ex. 149) and SKU information packet (Pl. Ex. 46). Mr. Mintz offered that this fixture is a wall sconce version as SKU 361-570. (Trial Tr. 1255, Oct. 27.) Mr. St. John explained that "once again you have the same piece of glass [as other fixtures in this group], the same backplate, you simply add a light tubing arm to the fixture." (Trial Tr. 1001-02, Oct. 26.)

The glass has a visible surface area of 30.6 square inches, which constitutes thirty-seven percent of the whole, and weighs 6.9 ounces, which constitutes forty-six percent of the total weight. (Pl. Ex. W-46 at 1.) The metal has a visible surface area of 53.2 square inches, which constitutes sixty-three percent of the whole, and weighs 6.2 ounces, which constitutes forty-one

percent of the total weight. (*Id*.) This Court finds that the metal has more visible surface area than the glass, but the glass weighs slightly more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.)

This Court finds that the metal component: consists of a standard fitter, curved stem, and decorative canopy of an antique brass finish; comprises than two-thirds of the total visible surface area; weighs approximately two-fifths of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components; and affixes the fixture to the wall. This Court finds that the glass component: consists of a highly stylized Victorian era shade; comprises approximately one-third of the total visible surface area; weighs approximately one-half of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints. Notwithstanding the contribution of the curved metal arm in this fixture, this Court finds that the Victorian style shade distinguishes this fixture. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 361-634 is imparted by its glass. Accordingly, this Court holds that SKU 361-634 properly falls under HTSUS subheading 9405.10.80.

(e)      SKU 361-651 (Pl. Ex. W-47)

SKU 361-651 is a "[f]lush mounted wall fixture consisting of a translucent, glass shade with ridges, pebbling and fluting set into a metal fitter that is attached by a thin, curved metal

stem into a ridge, metal mounting plate." (Pl. Ex. W-47 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of an adequate image of the fixture.  (Pl. Ex. 47.)  Mr. St. John asserted that this fixture is identical to SKU 361-634, except this fixture has a polished brass finish.  (Trial Tr. 1002, Oct. 26.)  Mr. Mintz confirmed that the only difference between these two fixtures is the finish on the metal.  (Trial Tr. 1256, Oct. 27.)

Upon examination of all the evidence, this Court finds that SKUs 361-634 and 361-651 are substantially identical fixtures.  This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 361-634 to SKU 361-651, this Court finds that the essential character of SKU 361-651 is imparted by the glass.  Accordingly, this Court holds that SKU 361-651 properly falls under HTSUS subheading 9405.10.80.

(f)      SKU 361-665 (Pl. Ex. W-48)

SKU 361-665 is a "[f]lush mounted wall fixture consisting of two translucent glass shades, with ridges, pebbling and fluting set into metal fitters that are attached by thin, curved metal stems into a ridged, metal mounting plate, all of a brass finish." (Pl. Ex. W-48 at 1.) Plaintiff produced as evidence a SKU information packet consisting of an adequate image of the fixture.  (Pl. Ex. 48.)  Mr. Mintz posited that "[SKU 361-665] is similar to [SKU 361-634], only it has 2 lamps, 2 shades, 2 arms.  And it is antique brass." (Trial Tr. 1256, Oct. 27.)  This Court agrees with the witness.

Upon its own examination of the evidence, this Court finds that SKUs 361-634 and 361-665 are substantially identical fixtures.  This Court finds that the number of shades and arms on otherwise identical fixtures does not significantly affect the essential character analysis.

Therefore, adopting and applying the analysis of SKU 361-634 to SKU 361-665, this Court finds

that the essential character of SKU 361-665 is imparted by the glass. Accordingly, this Court

holds that SKU 361-665 properly falls under HTSUS subheading 9405.10.80.

(g)      SKU 586-307 (Pl. Ex. W-111)

SKU 586-307 is a "[f]lush mounted wall sconce consisting of a translucent white frosted

glass shade mounted in a metal base affixed to a metal mounting plate, each with a polished brass

finish with [an] on/off switch." (Pl. Ex. W-111 at 1.) Plaintiff produced as evidence a physical

sample (Pl. Ex. 242), photograph (Pl. Ex. 181) and SKU information packet (Pl. Ex. 111). Mr.

St. John claimed that this fixture is "very similar to [SKU 361-634], except the glass shade is

supported slightly differently. It's still a one light sconce and we have added an on-and-off

switch to it . . . And the glass [shade] is slightly different. However, it is still a Victorian flute."

(Trial Tr. 1002, Oct. 26.) He explained that this fixture's glass is blown – "air is blown into the

glass to mold it into this shape" – and it "is only partially frosted with a grape pattern in it." (*Id*.

at 1003.)

The glass has a visible surface area of 49.2 square inches, which constitutes fifty-five

percent of the whole, and weighs 5.0 ounces, which constitutes forty-six percent of the total

weight. (Pl. Ex. W-111 at 1.) The metal has a visible surface area of 40.6 square inches, which

constitutes forty-five percent of the whole, and weighs 4.0 ounces, which constitutes thirty-seven

percent of the total weight. (*Id*.) This Court finds that the visible surface area and weight favors

the glass over the metal. This Court also considers the factor "material's role in relation to the

use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to

decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.)

This Court finds that the metal component: consists of a base and mounting plate of a polished brass finish; comprises approximately one-half of the total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components, and affixes the fixture to the wall. This Court finds that the glass component: consists of a blown, highly stylized Victorian era shade; comprises approximately one-half of the total visible surface area; weighs approximately one-half of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints. This Court finds that the Victorian style shade distinguishes this fixture. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 586-307 is imparted by its glass. Accordingly, this Court holds that SKU 586-307 properly falls under HTSUS subheading 9405.10.80.

(h)      SKU 692-320 (Pl. Ex. W-116)

SKU 692-320 is apparently a "[f]lush mounted wall sconce consisting of a translucent white frosted glass shade mounted in a metal base affixed to a metal mounting plate, of unknown finish with [an] on/off switch." (Pl. Ex. W-116 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a low quality photograph. (Pl. Ex. 116.) Mr. Mintz stated that be believes the last two fixtures have identical shades. (Trial Tr. 1262, Oct. 27.)

Mr. Mintz surmised that SKUs 586-307 and 692-320 are identical. (*Id*.) However, upon further questioning from the Court, Mr. Mintz admitted that he was uncertain. (*Id*. at 1263.) Although Mr. St. John offered testimony that this group's most important feature from a performance perspective is the glass shades, (Trial Tr. 1009, Oct. 26), this Court finds this general testimony insufficient without any corroborating evidence. Upon its own examination of Plaintiff's Exhibit 116 and consideration of witness testimony, this Court finds the evidence inadequate to determine the characteristics of the fixture.

As previously discussed, Customs enjoys a statutory presumption of correctness in its original classification determinations. Although an importer may overcome this presumption by a preponderance of the evidence, this Court finds that Plaintiff has not produced sufficient evidence for SKU 692-320 to rebut this statutory presumption. Accordingly, this Court holds that Customs' classification of SKU 692-320 under HTSUS subheading 9405.10.60 stands.

### 8.       FLUSH MOUNT BOUND GLASS

Mr. St. John testified that the flush mount bound glass fixtures have beveled glass edges, which was the "fashion back in the '70s and '80s. It was all about the beveled glass.[43] It was the traditional style at a price point at the time." (Trial Tr. 107, Oct. 17.) Mr. Mintz asserted that this flush mount bound group is of the same family but "these fixtures vary in their size and in their finish." (Trial Tr. 1324-25, Oct. 27.) He explained that "[i]t is basically the same design which is a very thin metal frame which supports glass panels which are beveled edged. And it's clear to me that the design of the frame is such that it's intended to minimize the mass and appearance of the frame." (*Id*. at 1325.)

---

[43] According to Mr. St. John, "beveled edges are part of the refraction[,] that help spread the light out in a larger area." (Trial Tr. 108, Oct. 17.)

(a)        SKU 385-091 (Pl. Ex. W-59)

SKU 385-091 is listed as an agreed upon representative SKU in the Joint Report but there are no represented SKUs listed.  (Joint Report 3-4.)  This fixture is a "[f]lush mounted ceiling fixture, 11 inches across.  The fixture consists of a housing of beveled glass panels held in place by thin metal members, and a metal mounting plate with attached lamp holders."  (Pl. Ex. W-59 at 1.)  The metal component is of a white finish.  (*Id.*)  The fixture has four lamps.  (Pl. Ex. W-59 at 3.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 215), photograph (Pl. Ex. 154) and SKU information packet (Pl. Ex. 59).  Mr. St. John testified that this fixture was discontinued about three years ago.  (Trial Tr. 105, Oct. 17.)

Regarding the design of the fixture, Mr. St. John explained "the [painted white steel] metal trim that you see here is simply attached to the glass so it can be soldered together.  If it were possible to make a permanent attachment of the glass without the metal, there would be no metal."  (*Id*. at 106.)  Mr. Mintz admitted the "glass is not a free-standing item" (Trial Tr. 377, Oct. 18), "[b]ut every attempt has been made to minimize it" (*id*. at 374).  He asserted that "by virtue of the fact that the glass has a beveled edge [it] is the most important design feature."  (*Id*. at 373.)

The glass has a visible surface area of 123.4 square inches, which constitutes fifty percent of the whole, and weighs 39.4 ounces, which constitutes seventy-two percent of the total weight. (Pl. Ex. W-59 at 1.)  The metal has a visible surface area of 121.1 square inches, which constitutes fifty percent of the whole, and weighs 14.3 ounces, which constitutes twenty-six percent of the total weight.  (*Id*.)  This Court finds that the glass and metal are equal in visible surface area, but the glass weighs notably more than the metal.  This Court also considers the

factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction and to protect the lamp. (*Id*.)

This Court finds that the metal component: consists of a thin member framework, cap and knob of a white painted finish; comprises approximately one-half of the total visible surface area; weighs approximately one-fourth of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components, mounts the fixture to the ceiling; and holds the glass panels in place.  This Court finds that the glass component: consists of beveled glass panels soldered together; comprises one-half of the total visible surface area; weighs approximately three-fourths of the entirety of the fixture; directs and distributes light through refraction; protects the lamp; contributes to the decorative appearance and structure; and defines this fixture from design and marketability standpoints.  This Court finds that the beveled glass panels distinguish this fixture.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 385-091 is imparted by its glass. Accordingly, this Court holds that SKU 385-091 properly falls under HTSUS subheading 9405.10.80.

(b)     SKU 385-057 (Pl. Ex. W-55)

SKU 385-057 is a "[f]lush mounted ceiling fixture consisting of a housing of beveled glass panels held in place by thin metal members, and a metal mounting plate with attached lamp holders." (Pl. Ex. W-55 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of an adequate image of the fixture. (Pl. Ex. 55.)  Plaintiff's witnesses offered

inconsistent testimony regarding the finish of this fixture. Mr. St. John testified that the finish is "verdigris"(Trial Tr. 1065, Oct. 26) while Mr. Mintz submitted that the finish is "polished brass" (Trial Tr. 1325, Oct. 27). Upon its own examination, this Court finds that the image is not clear enough to determine the color of the finish. However, the Court finds this inconsistency does not affect the outcome of the analysis.

Mr. Mintz testified that this fixture is a smaller version of SKU 385-091 – this fixture is nine inches in diameter with three lamps. (Trial Tr. 1325, Oct. 27; *see also* Pl. Ex. W-55.) Upon examination of all the evidence, this Court finds that SKUs 385-091 and 385-057 are substantially identical fixtures. This Court finds the differences of finish on the metal and relative smaller size do not significantly affect the essential character analysis as discussed directly above. Therefore, adopting and applying the analysis of SKU 385-091 to SKU 385-057, this Court finds that the essential character of SKU 385-057 is imparted by the glass. Accordingly, this Court holds that SKU 385-057 properly falls under HTSUS subheading 9405.10.80.

(c)     SKU 385-060 (Pl. Ex. W-56)

SKU 385-060 is a "[f]lush mounted ceiling fixture consisting of a housing of beveled glass panels held in place by thin metal members, and a metal mounting plate with attached lamp holders [of a] white metal finish." (Pl. Ex. W-56 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color photocopy of the fixture. (Pl. Ex. 56.) Plaintiff's witnesses asserted that SKU 385-060 is essentially the same as SKU 385-091, except perhaps with a different number of lamps. (Trial Tr. 1069, Oct. 26; Trial Tr. 1287, Oct. 27.)

Upon examination of all the evidence, this Court finds that SKUs 385-091 and 385-060 are substantially identical fixtures.  This Court finds that a different number of lamps in an otherwise identical fixture do not affect the essential character analysis.  Therefore, adopting and applying the analysis of SKU 385-091 to SKU 385-060, this Court finds that the essential character of SKU 385-060 is imparted by the glass.  Accordingly, this Court holds that SKU 385-060 properly falls under HTSUS subheading 9405.10.80.

(d)      SKU 385-074 (Pl. Ex. W-57)

SKU 385-074 is a "[f]lush mounted ceiling fixture consisting of a housing of beveled glass panels held in place by thin metal members, and a metal mounting plate with attached lamp holders [of a] polished brass metal finish."  (Pl. Ex. W-57 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a color photocopy of the fixture.  (Pl. Ex. 57.)  Both Mr. St. John and Mr. Mintz testified that the only difference between SKUs 385-091 and 385-074 is the color of the finish.  (Trial Tr. 1065, Oct. 26; Trial Tr. 1325, Oct. 27.)

Upon examination of all the evidence, this Court finds that SKUs 385-091 and 385-074 are substantially identical fixtures.  This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis.  Therefore, adopting and applying the analysis of SKU 385-091 to SKU 385-074, this Court finds that the essential character of SKU 385-074 is imparted by the glass.  Accordingly, this Court holds that SKU 385-074 properly falls under HTSUS subheading 9405.10.80.

(e)      SKU 385-088 (Pl. Ex. W-58)

SKU 385-088 is a "[f]lush mounted ceiling fixture consisting of a housing of beveled glass panels held in place by thin metal members, and a metal mounting plate with attached lamp

holders [of a] verde metal finish." (Pl. Ex. W-58 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a low quality image of the fixture. (Pl. Ex. 58.)

Mr. St. John testified that the only difference between SKUs 385-091 and 385-088 is the color of the finish. (Trial Tr. 1065, Oct. 26.) This Court finds the image inadequate to determine the color of the finish. (Pl. Ex. 58 at 1.) The text of the SKU information packet, however, indicates that SKUs 385-088, 385-091 and 385-124 are similar but for their finishes. (*Id*.) Upon examination of all the evidence, this Court finds that SKUs 385-091 and 385-088 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-091 to SKU 385-088, this Court finds that the essential character of SKU 385-088 is imparted by the glass. Accordingly, this Court holds that SKU 385-088 properly falls under HTSUS subheading 9405.10.80.

(f)      SKU 385-124 (Pl. Ex. W-60)

SKU 385-124 is a "[f]lush mounted ceiling fixture consisting of a housing of beveled glass panels held in place by thin metal members, and a metal mounting plate with attached lamp holders [with a] polished brass metal finish." (Pl. Ex. W-60 at 1.) Plaintiff produced as evidence a SKU information packet with a low quality image of the fixture. (Pl. Ex. 60.)

Both Mr. St. John and Mr. Mintz testified that the only difference between SKUs 385-091 and 385-124 is the color of the finish. (Trial Tr. 1065, Oct. 26; Trial Tr. 1325, Oct. 27.) This Court finds the image inadequate to determine the color of the finish. (Pl. Ex. 60 at 1.) As noted above, the text of the SKU information packet, however, indicates that SKUs 385-088, 385-091 and 385-124 are the similar but for their finishes. (*Id*.) Although admitting he could not

determine the finish from the photograph, Mr. St. John asserted that the finish on this fixture is polished brass because "the SKU number refers to model F 173 PB, PB stands for polished brass." (Trial Tr. 1066, Oct. 26.) Upon examination of all the evidence, this Court finds that SKUs 385-091 and 385-124 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 385-091 to SKU 385-124, this Court finds that the essential character of SKU 385-124 is imparted by the glass. Accordingly, this Court holds that SKU 385-124 properly falls under HTSUS subheading 9405.10.80.

### 9. SEMI-CIRCULAR WALL SCONCE

The semi-circular portion refers to the glass in this group of wall sconces. Mr. St. John testified that the difference within this group is only the style and shape of the glass. (Trial Tr. 1128, Oct. 26.)

#### (a)     SKU 746-871 (Pl. Ex. W-117)

SKU 746-871 is a "[w]all sconce consisting of a glass diffuser mounted into a metal bottom mounting cap." (Pl. Ex. W-117 at 1.) Plaintiff withdrew its Exhibit 184 which was intended to be a photograph of the fixture. (Trial Tr. 1123, 1130, Oct. 26.) Furthermore, because Plaintiff failed to offer into evidence a physical sample of the fixture – Plaintiff's Exhibit 245 – that was marked for identification, this Court cannot consider it. Plaintiff did produce as evidence a SKU information packet with an adequate image of the fixture. (Pl. Ex. 117.) Mr. St. John described this fixture as an "1-light wall sconce with white-cased glass" that has "a polished brass decorative cap and ball that holds it to its backplate." (Trial Tr. 1127, Oct. 26.) Mr. Mintz further described this fixture as "one-half of a translucent glass urn shape." (Trial Tr. 1391, Oct.

27.)  He claimed "that the appearance, performance and marketability of this fixture are based almost entirely on the size, shape and appearance of the glass."  (Pl. Ex. W-117 at 3.)

The glass has a visible surface area of 92.8 square inches, which constitutes ninety-two percent of the whole, and weighs 16.2 ounces, which constitutes eighty-two percent of the total weight.  (*Id*. at 1.)  The metal has a visible surface area of 7.6 square inches, which constitutes eight percent of the whole, and weighs 1.4 ounces, which constitutes seven percent of the total weight.  (*Id*.)  This Court finds that the glass has much greater visible surface area and weighs notably more than the metal.  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (*Id*.)

This Court finds that the metal component: consists of a cap and ball of a polished brass finish; comprises approximately one-tenth of the total visible surface area; weighs approximately one-tenth of the entirety of the fixture; and contributes minimally to the decorative appearance and structure.  This Court finds that the glass component: consists of a translucent shade of half an urn shape; comprises approximately nine-tenths of the total visible surface area; weighs approximately four-fifths of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; contributes to the decorative appearance and structure; establishes the fixture's scale, shape and style; and defines and distinguishes this fixture from a design and marketing perspective.  Upon careful consideration of the totality of these various factors, this Court finds

that the essential character of SKU 746-871 is imparted by its glass. Accordingly, this Court

holds that SKU 746-871 properly falls under HTSUS subheading 9405.10.80.

(b)      SKU 492-742 (Pl. Ex. W-103)

SKU 492-742 is a "[w]all sconce consisting of a frosted, ribbed glass bowl with a metal

mounting and trim ring and a metal bottom cap, both of a polished brass finish." (Pl. Ex. W-103

at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 238), photograph (Pl. Ex. 177)

and SKU information packet (Pl. Ex. 103). Mr. Mintz further described this fixture's glass as

consisting of a "semi[-]circular piece of glass." (Trial Tr. 1391, Oct. 27.) He claimed that the

"appearance, performance and marketability of this lighting fixture are based almost entirely on

the size, shape and appearance of the glass." (Pl. Ex. W-103 at 3.)

The glass has a visible surface area of 44.2 square inches, which constitutes eighty-three

percent of the whole, and weighs 14.1 ounces, which constitutes eighty-five percent of the total

weight. (*Id*. at 1.) The metal has a visible surface area of 8.8 square inches, which constitutes

seventeen percent of the whole, and weighs 1.8 ounces, which constitutes eleven percent of the

total weight. (*Id*.) This Court finds that the glass has much greater visible surface area and

weighs notably more than the metal. This Court also considers the factor "material's role in

relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal

"contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp

from view. (Pl. Ex. W-103 at 1.)

This Court finds that the metal component: consists of a trim ring, cap and ball of a

polished brass finish; comprises approximately one-fifth of the total surface area; weighs

approximately one-tenth of the entirety of the fixture; and functions to contribute to the decorative appearance and structure. This Court finds that the glass component: consists of a frosted, ribbed glass bowl of semi-circular shape; comprises approximately four-fifths of the total visible surface area; weighs approximately four-fifths of the entirety of the fixture; functions to direct and soften light through diffusion; protects the lamp; contributes to the decorative appearance and structure; establishes the fixture's entire scale, shape and style; and defines and distinguishes this fixture from a design and marketing perspective. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 492-742 is imparted by its glass. Accordingly, this Court holds that SKU 492-742 properly falls under HTSUS subheading 9405.10.80.

(c)     SKU 537-296 (Pl. Ex. W-107)

SKU 537-296 is a "[w]all sconce consisting of a frosted glass diffuser with internal (non-visible) mounting mechanism." (Pl. Ex. W-107 at 1.) This Court granted Plaintiff's application to withdraw its Exhibits 179 and 240 during trial "because those exhibits do not exist with respect to this fixture." (Trial Tr. 1129-30, Oct. 26.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 107.) Mr. St. John described this fixture as "probably 99.9 percent visible glass with only two decorative white caps that hold it to its backplate." (Trial Tr. 1128, Oct. 26.) Mr. Mintz further described this fixture's glass as a "half of a circle of a shape which appears to be alabaster or faux alabaster . . . [A]nd all you see is the shape of the glass . . . [except for] a small knob on each corner." (Trial Tr. 1392, Oct. 27.) Mr. Mintz claimed that the "appearance, performance and marketability of this fixture are based almost entirely on the size, shape and appearance of the glass." (Pl. Ex. W-107 at 3.)

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*. at 1.) The glass also contributes to the decorative appearance. (*Id.*)

This Court finds that the metal component: consists of two small knobs; and affixes the fixture to the wall. This Court finds that the glass component: consists of an alabaster or faux alabaster semi-circular shade; directs and softens light through diffusion; protects the lamp; contributes to the structure; constitutes the fixture's decorative appearance; establishes the fixture's scale, shape and style; and defines and distinguishes this fixture from a design and marketing perspective. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 537-296 is imparted by its glass. Accordingly, this Court holds that SKU 537-296 properly falls under HTSUS subheading 9405.10.80.

### 10.     HAMILTON STYLE WALL SCONCE

SKU 482-397 (Pl. Ex. W-94)

SKU 482-397 is a "[w]all-mounted fixture that consists of a bell-shaped glass shade that is frosted with a swirl pattern, and that is mounted into a white metal fitter connected to a white metal mounting plate by a slim, curved stem." (Pl. Ex. W-94 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 231), photograph (Pl. Ex. 170) and SKU information packet (Pl. Ex. 94). Hamilton style is defined by simulated rope. (Trial Tr. 1078-79, Oct. 26.) As with SKU 482-393 (*infra*), this fixture is a regional product only sold in Florida. (*Id*. at 1077-78.) In addition to the swirl pattern, the glass shade has "two horizontal bands impressed into the glass along the edge of the shade." (Trial Tr. 1340, Oct. 27.) Mr. St. John offered that the glass shade

is "the most important to the performance of this fixture." (Trial Tr. 1076, Oct. 26.) However, Mr. St. John testified that neither the glass nor the metal are the most outstanding characteristic but rather these components "work together create the [H]amilton look, this little metal roping indicative of the [H]amilton family." (*Id*. at 1078-79.) Mr. Mintz, although acknowledging the "special effort . . . to add [the Hamilton] design detail" of the faux rope, slightly favored the glass because of its multiple functions and "the relative size of the glass as compared to the metal details." (Trial Tr. 1340-41, Oct. 27.)

The glass has a visible surface area of 81.4 square inches, which constitutes sixty-three percent of the whole, and weighs 16.4 ounces, which constitutes fifty-nine percent of the total weight. (Pl. Ex. W-94 at 1.) The metal has a visible surface area of 47.7 square inches, which constitutes thirty-seven percent of the whole, and weighs 9.4 ounces, which constitutes thirty-four percent of the total weight. (*Id*.) This Court finds that the glass has greater visible surface area and weighs more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.)

This Court finds that the metal component: consists of a mounting plate, curved arm and decorative fitter with two strands of Hamilton style faux rope of a painted white finish; comprises approximately one-third of the total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components; affixes the fixture to the wall; and distinguishes this fixture by the

Hamilton design. This Court finds that the glass component: consists of a large bell-shaped shade with a frosted swirl pattern and two horizontal bands impressed into the glass along the edge of the shade; comprises approximately two-thirds of the total visible surface area; weighs approximately three-fifths of entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 482-397 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

### 11.     WALL SCONCE

Mr. St. John explained that this group of fixtures is predominantly placed in bathrooms. (Trial Tr. 1083, Oct. 26.) He also testified that this fixture "is a very basic – almost a commodity style product and there are twenty to thirty different vendors who wholesale this product with twenty or thirty different pieces of glass in it. . . . They are different fixtures based on the glass." (*Id*. at 1084.) This Court notes, however, the design details on the metal backplate and the style of the metal arms are also notable differences in this wall sconce group. These fixtures "are the same family, just different finishes." (*Id*. at 1081.) The first four fixtures – SKUs 487-110, 487-

176, 487-209, and 487-221[44] – are an one, two, three, four-light family in a chrome finish, and final four fixtures – SKUs 246-610, 246-641, 246-651 and 246-674 – are an one, two, three, four-light family in a brown finish.  (*Id*. at 1080.)

(a)      SKU 487-110 (Pl. Ex. W-95)

SKU 487-110 is a wall sconce consisting of two translucent, opal white, glass shades set into a fluted, metal mounting plate of a chrome finish by thin, curved metal stems with mounting caps."  (Pl. Ex. W-95 at 1.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 232), photograph (Pl. Ex. 171) and SKU information packet (Pl. Ex. 95).  Mr. St. John testified that SKUs 487-110, 487-176, 487-209, and 487-221 "are a[n] 1, 2, 3 and 4-light version of the same fixture.  And are in the same family."  (Trial Tr. 1080, Oct. 26.)  Mr. Mintz parroted Mr. St. John's testimony that these fixtures are in the same family but varying in the number of gangs.[45]  (Trial Tr. 1344, Oct. 27.)

The glass has a visible surface area of 95.4 square inches, which constitutes fifty-nine percent of the whole, and weighs 9.8 ounces, which constitutes forty-four percent of the total weight.  (Pl. Ex. W-95 at 1.)  The metal has a visible surface area of 65.9 square inches, which constitutes forty-one percent of the whole, and weighs 8.9 ounces, which constitutes forty percent of the total weight.  (*Id*.)  This Court finds that the glass has greater visible surface area and weighs slightly more than the metal.  This Court also considers the factor "material's role in

---

[44]  This Court notes that there is a discrepancy in the evidence whether the first four fixtures in this group – SKUs 487-110, 487-176, 487-209, and 487-221 – are wall or ceiling fixtures (compare page one with page three of the corresponding worksheets).  After reviewing all of the evidence, this Court concludes that this group is wall fixtures and treats them as such in the analyses.

[45] "Gang" in this context refers to the number of metal arms, glass shades and lamps of each fixture.  (Trial Tr. 1344, Oct. 27.)

relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.)

This Court finds that the metal component: consists of a decorative mounting plate and two curved arms of a chrome finish; comprises approximately two-fifths of the total visible surface area; weighs approximately two-fifths of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; holds the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of two bell-shaped shades of milky white glass; comprises approximately three-fifths of the total visible surface area; weighs approximately three-fifths of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; contributes to the decorative appearance and structure; and contributes to the fixture's scale.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 487-110 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(b)    SKU 487-176 (Pl. Ex. W-96)

SKU 487-176 is a wall sconce "consisting of two translucent, opal white, glass shades set into a fluted, metal mounting plate of a chrome finish by thin, curved metal stems with mounting caps." (Pl. Ex. W-96 at 1.)  This Court granted Plaintiff's application to withdraw its Exhibits 172 and 223 during trial because these exhibits represented a SKU number not at issue in this case. (Trial Tr. 1346-47, Oct. 27.)  Plaintiff produced as evidence a SKU information packet with an adequate image of the fixture. (Pl. Ex. 96.)

This Court disregards the surface area and weight measurements for this fixture listed on Plaintiff's Exhibit W-96 because these figures represent an exhibit that was withdrawn.  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (*Id*. at 1.)

Mr. Mintz believed SKUs 487-110 and 487-176 to be the same.  (Trial Tr. 1352, Oct. 27.)  Upon examination of all the evidence, this Court finds that SKUs 487-110 and 487-176 are substantially identical fixtures.  Therefore, adopting and applying the analysis of SKU 487-110 to SKU 487-176, this Court finds that both the glass and metal are equally important.  Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture.  *See, e.g., Orlando*, 140 F.3d at 1442.  The applicable classifications are subheadings 9405.10.60 and 9405.10.80.  This Court notes that subheading 9405.10.80 occurs last in numerical order.  Accordingly, this Court holds that SKU 487-176 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(c)      SKU 487-209 (Pl. Ex. W-97)

SKU 487-209 is a wall sconce "consisting of three translucent, opal white, glass shades set into a fluted, metal mounting plate of a chrome finish by thin, curved metal stems with mounting caps." (Pl. Ex. W-97 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 234), photograph (Pl. Ex. 173) and SKU information packet (Pl. Ex. 97). Mr. Mintz described SKU 487-209 as a three gang[46] version of SKUs 487-110 and 487-176. (Trial Tr. 1349, Oct. 27.)

The glass has a visible surface area of 143.1 square inches, which constitutes sixty-three percent of the whole, and weighs 17.4 ounces, which constitutes fifty-one percent of the total weight. (Pl. Ex. W-97 at 1.) The metal has a visible surface area of 84.2 square inches,[47] which constitutes thirty-seven percent of the whole, and weighs 11.3 ounces, which constitutes thirty-three percent of the total weight. (*Id*.) This Court finds that the glass has much greater visible surface area and weighs more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.)

---

[46] As explained above, "gang"refers to the number of metal arms, glass shades and lamps of each fixture. (Trial Tr. 1344, Oct. 27.)

[47] This Court notes that, according to Mr. Kozloski, this fixture's metal component was overstated because the metal backplate was measured as a rectangular shape rather than an oval shape for the visible surface area figure. (Trial Tr. 1651, Oct. 28.) The record does not reflect whether this overstatement applies to all the metal measurements in this group or only this particular fixture. The Court need not decide, however, since it does not affect the outcome of the analysis.

This Court finds that the metal component: consists of a decorative mounting plate and three curved arms of a chrome finish; comprises approximately one-third of the total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; holds the electrical components; and contributes to the fixture's scale.  This Court finds that the glass component: consists of three bell-shaped shades of milky white glass; comprises approximately two-thirds of the total visible surface area; weighs approximately one-half of the total weight of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and contributes to the fixture's scale.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important.  Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442.  The applicable classifications are subheadings 9405.10.60 and 9405.10.80.  This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 487-209 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(d)      SKU 487-221 (Pl. Ex. W-98)

SKU 487-221 is a wall sconce "consisting of four translucent, opal white, glass shades set into a fluted, metal mounting plate of a chrome finish by thin, curved metal stems with mounting caps." (Pl. Ex. W-98 at 1.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 235), photograph (Pl. Ex. 174) and SKU information packet (Pl. Ex. 98).  Mr. Mintz described SKU 487-221 as a four gang version of SKUs 487-110, 487-176, and 487-209.  (Trial Tr. 1349, Oct.

27.)  Upon its own observation, this Court notes this fixture's two outer curved arms appear slightly longer, thinner and wider than on SKU 487-209.

The glass has a visible surface area of 184.0 square inches, which constitutes sixty-one percent of the whole, and weighs 24.2 ounces, which constitutes fifty-one percent of the total weight.  (Pl. Ex. W-98 at 1.)  The metal has a visible surface area of 119.2 square inches, which constitutes thirty-nine percent of the whole, and weighs 16.2 ounces, which constitutes thirty-four percent of the total weight.  (*Id.*)  This Court finds that the glass has greater visible surface area and weighs more than the metal.  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (*Id.*)

This Court finds that the metal component: consists of a decorative mounting plate and four curved arms of a chrome finish, the outer two arms creating notable width to the fixture; comprises approximately two-thirds of the total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; holds the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of four bell-shaped shades of milky white glass; comprises approximately three-fifths of the total visible surface area; weighs approximately one-half of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and contributes to the fixture's scale.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 487-221 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(e)      SKU 246-610 (Pl. Ex. W-21)

SKU 246-610 is a "[w]all fixture consisting of one bell-shaped shade of milky white glass, mounted into a metal fitter that is affixed by a thin, curved metal stem to a metal back-plate, all of which are of a brown finish." (Pl. Ex. W-21 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color photocopy of the fixture. (Pl. Ex. 21.) Mr. St. John testified that SKUs 246-610, 246-641, 246-651 and 246-674 "are 1, 2, 3 and 4-light versions of the same fixture . . . [a]nd are the same family . . . in a brown patina finish." (Trial Tr. 1080, Oct. 26.) Mr. Mintz corroborated that the aforementioned fixtures were one family of fixtures but offered that the finish was "antique bronze" rather than "brown patina." (Trial Tr. 1350, Oct. 27.)

This Court considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure." (Pl. Ex. W-21 at 1). The glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.) This Court finds that the metal component: consists of a decorative mounting plate and a curved arm

of a brown patina finish; contributes to the decorative appearance and structure; affixes the

fixture to the wall; holds the electrical components; and contributes to the fixture's scale.  This

Court finds that the glass component: consists of a bell-shaped shade of milky white glass;

directs and softens light through diffusion; protects the lamp; shields the lamp from view;

contributes to the decorative appearance and structure; and contributes to the fixture's scale.

Upon careful consideration of the totality of these various factors, this Court finds that

both the glass and metal are equally important.  Since both the glass and metal components merit

equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture.

*See, e.g., Orlando*, 140 F.3d at 1442.  The applicable classifications are subheadings 9405.10.60

and 9405.10.80.  This Court notes that subheading 9405.10.80 occurs last in numerical order.

Accordingly, this Court holds that SKU 246-610 falls under HTSUS subheading 9405.10.80

through application of GRI 3(c).

(f)      SKU 246-641 (Pl. Ex. W-22)

SKU 246-641 is a "[w]all fixture consisting of two bell-shaped shades of milky white

glass, mounted into metal fitters that are affixed by two thin, curved metal stems to a metal back-

plate, all of which are of a brown finish." (Pl. Ex. W-22 at 1.)  Plaintiff produced as evidence a

SKU information packet consisting of a clear, color  image of the fixture. (Pl. Ex. 22.)  Both Mr.

Mintz and Mr. St. John agreed that this fixture is similar to SKUs 487-110 and 487-176 (*supra*),

except for the finish.  (Trial Tr. 1080, Oct. 26; Trial Tr. 1350, Oct. 27.)

Upon examination of all the evidence, this Court finds SKUs 487-110, 487-176 and 246-

641 are substantially identical fixtures.  As previously noted, this Court finds that a different

finish on an otherwise identical fixture does not affect the essential character analysis. Therefore,

adopting and applying the analysis of SKU 487-110 to SKU 246-641, this Court finds that both

the glass and metal are equally important. Since both the glass and metal components merit

equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture.

*See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60

and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order.

Accordingly, this Court holds that SKU 246-641 falls under HTSUS subheading 9405.10.80

through application of GRI 3(c).

(g)      <u>SKU 246-651 (Pl. Ex. W-23)</u>

SKU 246-651 is a "[w]all fixture consisting of three bell-shaped shades of milky white

glass, mounted into metal fitters that are affixed by thin, curved metal stems to a metal back-

plate, all of which are of a brown finish." (Pl. Ex. W-23 at 1.) Plaintiff produced as evidence a

SKU information packet consisting of an adequate image of the fixture. (Pl. Ex. 23.) Both Mr.

Mintz and Mr. St. John agreed that this fixture is similar to SKU 487-209 (*supra*), except for the

finish. (Trial Tr. 1080, Oct. 26; Trial Tr. 1350, Oct. 27.)

Upon examination of all the evidence, this Court finds SKUs 487-209 and 246-651 are

substantially identical fixtures. As discussed above, this Court finds that a different finish on an

otherwise identical fixture does not affect the essential character analysis. Adopting and

applying the analysis of SKU 487-209 to SKU 246-651, this Court finds that both the glass and

metal are equally important. Since both the glass and metal components merit equal

consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See,*

*e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and

9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order.

Accordingly, this Court holds that SKU 246-651 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

        (h)     SKU 246-674 (Pl. Ex. W-24)

SKU 246-674 is a "[w]all fixture consisting of four bell-shaped shades of milky white glass, mounted into metal fitters that are affixed by four thin, curved metal stems to a metal back-plate, all of which are of a brown finish." (Pl. Ex. W-24 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 24.) Both Mr. Mintz and Mr. St. John agreed that this fixture is similar to SKU 487-221 (*supra*), except for the finish. (Trial Tr. 1080, Oct. 26; Trial Tr. 1350, Oct. 27.) Upon comparison of these two fixtures, however, there appears to be slight differences in the two outer arms, which could be attributed to the different angles of the photographs. This Court finds, however, these potential differences inconsequential to the outcome.

Upon examination of all the evidence, this Court finds SKUs 487-221 and 246-674 are substantially identical fixtures. As previously discussed, this Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 487-221 to SKU 246-674, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 246-674 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

## 12.    FLOWER PETAL WALL SCONCE

Mr. Mintz testified that this group of fixtures is in the same family, with a varying number of lamps. (Trial Tr. 1344, Oct. 27.) Both Mr. St. John and Mr. Mintz described the glass shades in this group as resembling a flower. (Pl. Ex. W-109 at 3; Trial Tr.1086, Oct. 26.) Mr. St. John asserted that the fixtures in this group "are the exact same [sic] family." (*Id*. at 1085.) He explained that SKU 561-670 has two lamps, SKU 561-682 has three lamps, and SKU 561-748 has a single lamp. (*Id*.)

(a)     SKU 561-748 (Pl. Ex. W-109)

SKU 561-748 is a "[w]all sconce consisting of a glass diffuser affixed to a metal mounting cap with a polished brass finish." (Pl. Ex. W-109 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a relatively low quality image. (Pl. Ex. 109.) The Court indicated during trial that the image was of low quality. (Trial Tr. 1087, Oct. 26.) Mr. Mintz also found the image "not a very good photograph." (Trial Tr. 1359, Oct. 27.) Although Mr. St. John admitted the "the picture of this fixture is of poor quality," he "recognize[d] it as a wall sconce with a stylized glass shade which [creates] the motif and look of this fixture." (Pl. Ex. W-109 at 3.) Therefore, this Court finds that Mr. St. John has personal knowledge of this fixture. (Trial Tr. 1087, Oct. 26.) Furthermore, Home Depot currently sells this fixture. (*Id*.)

Mr. St. John explained this fixture does not have the polished brass backplate as do the others in this group. (*Id*. at 1085.) However, Mr. Mintz testified during trial, "I cannot tell if there's a backplate and I cannot tell if it's the exact same shape" as the other fixtures in this group (Trial Tr. 1358, Oct. 27) and concluded that "it appears to me not to be the same" (*id*. at 1359.) Notwithstanding the uncertainty of the existence of a backplate, this Court finds that Mr.

St. John's personal knowledge of the fixture more persuasive than Mr. Mintz's conjecture based upon the image.

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-109 at 1.) This Court finds that the metal component: consists of mounting cap of a polished brass finish; and contributes minimally to the decorative appearance and structure. This Court finds that the glass component: consists of a flower-shaped shade; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to most of the decorative appearance and structure; and establishes the fixture's scale. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 561-748 is imparted by its glass. Accordingly, this Court holds that SKU 561-748 properly falls under HTSUS subheading 9405.10.80.

(b)      SKU 561-670 (Pl. Ex. W-108)

SKU 561-670 is a "[f]lush mounted wall sconce fixture consisting of two translucent, white, frosted glass shades mounted to a metal mounting plate and with metal bottom caps, both of a polished brass finish." (Pl. Ex. W-108 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a low quality image. (Pl. Ex. 108.) Although he admitted the "the picture of this fixture is of poor quality," Mr. St. John testified that he has personal knowledge of this fixture. (Trial Tr. 1087, Oct. 26.) He recalled holding the fixture in his hands and pointed out his decision to discontinue it. (Trial Tr. 1087, Oct. 26.) Mr. Mintz testified that

"[t]he backplate . . . is just a simple rectangle. That makes it less decorative and almost utilitarian, notwithstanding that it's polished brass. The decorative element of [this] fixture[] is the glass shade." (Trial Tr. 1358, Oct. 27.)

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-108 at 1.) This Court finds that the metal component: consists of a mounting backplate with metal bottom caps of a polished brass finish; contributes minimally to the decorative appearance; and establishes the fixture's structure and scale. This Court finds that the glass component: consists of two highly stylized flower-shaped shades; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to most of the decorative appearance. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 561-670 is imparted by its glass. Accordingly, this Court holds that SKU 561-670 properly falls under HTSUS subheading 9405.10.80.

(c)      SKU 561-682 (Pl. Ex. W-110)

SKU 561-682 is a "[f]lush mounted wall sconce fixture consisting of three translucent, white, frosted glass shades mounted to a metal mounting plate and with metal bottom caps, both of a polished brass finish." (Pl. Ex. W-110 at 1.) Plaintiff produced as evidence a SKU information packet consisting of low quality image. (Pl. Ex. 110.) As with the fixture above, Mr. St. John personally discontinued this fixture. (Trial Tr. 1087, Oct. 26.) Again, Mr. Mintz testified that "[t]he backplate . . . is just a simple rectangle. That makes it less decorative and

almost utilitarian, notwithstanding that it's polished brass. The decorative element of [this] fixture[] is the glass shade."[48] (Trial Tr. 1358, Oct. 27.)

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-110 at 1.) This Court finds that the metal component: consists of mounting backplate with metal bottom caps of a polished brass finish; contributes minimally to the decorative appearance; and establishes the fixture's structure and scale. This Court finds that the glass component: consists of three highly stylized flower-shaped shades; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to most of the decorative appearance. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 561-682 is imparted by its glass. Accordingly, this Court holds that SKU 561-682 properly falls under HTSUS subheading 9405.10.80.

### 13.     GLASS PRISM FIXTURE

(a)     SKU 258-008 (Pl. Ex. W-27)

SKU 258-008 is an agreed upon representative SKU covering SKU 356-093. (Joint Report 3.) SKU 258-008 is a "[h]anging two-tier fixture consisting of twenty decoratively etched and beveled glass panel shades, mounted by thin metal rods around two metal base tiers, each with an array of several lamp holders." (Pl. Ex. W-27 at 1.) The metal components are of a

---

[48] The Court notes that while the description of this fixture and Plaintiff's Exhibit 110 indicate that SKU 561-628 has three glass shades, Mr. Mintz's description indicates only two shades. The Court treats this as a minor discrepancy that does not affect the outcome of this analysis.

polished brass finish. (Trial Tr. 100, Oct. 17.) Plaintiff produced as evidence a physical sample (Pl. Ex. 202), photograph (Pl. Ex. 141) and SKU information packet (Pl. Ex. 27). Home Depot currently carries this fixture. (Trial Tr. 97, Oct. 17.) Mr. St. John explained that "[w]ithout the glass there would be no fixture. The glass panels [] establish the fixture, establish[] its scale in both height and width. And the intention is to create a fixture that comes in a very small box that once assembled has a larger scale feel." (*Id*. at 98.) Mr. Mintz advanced that the "[g]lass panels are [] what give the fixture its dimension, its overall scale and actually its style. They also refract the light [] through the beveled edges which causes a certain amount of sparkle and glitter." (Trial Tr. 362, Oct. 18.) According to Mr. Mintz, the glass alone designates the decorate appearance of this fixture. (*Id*. at 362, 364.)

The glass has a visible surface area of 490 square inches, which constitutes fifty-two percent of the whole, and weighs 146.5 ounces, which constitutes seventy-one percent of the total weight. (Pl. Ex. W-27 at 1.) The metal has a visible surface area of 454.4 square inches, which constitutes forty-eight percent of the whole, and weighs 50.1 ounces, which constitutes twenty-five percent of the total weight. (*Id*.) This Court finds that the glass and metal are nearly equal in visible surface area, but the glass weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal are "part of [the] structure," the glass further functions to direct and distribute light through refraction. (Pl. Ex. W-27 at 1.)

This Court finds that the metal component: consists of a lamp holder base, center column and thin rods creating two tiers of a polished brass finish; comprises approximately one-half of the total visible surface area; weighs approximately one-fourth of the entirety of the fixture;

contributes to structure; contributes minimally to the decorative appearance; houses the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of twenty octagonal-shaped clear glass panels with starburst-like etchings in the center and beveled edges; comprises approximately one-half the total visible surface area; weighs approximately three-fourths of the total weight of the fixture; directs and softens light through refraction; designates the decorative appearance; and contributes to the fixture's scale. Upon careful consideration of the totality of these various factors, this Court finds that the twenty beveled edge and decoratively etched glass panels distinguish this fixture. This Court finds that the essential character of SKU 258-008 is imparted by its glass. Accordingly, this Court holds that SKU 258-008 and its agreed upon represented SKU 356-093 properly fall under HTSUS subheading 9405.10.80.

(b)     SKU 794-885 (Pl. Ex. W-124)

SKU 794-885 is an agreed upon representative SKU covering SKU 441-371. (Joint Report 6.) SKU 794-885 a three light "[h]anging ceiling fixture consisting of six etched and beveled glass panels that are suspended by thin metal members from a central metal stem and lamp holder base, all of which are of a polished brass finish." (Pl. Ex. W-124 at 1; Trial Tr. 166, Oct. 17.) Plaintiff produced as evidence a physical sample (Pl. Ex. 247), photograph (Pl. Ex. 186) and SKU information packet (Pl. Ex. 124). This fixture is typically hung in "[a] hallway or small foyer." (Trial Tr. 166, Oct. 17.) Furthermore, Home Depot currently sells this fixture. (*Id.*)

Mr. Mintz asserted that the glass panels are the most outstanding characteristic because "they have beveled edges, appear to have some etching or design incised in the middle of the

panels which also will refract light and sparkle," and "[i]t's the glass which gives the fixture its dimension, its volume and its decorative appearance." (Trial Tr. 421-22, Oct. 18.) Mr. Mintz added that "[a]bsent the glass, it's just a metal rod." (*Id.* at 422.) Mr. St. John concluded that "the glass makes it the fixture that it is." (Trial Tr. 170, Oct. 17.)

The glass has a visible surface area of 147 square inches, which constitutes fifty-one percent of the whole, and weighs 42 ounces, which constitutes sixty-two percent of the total weight. (Pl. Ex. W-124 at 1.) The metal has a visible surface area of 139.7 square inches, which constitutes forty-nine percent of the whole, and weighs 22.5 ounces, which constitutes thirty-three percent of the total weight. (*Id.*) This Court finds that the glass and metal are nearly equal in visible surface area, but the glass weighs more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal are "part of the structure," the glass further functions to direct and distribute light through refraction. (*Id.*)

This Court finds that the metal component: consists of a lamp holder base, center column and thin rods of a polished brass finish; comprises approximately one-half of the total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to structure; houses the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of six octagonal-shaped clear glass panels with starburst-like etchings in the center and beveled edges; comprises approximately one-half of the total visible surface area; weighs approximately three-fifths of the total weight of the fixture; directs and softens light through refraction; contributes to structure; designates the decorative appearance; and contributes to the fixture's scale. Upon careful consideration of the totality of

these various factors, this Court finds that the beveled edged and decoratively etched glass panels

distinguish this fixture. This Court finds that the essential character of SKU 794-885 is imparted

by its glass. Accordingly, this Court holds that SKU 794-885 and its agreed upon represented

SKU 441-371 properly fall under HTSUS subheading 9405.10.80.

(c)     <u>SKU 235-024 (Pl. Ex. W-15)</u>

SKU 235-024 is a "[w]all fixture consisting of decoratively etched and beveled glass

panels, mounted by thin metal rods around a metal back plate with two lamp holders." (Pl. Ex.

W-15 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color

image of the fixture. (Pl. Ex. 15.) Mr. St. John contended that this fixture "is a wall sconce

version of the pendant [SKU 794-885]." (Trial Tr. 1136-37, Oct. 16.) He described this fixture

as "50 percent of [SKU 794-885] mounted on the wall." (*Id*. at 1137.) Mr. Mintz further

explained that this fixture is "a wall bracket which has 3 panels of glass which are etched as are

the ones in [SKU 794-885]. It's only 3 sided as compared to the pendant fixture [SKU 794-885],

which is 6 sided." (Trial Tr. 1375, Oct. 27.) Mr. Mintz noted that this fixture differs slightly

from SKU 794-885 in that "it has a rectangular glass panels . . . [with] square ends." (*Id*.) Mr.

Mintz asserted that the most outstanding characteristic is the glass panels because "[a]ll the

design is in the glass panels, the etching in the glass panels, that's what makes the light sparkle.

That would refract the light. That's what gives the fixture its mass.[49]" (*Id*. at 1377-78.)

This Court considers the factor "material's role in relation to the use of the good" as listed

in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance"

and are "part of [the] structure," the glass further functions to direct and distribute light through

---

[49] Mr. Mintz explained that "[m]ass is [] the outside bulk or appearance." (Trial Tr. 1378, Oct. 27.)

refraction and diffusion. (Pl. Ex. W-15 at 1.) This Court finds that the metal component: consists of metal backplate with lamp holders and thin rods; contributes to decorative appearance and structure; and houses the electrical components. This Court finds that the glass component: consists of three decoratively etched and beveled edge clear glass panels; directs and softens light through refraction; contributes to decorative appearance and structure; and establishes the fixture's scale. Upon careful consideration of the totality of these various factors, this Court finds that the beveled edge and decoratively etched glass panels distinguish this fixture. This Court finds that the essential character of SKU 235-024 is imparted by its glass. Accordingly, this Court holds that SKU 235-024 properly falls under HTSUS subheading 9405.10.80.

### 14.      KITCHEN PENDANTS BOUND GLASS

Mr. St. John explained that "bound glass" means copper foil adhered "around the edge and then use that copper to solder the panels together." (Trial Tr. 1073, Oct. 26.) Mr. Mintz noted that these fixtures differ in the number of vertical segments on the glass shade. (Trial Tr. 1332-33, Oct. 27.) Because the detailing and the scale are different, Mr. Mintz declared that these fixtures were not in the same family from a design perspective. (*Id*. at 1336.) He offered, however, that these fixtures are the same "design theme of a minimal framework supporting beveled glass panels which in assembly make up a shade, which enclose a stem and socket and arms." (*Id*.) Mr. St. John testified that the most outstanding characteristic of the fixtures in this group is the beveled glass "because there is really no bell-shaped fixture without the glass. (Trial Tr. 1073-74, Oct. 26.)

(a)        SKU 258-628 (Pl. Ex. W-28)

SKU 258-628 is a "hanging ceiling fixture consisting of bell-shaped housing made of beveled glass panels held together by thin metal members, covering a metal stem and connected lamp holders." (Pl. Ex. W-28 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 28.)  Mr. St. John explained this fixture is "a breakfast table pendant made with beveled glass panels in a delicate framework." (Pl. Ex. W-28 at 3.)  This Court considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction and to protect the lamp. (*Id*. at 1.)  Mr. St. John notes, however, that the metal is "primarily [] used to adhere the glass into the shape that it exists."  (Trial Tr. 1074, Oct. 26.)

This Court finds that the metal component: consists of a thin member framework and lampholders of a white finish; contributes minimally to the decorative appearance and structure; suspends the fixture from the ceiling; and contributes to the fixture's scale and shape.  This Court finds that the glass component: consists of beveled panels in three vertical segments with scalloped edges creating the shade of this fixture; contributes to the decorative appearance and structure; directs and distributes light through refraction; protects the lamp; contributes to the fixture's scale and shape; creates the fixture's style; and defines and distinguishes this fixture from a design and marketing perspective.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 258-628 is imparted by its

glass. Accordingly, this Court holds that SKU 258-628 properly falls under HTSUS subheading 9405.10.80.

(b)      SKU 258-776 (Pl. Ex. W-29)

SKU 258-776 is a "[h]anging ceiling fixture consisting of a bell-shaped housing made of beveled glass panels held together by thin metal members, covering a metal stem and connected lampholders." (Pl. Ex. W-29 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 29.) Mr. St. John testified that this fixture is a smaller version of SKU 258-628, and they are in the same family. (Trial Tr. 1072, Oct. 26.)

This Court finds that SKUs 258-628 and 258-776 are substantially identical fixtures. This Court finds the differences in detailing and scaling are minimal and do not significantly affect the essential character analysis as discussed directly above. Therefore, adopting and applying the analysis of SKU 258-628 to SKU 258-776, this Court finds that the essential character of SKU 258-776 is imparted by its glass. Accordingly, this Court holds that SKU 258-776 properly falls under HTSUS subheading 9405.10.80.

(c)      SKU 259-225 (Pl. Ex. W-30)

SKU 259–225 is a "[h]anging ceiling fixture consisting of a dome-shaped shade made of both flat and curved beveled glass panels – some with decorative etching/screening – held together by thin metal members, covering a metal stem and connected lamp holders." (Pl. Ex. W-30 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 30.) Mr. St. John explained that this fixture is "of similar design" as SKUs 258-628 and 258-776. (Trial Tr. 1073, Oct. 26.) Mr. Mintz, however, described these

fixtures as "distant cousins." (Trial Tr. 1335, Oct. 27.) He pointed out that this fixture has "no down light component" and has a "much more bell shaped" shade compared with SKUs 258-628 and 258-776. (*Id*. at 1334.) Upon its own comparison of the fixtures, this Court notes that this fixture's metal framework has a different finish (brass as opposed to white) and also appears to be more visually prominent.

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction and diffusion and to protect the lamp. (Pl. Ex. W-30 at 1.) This Court finds that the metal component: consists of a thin member framework, stem and lampholders of a brass finish; contributes to the decorative appearance and structure; suspends the fixture from the ceiling; contributes to the fixture's scale and shape. This Court finds that the glass component: consists of beveled panels in three vertical segments with scalloped edges creating the shade of this fixture; contributes to the decorative appearance and structure; directs and distributes light through refraction; protects the lamp; contributes to the fixture's scale and shape; creates the fixture's style; and defines and distinguishes this fixture from a design and marketing perspective. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 259-225 is imparted by its glass. Accordingly, this Court holds that SKU 259-225 properly falls under HTSUS subheading 9405.10.80.

(d)      SKU 259-301 (Pl. Ex. W-31)

SKU 259-301 is a "[h]anging ceiling fixture consisting of a dome-shaped shade made of both flat and curved beveled glass panels – some with decorative etching/screening – held

together by thin metal members, covering a metal stem and connected lamp holders." (Pl. Ex. W-31 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of this fixture. (Pl. Ex. 31.) Mr. Mintz stated that "each facet of the shade consists only of two panels, a bottom panel which has a skirt and a curved bottom, and has etched glass in it, and the upper panel is trapezoidal and curved [and] plain and also has beveled glass. And there is no down light component." (Trial Tr. 1334, Oct. 27.) This Court considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction and diffusion and to protect the lamp. (Pl. Ex. W-31 at 1.)

This Court finds that the metal component: consists of a thin framework and lampholders; contributes to the decorative appearance and structure; suspends the fixture from the ceiling; and contributes to the fixture's scale, shape and style. This Court finds that the glass component: consists of beveled panels in two vertical segments with decoratively etched scalloped edges creating a shade for the fixture; contributes to the decorative appearance and structure; directs and distributes light through refraction and diffusion; protects the lamp; contributes to the fixture's scale and shape; creates the fixture's style; and defines and distinguishes this fixture from a design and marketing perspective. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 259-301 is imparted by its glass. Accordingly, this Court holds that SKU 259-301 properly falls under HTSUS subheading 9405.10.80.

### 15.    PENDANT

Mr. Mintz testified that the first three fixtures in this pendant group – SKUs 482-393, 231-088 and 790-113 – are the same concept in that they all "consist of a pendant fixture which has multiple suspension parts, which terminate in a wide ring, against which the glass diffuser is held by means of the fitting." (Trial Tr. 1373, Oct. 27.)  The fourth fixture – SKU 690-030 – is a different concept than the other fixtures in this group.  (*Id*.)  Mr. Mintz asserted, however, that the most outstanding characteristic of all the fixtures in this group is "the metal suspension system." (*Id*. at 1372.)

### (a)    SKU 482-393 (Pl. Ex. W-93)

SKU 482-393 is an agreed upon representative SKU covering SKUs 379-609 and 457-581.  (Joint Report 6.)  SKU 482-393 is a "[h]anging ceiling fixture that consists of a frosted glass bowl that is mounted into a white metal trim ring and is also capped with a white metal finial.  The bowl and trim ring are suspended by a white metal framework." (Pl. Ex. W-93 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 230), photograph of the fixture's metal framework (Pl. Ex. 169), and SKU information packet with a low quality image of the entire fixture (Pl. Ex. 93 at 11).

The glass has a visible surface area of 147.3 square inches, which constitutes thirty percent of the whole, and weighs 28.5 ounces, which constitutes twenty-five percent of the total weight.  (Pl. Ex. W-93 at 1.)  The metal has a visible surface area of 341.9 square inches, which constitutes seventy percent of the whole, and weighs 78 ounces, which constitutes sixty-nine percent of the total weight.  (*Id*.)  This Court finds that the metal has much greater visible surface area and weighs notably more than the glass.  This Court also considers the factor "material's

role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (*Id*.)  However, from a design perspective, Mr. Mintz posited that the glass diffuser and metal framework work together to define the "appearance, performance and marketability of this lighting fixture." (*Id*. at 3.)

This Court finds that the glass component: consists of a frosted glass bowl; comprises approximately one-third of the total visible surface area; weighs one-fourth of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; and contributes minimally to the decorative appearance and structure.  This Court finds that the metal component: consists of a highly stylized framework, cap and ball of a white finish; comprises approximately two-thirds of the total visible surface area; weighs approximately two-thirds of the fixture; contributes mainly to the decorative appearance and structure; suspends the fixture from the ceiling; houses the electrical components; establishes the fixture's scale; creates the fixture's style; and defines and distinguishes this fixture from a design and marketing perspective.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 482-393 is imparted by its metal.  Accordingly, this Court holds that representative SKU 482-393 and its agreed upon represented SKUs 379-609 and 457-581 properly fall under HTSUS subheading 9405.10.60, affirming Customs' classification.

(b)      SKU 231-088 (Pl. Ex. W-10)

SKU 231-088 is a "[h]anging ceiling fixture that consists of a beveled glass bowl that is mounted into a metal trim ring and is also capped with a metal finial.  The bowl and trim ring are

suspended by a metal framework." (Pl. Ex. W-10 at 1.)  Plaintiff produced a SKU information

packet consisting of a clear, color image of the fixture. (*Id*.)  Mr. Mintz testified that he had the

"same opinion for [SKU] 231-088 as [he did] for SKU 482-393" because they are similar. (*Id*. at

3.)

This Court notes the differences of the style of glass – frosted versus beveled – and the

color of finish – painted white versus polished brass – between these fixtures.  However, this

Court finds that SKUs 482-393 and 231-088 are substantially identical fixtures.  This Court finds

that a different type of glass and color of finish on an otherwise identical fixture does not affect

the essential character analysis.  Therefore, adopting and applying the analysis of SKU 482-393

to SKU 231-088, this Court finds that the essential character of SKU 231-088 is imparted by its

metal.  Accordingly, this Court holds that SKU 231-088 properly falls under HTSUS subheading

9405.10.60, affirming Customs' classification.

(c)      SKU 790-113 (Pl. Ex. W-122)

SKU 790-113 is a "[h]anging ceiling fixture consisting of a frosted and fluted glass

diffusing dome that mounted by a metal trim ring, stem and finial to a metal pendant

framework." (Pl. Ex. W-122 at 1.)  Plaintiff produced a SKU information packet consisting of a

clear, color image of the fixture. (Pl. Ex. 122.)  Mr. Mintz testified that this fixture is similar to

SKUs 482-393 and 231-088. (Trial Tr. 1373, Oct. 27.)  Notwithstanding the different type of

glass, this Court finds that SKUs 482-393 and 790-113 are substantially identical fixtures.

Therefore, this Court adopts and applies the analysis of SKU 482-393 to SKU 790-113.

Consequently, this Court finds that the essential character of SKU 790-113 is imparted by its

metal.  Accordingly, this Court holds that SKU 790-113 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

(d)      SKU 690-030 (Pl. Ex. W-115)

SKU 690-030 is a "[h]anging ceiling fixture consisting of a frosted glass diffusing dome that mounts to a dark metal pendant framework by means of a metal stem and finial." (Pl. Ex. W-115 at 1.)  Plaintiff produced as evidence SKU information packet consisting of an adequate image of this fixture . (Pl. Ex. 115.)  As noted above, this fixture is of a different concept than the other fixtures in this pendant group.  According to Mr. St. John, "the glass bowl is a very important element as the light framework is not significant enough to be a decorative fixture alone." (Pl. Ex. W-115 at 3.)  Mr. Mintz stated, however, that "the appearance, performance and marketability of this lighting fixture are based on the size, finish and configuration of the decorative pendant framework as well as the glass diffuser." (*Id*.)  According to Mr. Mintz, the glass bowl and metal framework work together to "define the decorative and functional aspects of the lighting fixture." (*Id*.)

During trial, Mr. Mintz further asserted that fixture's design is different than the other pendant fixtures.  He explained that this fixture's "glass is held up by the finial and probably just touches these points where the suspension members come down to the edge of the glass.  But the top of the glass is not framed or butted up against any kind of a metal trim." (Trial Tr. 1374, Oct. 27.)  Upon this Court's own examination of the evidence, this Court acknowledges this difference.  Nevertheless, this Court finds that SKU 690-030 is substantially similar to SKUs 482-393, 231-088 and 790-113.  This Court finds the aforementioned difference does not significantly affect the essential character analysis.  Therefore, this Court applies the same

analysis to SKU 690-030 as it did to the others in this pendant group. Consequently, this Court

finds that the essential character of SKU 690-030 is imparted by its metal. Accordingly, this

Court holds that SKU 690-030 properly falls under HTSUS subheading 9405.10.60, affirming

Customs' classification.

### 16.    MIRRORED BATH BAR

Mr. Mintz testified that the fixtures in this group "are all of a family, and so what applies

to one [] applies to all." (Trial Tr. 1281, Oct. 27.) He asserted that the most outstanding

characteristic of this family is the "faux cut glass shades because they give it a very distinctive

appearance." (*Id*.) This fixture group also has a glass mirrored inset on the metal backplate. Mr.

Mintz explained that the "mirrored back has a beveled edge so you get an additional kind of

refracted reflection. That makes all the glass very, very important." (*Id*. at 1282.) According to

Mr. St. John, the mirror inset is "a beveled glass mirror that runs down the center of the

backplate and it does several things. It actually reflects the refracted light out of the cut crystal

globes." (Trial Tr. 1018, Oct. 26.)

#### (a)    SKU 232-963 (Pl. Ex. W-11)

SKU 232-963 is a "[w]all fixture with four bell-shaped shades of faceted glass, affixed by

thin, curved metal stems to a metal back-plate, both of which are of a brass finish." (Pl. Ex. W-

11 at 1.) This fixture also has a glass mirrored inset. (*Id*.) Plaintiff produced as evidence a

physical sample (Pl. Ex. 194), photograph (Pl. Ex. 133), and SKU information packet (Pl. Ex.

11). This "extremely bright" fixture is typically placed in large bathrooms because the cut crystal

shades refract light and the inset mirror creates additional light. (Trial Tr. 1018, Oct. 26.) The

glass shades also "create [] the very formal feeling" of this product. (*Id*.) Mr. St. John further

asserted that the glass shades work in combination with the beveled glass mirror "to dramatically throw the light further out in the room." (*Id*. at 1019.)

The glass has a visible surface area of 240.0 square inches, which constitutes forty-seven percent of the whole, and weighs 54.5 ounces, which constitutes forty-three percent of the total weight. (Pl. Ex. W-11 at 1.) The metal has a visible surface area of 275.0 square inches, which constitutes fifty-three percent of the whole, and weighs 63.5 ounces, which constitutes fifty-one percent of the total weight. (*Id*.) It appears, however, from an examination of the evidence that these glass measurements did not include the glass mirrored inset. (Pl. Ex. 251 at 52.) Since the Court finds that the mirrored inset is an important part of the fixture, and the measurements do not appear to include it, this Court will disregard the visible surface area and weight measurements for this fixture. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-11 at 1.) Furthermore, the mirrored inset in the backplate multiplies the images of the glass shades. (*Id*.)

This Court finds that the metal component: consists of a backplate, four curved stems and fitters of a polished brass finish; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of four faceted glass shades and a mirrored inset centered along the backplate; directs and softens light through refraction; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to

the fixture's scale; and provides the fixture's formal feel. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 232-963 is imparted by its glass. Accordingly, this Court holds that SKU 232-963 properly falls under HTSUS subheading 9405.10.80.

(b)     SKU 233-013 (Pl. Ex. W-12)

SKU 233-013 is a "[w]all fixture with one bell-shaped shade of faceted glass, mounted into a metal fitter that is affixed by a thin, curved metal stem to a glass back-plate with a metal mounting plate. All metal parts are of a brass finish." (Pl. Ex. W-12 at 1.) This fixture also has a glass mirrored inset. (*Id*.) Plaintiff produced as evidence a physical sample (Pl. Ex. 195), photograph (Pl. Ex. 134), and SKU information packet (Pl. Ex. 12). Upon examination of all the evidence, this Court notes that there is a discrepancy in the images of the fixtures. This Court finds the physical sample, Plaintiff's Exhibit 195, matches Plaintiff's Exhibit 134. Therefore, the Court will disregard the image in Plaintiff's Exhibit 12 in this analysis.

Mr. Mintz stated that SKU 233-013 "is very similar [to SKU 232-963], except that it's a single lamp." (Trial Tr. 1279, Oct. 27.) He added that the escutcheon plate is mounted vertically rather than horizontally. (*Id*. at 1280.) As with SKU 232-963 (*supra*), it appears the mirrored inset was not included in the measurements, and thus this Court will disregard the visible surface area and weight measurements for this fixture. (*See* Pl. Ex. 251 at 53.) This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction, to protect

the lamp, and to shield the lamp from view. (Pl. Ex. W-12 at 1.) As aforementioned, the mirrored inset in the backplate multiplies the images of the glass shades. (*Id*.)

This Court finds that the metal component: consists of a backplate, curved arm and fitter of a polished brass finish; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of one faceted glass shade and a mirrored inset centered on the backplate; directs and softens light through refraction; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to the fixture's scale; and provides the fixture's formal feel. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 233-013 is imparted by its glass. Accordingly, this Court holds that SKU 233-013 properly falls under HTSUS subheading 9405.10.80.

(c)      <u>SKU 233-174 (Pl. Ex. W-13)</u>

SKU 233-174 is a "[w]all fixture with two bell-shaped shades of faceted glass, mounted into metal fitters that are affixed by thin, curved metal stems to a metal back-plate, all of which are a brass finish." (Pl. Ex. W-13 at 1.) This fixture also has a mirrored inset. (*Id*.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 13.) As mentioned above, Mr. Mintz asserted that the most outstanding characteristic of this fixture is the "faux cut glass shades because they give it a very distinctive appearance." (Trial Tr. 1281, Oct. 27.) This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and

distribute light through refraction, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-13 at 1.) As mentioned above, the mirror inset in the backplate multiplies the images of the glass shades. (*Id*.)

This Court finds that the metal component: consists of a backplate, two curved stem and fitters of a polished brass finish; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of two faceted glass shades and a mirrored inset centered along the backplate; directs and softens light through refraction; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to the fixture's scale; and provides the fixture's formal feel. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 233-174 is imparted by its glass. Accordingly, this Court holds that SKU 233-174 properly falls under HTSUS subheading 9405.10.80.

(d)      SKU 233-196 (Pl. Ex. W-14)

SKU 233-196 is a "[w]all fixture with three bell-shaped shades of faceted glass, mounted into metal fitters that are affixed by thin, curved metal stems to a metal back-plate, all of which are a brass finish." (Pl. Ex. W-14 at 1.) This fixture also has a mirrored inset. (*Id*.) Plaintiff produced as evidence a physical sample missing the glass shades (Pl. Ex. 196), photograph of the fixture without the glass shades (Pl. Ex. 135), and SKU information packet with an adequate image of the entire fixture. (Pl. Ex. 14.) As previously noted, Mr. Mintz asserted that the most outstanding characteristic of this fixture is the "faux cut glass shades because they give it a very distinctive appearance." (Trial tr. 1281, Oct. 27.)

Because the figures appear to exclude the mirrored inset, this Court will disregard the visible surface area and weight measurements for this fixture. (*See* Pl. Ex. 251 at 54.) This Court considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction, to protect the lamp, and to shield the lamp from view. As mentioned above, the mirror inset in the backplate multiplies the images of the glass shades. (Pl. Ex. W-14 at 1.)

Notwithstanding that the physical sample and one of the images is missing the glass shades, this Court is persuaded that this fixture in its imported state included three faceted glass shades. This Court finds that the metal component: consists of a backplate, three curved stems and fitters of a polished brass finish; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the glass component: consists of three faceted glass shades and a mirrored inset centered along the backplate; directs and softens light through refraction; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to the fixture's scale; and provides the fixture its "formal feel." Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 233-196 is imparted by its glass. Accordingly, this Court holds that SKU 233-196 properly falls under HTSUS subheading 9405.10.80.

### 17.     RESTORATION BATH BAR

Mr. St. John testified that these fixtures are known as "restoration." (Trial Tr. 1014, Oct. 26.) He explained that the metal components – "the arm break" and "smooth tubing" – creates

the restoration style. (*Id*.) The fixtures in this group have a brushed chrome finish.[50] (Trial Tr. 150, Oct. 17.)

(a)      SKU 469-258 (Pl. Ex. W-91)

SKU 469-258 is an agreed upon representative SKU covering SKU 469-528. (Joint Report 6.) SKU 469-258 is a "[w]all-mounted fixture consisting of two bell-shaped glass shades, frosted and with a swirl pattern, mounted into fitters affixed to a metal cross-bar, which is itself mounted to a metal mounting bracket and escutcheon plate." (Pl. Ex. W-91 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 228), photograph (Pl. Ex. 167), and SKU information packet (Pl. Ex. 91).

Mr. St. John admitted that on this fixture, "the [metal] arms are definitely important, probably as important as the glass globes." (*Id*.) From a design perspective, Mr. Mintz gave "equal weight to the metal and the glass." (Trial Tr. 411, Oct. 18.) He stated that "the escutcheon plate and the cross bar are detailed in a way which makes them very important in the design of this fixture, the appearance, what would attract somebody." (*Id*.) He noted that the glass shades are "equally important" because they are frosted and "have a swirl pattern." (*Id.*)

The glass has a visible surface area of 95.4 square inches, which constitutes forty-five percent of the whole, and weighs 9.7 ounces, which constitutes nineteen percent of the total weight. (Pl. Ex. W-91 at 1.) The metal has a visible surface area of 117.9 square inches, which constitutes fifty-five percent of the whole, and weighs 38.8 ounces, which constitutes seventy-four percent of the total weight. (*Id*.) This Court finds that the metal has greater visible surface area and weighs notably more than the glass. This Court also considers the factor "material's

---

[50] Although sometimes referred to as "brushed nickel," Mr. St. John explained during trial that the finish is actually brushed chrome. (Trial Tr. 150, Oct. 17.)

role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and

metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp

from view. (*Id.*)

This Court finds that the glass component: consists of two bell-shaped frosted glass

shades with a swirl pattern; comprises approximately two-fifths of the total visible surface area;

weighs one-fifth of the entirety of the fixture; directs and softens light through diffusion; protects

the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and

contributes to the fixture's scale. This Court finds that the metal component: consists of

mounting plate with stem and cross-bar of a brushed chrome finish that gives the fixture its

name; comprises approximately one-half of the total visible surface area; weighs about three-

fourths of the entirety of the fixture; contributes to the decorative appearance and structure;

affixes the fixture to the wall; houses the electrical components; largely establishes the fixture's

scale; and distinguishes this fixture from a design and marketability stand. Upon careful

consideration of the totality of these various factors, this Court finds that the essential character

of SKU 469-258 is imparted by its metal. Accordingly, this Court holds that SKU 469-258 and

its agreed upon represented SKU 469-528 properly fall under HTSUS subheading 9405.10.60,

affirming Customs' classification.

(b)    SKU 469-231 (Pl. Ex. W-90)

SKU 469-231 is a "[w]all-mounted fixture consisting of a translucent, white, faux

alabaster glass shade, with a swirl pattern, set into a metal fitter that attaches to a metal

escutcheon plate by means of a tubular, metal member." (Pl. Ex. W-90 at 1.) Plaintiff produced

as evidence a physical sample (Pl. Ex. 227), photograph (Pl. Ex. 166), and SKU information packet (Pl. Ex. 90). This fixture is a one-lamp version of SKU 469-258. (Trial Tr. 1013, Oct. 26.)

The glass has a visible surface area of 45.9 square inches, which constitutes thirty-nine percent of the whole, and weighs 15.5 ounces, which constitutes seventy percent of the total weight. (Pl. Ex. W-90 at 1.) The metal has a visible surface area of 71.9 square inches, which constitutes sixty-one percent of the whole, and weighs 4.9 ounces, which constitutes twenty-two percent of the total weight. (*Id*.) This Court finds that the metal has greater visible surface area than the glass, but the glass weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*.)

This Court finds that the glass component: consists of one bell-shaped shade of faux alabaster decorated with a swirl pattern; comprises approximately two-fifths of the total visible surface area; weighs approximately two-thirds of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; and largely establishes the fixture's scale. This Court finds that the metal component: consists of a backplate and large arm break of a brushed chrome finish that gives the fixture its name; comprises approximately three-fifths of the total visible surface area; weighs approximately one-fifth of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components;

contributes to the fixture's scale; creates the fixture's style; and distinguishes this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 469-231 is imparted by its metal. Accordingly, this Court holds that SKU 469-231 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

### 18.     BRASS END BATH BAR

Mr. St. John testified that this group is "a series of different bath brackets." (Trial Tr. 1028, Oct. 26.) Mr. St. John explained that these fixtures have "chrome and polished base metal features with glass shades." (*Id*.) The ends of the metal backplate are capped with brass finish. (*Id*.) He declared last three fixtures in this group – SKUs 768-057, 774-235 and 774-553 – are "in the same family." (*Id*. 1030.) In this family, the fixtures' shades are "a frosted, draped glass," which is "a particular style of glass that actually has folds in the corner that is meant to mimic the way drapes actually gather together." (*Id*. at 1030, 1033-34.)

#### (a)      SKU 143-553 (Pl. Ex. W-9)

SKU 143-553 is a "[w]all-mounted fixture known as a 'Bath Bar,' 24 inches in length. The fixture consists of three bell-shaped, fluted glass shades that mount into metal fitters attached by slim, curved metal stems to a metal back-plate. The fitters, stems and main back-plate are of a chrome finish while the back-plate's end caps are a brass finish."[51] (Pl. Ex. W-9 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 193), photograph (Pl. Ex. 132), and SKU information packet (Pl. Ex. 9). Mr. Mintz claimed that "the appearance, performance and marketability of this lighting fixture are based largely on the appearance and performance of the

---

[51] The brass ends of these bath bars are not actually brass but rather "steel that has been electroplated." (Trial Tr. 1032, Oct. 26.)

glass shades as well as the decorative shape and finish of the supporting mounting plate." (Pl. Ex. W-9 at 3.)

The glass has a visible surface area of 166.6 square inches, which constitutes forty-eight percent of the whole, and weighs 62.8 ounces, which constitutes sixty-three percent of the total weight. (Pl. Ex. W-9 at 1.) The metal has a visible surface area of 179.5 square inches, which constitutes fifty-two percent of the whole, and weighs 30.4 ounces, which constitutes thirty-one percent of the total weight. (*Id*.) This Court notes that there is an asterisk next to the metal component's weight "% of whole," which reads thirty-one percent, and this asterisk indicates the government's disagreement. However, Mr. Kozloski testified that he checked the measurements, and they are now corrected. This Court accepts the corrected measurements. This Court finds that the glass and metal are nearly equal in visible surface area, but the glass weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and distribute light through refraction, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-9 at 1.)

This Court finds that the glass component: consists of three bell-shaped, prismatic shades; comprises approximately one-half of the total visible surface area; weighs approximately two-thirds of the entirety of the fixture; directs and distributes light through refraction; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure. This Court finds that the metal component: consists of curved stems and backplate of a chrome finish and fan-shaped ends of a polished brass finish; comprises approximately one-half of the

total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; contributes to the fixture's scale; and distinguishes this fixture from design and marketability standpoints.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 143-553 is imparted by its metal. Accordingly, this Court holds that SKU 143-553 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

(b)    SKU 768-057 (Pl. Ex. W-119)

SKU 768-057 is a "[w]all-mounted fixture consisting of two translucent frosted glass shades mounted into metal fitters that affix to a chrome crossbar by means of thin, curved metal stems of a brass finish."  (Pl. Ex. W-119 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex. 119.)

Mr. Mintz stated that "the metal and glass contribute equally to the look of this fixture." (Pl. Ex. W-119 at 3.)  Mr. St. John affirmed the components' equality by stating that "this fixture was probably selected based upon this distinctive shade style as much as the decorative bar." (*Id*.)  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (*Id*. at 1.)

This Court finds that the glass component: consists of two translucent frosted, draped shades; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure.  This Court finds that the metal

component: consists of two curved stems of a polished brass finish that are attached to a tubular crossbar and mounting plate of a chrome finish; affixes the fixture to the wall; houses the electrical components; contributes to the fixture's scale; and distinguishes this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 768-057 is imparted by its metal. Accordingly, this Court holds that SKU 768-057 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

(c)     SKU 774-235 (Pl. Ex. W-120)

SKU 774-235 is a "[f]lush mounted wall fixture consisting of three translucent white, frosted, glass shades mounted into metal fitters that are affixed to a chrome metal mounting bar by thin, curved metal stems, of a polished brass finish." (Pl. Ex. W-120 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 120.) As noted above, this fixture is "in the same family" as SKUs 768-057 (*supra*) and 774-553 (*infra*). (Trial Tr. 1030, Oct. 26.)

The testimony regarding the importance and the functions of the metal and glass components is the same for this fixture as for SKU 768-057. This Court notes that the only apparent difference between SKUs 774-235 and 768-057 is the number of lamps. This Court finds that the glass component: consists of three translucent frosted, draped shades; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure. This Court finds that the metal component: consists of three curved stems of a polished brass finish that are attached to a tubular crossbar and mounting plate of a chrome finish; affixes the fixture to the wall; houses the electrical components;

contributes to the fixture's scale; and distinguishes this fixture from design and marketability standpoints.  Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 774-235 is imparted by its metal.  Accordingly, this Court holds that SKU 774-235 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

(d)     SKU 774-553 (Pl. Ex. W-121)

SKU 774-553 is a "[f]lush mounted wall fixture consisting of four translucent white, frosted, glass shades mounted into metal fitters and affixed to a chrome metal mounting bar by thin, curved metal stems, of a polished brass finish." (Pl. Ex. W-121 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex. 121.)  This fixture is "in the same family" as SKUs 768-057 and 774-235.  (Trial Tr. 1030, Oct. 26.)

The testimony regarding the importance and the functions of the metal and glass components is the same for this fixture as for SKUs 768-057 and 774-235.  This Court notes that the only apparent difference between this fixture and SKUs 768-057 and 774-235 is the number of lamps.  The testimony regarding the importance and the functions of the metal and glass components is the same for this fixture as for SKUs 768-057 and 774-235.  This Court finds that the glass component: consists of four swirl patterned frosted, draped shades; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure.  This Court finds that the metal component: consists of four curved stems of a polished brass finish that are attached to a tubular crossbar and mounting plate of a chrome finish; affixes the fixture to the wall; houses the electrical components; contributes

to the fixture's scale; and distinguishes this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 774-553 is imparted by its metal. Accordingly, this Court holds that SKU 774-553 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

### 19.     VARIOUS BATH BAR

The commonality in this group is that these fixtures "have metal back plates with glass shades." (Trial Tr. 1040, Oct. 26.) The second and third fixtures – SKUs 263-110 and 263-107 – "are [] from the same family." (*Id*. at 1041.) The remaining three fixtures, however, are "individuals." (*Id*.)

### (a)     SKU 235-256 (Pl. Ex. W-16)

SKU 235-256 is a "[w]all fixture with four modified bell-shaped shades of frosted glass with a swirl pattern, mounted into metal fitters that are affixed by thin, curved metal arms to a metal mounting bar, all of which are a brass finish." (Pl. Ex. W-16 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 197), photograph (Pl. Ex. 136), and SKU information packet (Pl. Ex. 16.) Mr. Mintz further described the metal component as "a very decorated and decorative crossbar, polished brass finish with sort of an arrow head end, and a curlicue arm that surrounds the arrowhead. And further there are 4 bands of what I think are meant to be simulated wrappings of holding the items together as though it were a sheaf of something, also in the polished brass finish." (Trial Tr. 1297, Oct. 27.) He stated that the metal design is very prominent, detailed, and articulated. (*Id*. at 1298.)

The glass has a visible surface area of 241.9 square inches, which constitutes fifty-nine percent of the whole, and weighs 40.8 ounces, which constitutes forty-five percent of the total weight. (Pl. Ex. W-16 at 1.) The metal has a visible surface area of 169.7 square inches, which constitutes forty-one percent of the whole, and weighs 40.6 ounces, which constitutes forty-five percent of the total weight. (*Id*.) This Court finds that the glass has greater visible surface area than the metal, but the glass and metal are equal in weight. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (*Id*. at 1.) Mr. Mintz testified that this fixture's glass and metal components equally contribute to the design. (Trial Tr. 1298, Oct. 27.)

This Court finds that the glass component: consists four modified bell-shaped shades of glass with a swirl pattern; comprises approximately three-fifths of the total visible surface area; weighs approximately two-fifths of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure. This Court finds that the metal component: consists of four fitters attached to four curved arms that are attached to a tubular crossbar with four decorative vertical bands and intricately detailed ends and a flat circular mounting plate centered in the backplate, all of a highly polished brass finish; comprises approximately two-fifths of the total visible surface area; weighs approximately two-fifths of the entirety of the fixture; defines the decorative appearance; contributes to structure; affixes the fixture to the wall; houses the electrical components; contributes to the fixture's scale; and distinguishes this fixture from design and

marketability standpoints.  Upon careful consideration of the totality of these various factors, this

Court finds that the essential character of SKU 235-256 is imparted by its metal.  Accordingly,

this Court holds that SKU 235-256 properly falls under HTSUS subheading 9405.10.60,

affirming Customs' classification.

(b)      SKU 263-110 (Pl. Ex. W-33)

SKU 263-110 is a "[w]all fixture consisting of four bell-shaped shades of faux alabaster

glass,[52] mounted into metal fitters that are affixed by thin, curved metal stems to a metal

horizontal back-plate, all of which are of an off-white textured finish."  (Pl. Ex. W-33 at 1.)  Mr.

Mintz further described the shades as having a "ribbed pattern."  (Trial Tr. 1301, Oct. 27.)

Plaintiff produced as evidence a physical sample (Pl. Ex. 203), photograph (Pl. Ex. 142), and

SKU information packet (Pl. Ex. 33).

The glass has a visible surface area of 289.8 square inches, which constitutes fifty-six

percent of the whole, and weighs 70.8 ounces, which constitutes fifty-nine percent of the total

weight.  (Pl. Ex. W-33 at 1.)  The metal has a visible surface area of 231.0 square inches, which

constitutes forty-four percent of the whole, and weighs 39.7 ounces, which constitutes thirty-

three percent of the total weight.  (Id.)  This Court finds that the glass has greater visible surface

area and weighs more than the metal.  This Court also considers the factor "material's role in

relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal

"contribute[] to decorative appearance" and are "part of [the] structure," the glass further

functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp

from view.  (Id.)  Mr. Mintz testified that "the appearance, performance and marketability of this

---

[52] Mr. St. John described the glass as "melon cut."  (Trial Tr. 1043, Oct. 26.)

lighting fixture are based largely on the appearance and performance of the glass shades as well as the decorative shape and finish of the supporting mounting plate." (Pl. Ex. W-33 at 3.)

This Court finds that the glass component: consists four bell-shaped shades of ribbed faux alabaster glass; comprises approximately three-fifths of the total visible surface area; weighs approximately three-fifths of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure. This Court finds that the metal component: consists of four curved metal arms attached to a plain crossbar and mounting plate of a textured off-white finish; comprises approximately two-fifths of the total visible surface area; weighs approximately one-third of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale and design.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 263-110 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(c)      SKU 263-107 (Pl. Ex. W-32)

SKU 263-107 is a "[w]all fixture consisting of three bell-shaped shades of frosted glass, mounted into metal fitters that are affixed by thin, curved metal stems to a metal horizontal back-

plate, all of which are of an off-white textured finish." (Pl. Ex. W-32 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex. 32.)  As noted above, Mr. St. John asserted that this fixture and SKU 263-110 (*supra*) are of the same family.  (Trial Tr. 1041-42, Oct. 26.)  He testified that these fixtures are identical except that SKU 263-107 is "a three light version" while SKU 263-110 is "a four light version."  (*Id*. at 1041.)  This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view.  (Pl. Ex. W-32 at 1.)  Mr. Mintz testified that "the appearance, performance and marketability of this lighting fixture are based largely on the appearance and performance of the glass shades as we ll as the decorative shape and finish of the supporting mounting plate."  (*Id*. at 3.)

This Court finds that the glass component: consists three bell-shaped shades of frosted glass; directs and softens light through diffusion; protects the lamp; shields the lamp from view; and contributes to the decorative appearance and structure.  This Court finds that the metal component: consists of three curved metal arms attached to a plain crossbar and mounting plate of a textured off-white finish; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale and design.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important.  Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture.

*See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 263-107 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(d)      SKU 377-882 (Pl. Ex. W-50)

SKU 377-882 is a "[b]ath bar wall fixture consisting of four translucent bell-shaped glass shades, each mounted into a metal fitter and attached by a thin, curved stem to a flat metal back-plate, all of a brass finish." (Pl. Ex. W-50 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 50.) Mr. St. John testified that he is "very familiar" with this fixture because he took part in the decision to discontinue it. (Trial Tr. 1051, Oct. 26.) He further explained that this fixture is "polished brass vanity bar with draped frosted glass."[53] (*Id*. at 1050.)

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and soften light through diffusion, to protect the lamp, and to shield the lamp from view. (Pl. Ex. W-50 at 1.) Mr. Mintz testified that "the appearance, performance and marketability of this lighting fixture are based largely on the appearance and performance of the glass shades as well as the finish of the supporting mounting plate." (*Id*. at 3.)

This Court finds that the glass component: consists four translucent shades with a drape pattern molded into the glass; directs and softens light through diffusion; protects the lamp;

---

[53] Mr. St. John explained that the shades have "physical garland drapes that go around it, molded into the glass." (Trial Tr. 1051, Oct. 26.)

shields the lamp from view; and contributes to the decorative appearance and structure. This Court finds that the metal component: consists of four curved metal arms attached to a plain, rectangular backplate of a polished brass finish; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. Mr. Mintz observed that "although the metal backplate is substantial in surface area, it is devoid of decoration." (Trial Tr. 1308, Oct. 27.)

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 377-882 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

### (e)      SKU 686-386 (Pl. Ex. W-114)

SKU 686-386 is a "[w]all-mounted fixture consisting of three glass shades mounted in metal fitters that are affixed to a metal cross-bar and escutcheon plate by thin curved metal arms. All metal parts are of a pewter finish." (Pl. Ex. W-114 at 1.) The metal cross-bar also has a scroll-like metal piece affixed across its top. (Trial Tr. 1314, Oct. 27.) Plaintiff produced as evidence a SKU information packet consisting of an adequate image of the fixture. (Pl. Ex. 114.) Upon an examination of the evidence, this Court notes that the bell-shaped shades of the fixture are inverted (the lamps and shades face upwards).

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to protect the lamp. (Pl. Ex. W-114 at 1.) Mr. Mintz testified that "the appearance, performance and marketability of this lighting fixture are based on the size, finish and configuration of the escutcheon plate, crossbar and decorative details." (Pl. Ex. W-114 at 3; *see also* Trial Tr. 1315, Oct. 27.) Mr. St. John stated that the most outstanding feature on this fixture is the glass. (Trial Tr. 1045-46, Oct. 26.)

This Court finds that the glass component: consists of three clear, bell-shaped and inverted glass shades; contributes to the decorative appearance and structure; and protects the lamps. This Court finds that the metal component: consists of three curved arms affixed to crossbar with metal scroll-like detailing and escutcheon plate; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 686-386 is imparted by its metal. Accordingly, this Court holds that SKU 686-386 properly falls under HTSUS subheading 9405.10.60, affirming Customs' classification.

(f)      SKU 630-304 (Pl. Ex. W-113)

This is the lone fixture where the main contender against the metal component for essential character is wood rather than glass or plastic. SKU 630-304 is a "[f]lush mounted wall fixture known as a 'Bathroom Bar.'" (Pl. Ex. W-113 at 1.) This fixture is designed to use bare lamps and consists of an oak wood bar into which metal lamp holders and a mounting plate are set. (*Id.*) Plaintiff produced as evidence a SKU information packet consisting of an adequate

image of the fixture. (Pl. Ex. 113). According to Mr. Mintz, "the decorative look of [the] fixture is entirely dependent on which lamp you use. Some people use a clear lamp with a glowing filament. Most people use a softly diffused lamp. The idea is to simulate a makeup light in a theatrical dressing room." (Trial Tr. 1389, Oct. 27.) The Mr. Mintz testified that "the most outstanding characteristic" is the wood "[b]ecause basically that's all there is." (*Id*. at1389-90.)

This Court finds that the metal component: consists of a mounting plate that is not visible; and affixes the fixture to the wall. This Court finds that the wood component: consists of the entire visible backplate; contributes to the decorative appearance and structure; constitutes the only visible component; and defines and distinguishes this fixture. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 630-304 is imparted by its wood. Accordingly, this Court holds that SKU 630-304 properly falls under HTSUS subheading 9405.10.80.

### 20.    RACETRACK BATH BAR

This group constitutes the family of fixtures that has plastic rather than glass or wood as one of the two main components to consider for essential character. (Trial Tr. 1090, Oct. 26.) The "racetrack" design refers to the backplate, which has "little wavy elevations around the side." (*Id*. at 1089.) This Court finds instructive that the name of the fixtures in this group is "racetrack," which refers to the metal. *See supra* § III.B. Mr. Mintz asserted that this group is "truly a family of fixtures." (Trial Tr. 1362, Oct. 27.) Mr. Mintz posited that the fixtures in this group are identical except for the size. (*Id*.) SKU 342-071 has three lamps, SKU 342-103 has four lamps, and SKU 342-104 has five lamps. (*Id*.)

(a)      SKU 342-071 (Pl. Ex. W-39)

SKU 342-071 is a "[b]ath bar wall fixture consisting of a ribbed plastic[54] shade mounted onto a metal back-plate into which three lamp holders are set so as to be covered by the shade." (Pl. Ex. W-39 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex. 39).  This fixture is a basic polished brass racetrack. (Trial Tr. 1089, Oct. 26.)  According to Mr. St. John, the "plastic acrylic lens [] is the only thing that separates it, provides differentiation at a retail level, allowing it to compete with other retailers in the marketplace, so the acrylic lens is really the most important part of the fixture." (*Id*. at 1090.)  Mr. Mintz affirmed the importance of the plastic shade because it is "very distinctive and very special," and it is "highly stylized, highly designed, [] clearly custom-made as opposed to the backplate which is so similar to a back plate that we saw earlier in a bath bar that I would not be surprised if it is the same."  (Trial Tr. 1362-63, Oct. 27.)

This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b).  While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the plastic further functions to direct and distribute light through refraction, to protect the lamp, and to shield the lamp from view.  (Pl. Ex. W-39 at 1.)  Mr. Mintz declared that "[e]ven though the back plate is decorative, the acrylic wave form shade is so distinctive and so stylized that that is what dominates the design.  You either would like that and buy it.  Or you would not like it and not buy it."  (Trial Tr.1363, Oct. 27.)

This Court finds that the metal component: consists of a backplate of a polished brass finish that gives the fixture its name; contributes to the decorative appearance and structure;

---

[54] Mr. Mintz informed the Court that "acrylic is plastic" so these terms will be treated interchangeably throughout this decision.  (Trial Tr. 1362, Oct. 27.)

affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the acrylic component: consists of a wavy, ribbed plastic shade; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to the fixture's scale; and distinguishes this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 342-071 is imparted by its acrylic. Accordingly, this Court holds that SKU 342-071 properly falls under HTSUS subheading 9405.10.80.

(b)     SKU 342-103 (Pl. Ex. W-40)

SKU 342-103 is a "[b]ath bar wall fixture consisting of a wavy ribbed shade mounted onto a metal back-plate into which three lamp holders are set so as to be covered by the shade." (Pl. Ex. W-40 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 40.) This Court notes that the testimony for this fixture mirrors that for SKU 342-071.

This Court finds that the metal component: consists of a backplate of a polished brass finish that gives the fixture its name; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the acrylic component: consists of a wavy, ribbed lens shade; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to the fixture's scale; and distinguishes this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 342-103 is imparted by

its acrylic. Accordingly, this Court holds that SKU 342-103 properly falls under HTSUS subheading 9405.10.80.

(c)     SKU 342-104 (Pl. Ex. W-41)

SKU 342-104 is a "[b]ath bar wall fixture consisting of a ribbed plastic shade mounted onto a metal back-plate into which five lamp holders are set so as to be covered by the shade." (Pl. Ex. W-41 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear, color image of the fixture. (Pl. Ex. 41.) Mr. Mintz described this fixture as identical to SKUs 342-071 and 342-103 except for the number of lamps. (Trial Tr. 1362, Oct. 27.) This Court agrees.

This Court finds that the metal component: consists of a backplate of a polished brass finish that gives the fixture its name; contributes to the decorative appearance and structure; affixes the fixture to the wall; houses the electrical components; and contributes to the fixture's scale. This Court finds that the acrylic component: consists of a wavy, ribbed lens shade; directs and softens light through diffusion; protects the lamp; shields the lamp from view; contributes to the decorative appearance and structure; contributes to the fixture's scale; and distinguishes this fixture from design and marketability standpoints. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKU 342-104 is imparted by its acrylic. Accordingly, this Court holds that SKU 342-104 properly falls under HTSUS subheading 9405.10.80.

B.      **EXTERIOR FIXTURES**

1.      **JELLY JAR**

This group of fixtures is called "jelly jar" or "pickle jar." (Pl. Ex. W-5 at 1, 3; Pl. Ex. W-36 at 1.) As discussed under the interior fixtures section, this Court finds instructive that the name of the fixtures in this group is "jelly jar," which refers to the glass. *See supra* § III.B.

(a&b)  SKUs 113-892 (Pl. Ex. W-5) & 280-740 (Pl. Ex. W-36)

SKUs 113-892 and 280-740 are divisional SKUs. As discussed in the divisional SKU section above, this Court accepts Plaintiff's submission that SKUs 113-892 and 280-740 are identical fixtures explained by the divisional ordering system. *See supra* § IV. Finding that they are identical fixtures, this Court applies the same analysis for SKUs 113-892 and 280-740. SKU 113-892 is also an agreed upon representative SKU covering SKUs 113-908, 113-925, 113-942, and 252-552. (Joint Report 2.)

These are "[f]lush mounted wall fixture[s] known as 'Jelly Jar.' The[se] fixture[s] ha[ve] a jelly jar-shaped shade of clear glass with horizontal fluting, surrounded by a metal fitter linked to a mounting plate, each with antique brass finish." (Pl. Ex. W-36 at 1.) Plaintiff produced as evidence a physical sample (Pl. Ex. 189), photograph (Pl. Ex. 128) and SKU information packets (Pl. Ex. 5; Pl. Ex. 36). According to Mr. St. John, Home Depot is able to market these SKUs as an exterior fixture because of the glass jelly jar. (*Id*. at 82.) Since the glass jelly jar serves to protect the lamp from moisture, this fixture carries the Underwriter Laboratory ("UL") label which makes it suitable for damp locations. (*Id*.) Mr. St. John also declared that the glass jelly jar defines these fixtures from design and marketability standpoints. (Pl. Ex. W-5 at 3; Pl. Ex. W-36 at 3.) Mr. Mintz further explained that the metal base is a "standard fitter" and, thus,

asserted that it is the glass that makes these fixtures "unique" with the "nautical motif." (Trial Tr. 350-52, Oct. 18.) Furthermore, the glass component establishes the scale of the fixture, according to Mr. St. John. (Trial Tr. 80-81, Oct. 17.)

The glass has a visible surface area of 45.1 square inches, which constitutes forty-nine percent of the whole, and weighs 10.1 ounces, which constitutes sixty-one percent of the total weight. (Pl. Ex. W-5 at 1.) The metal has a visible surface area of 47.7 square inches, which constitutes fifty-one percent of the whole, and weighs 4.5 ounces, which constitutes twenty-seven percent of the total weight. (*Id.*) This Court finds that the glass and metal are nearly equal in visible surface area, but the glass weighs notably more than the metal. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and refract light through the flutes, to protect the lamp, and to protect the electrical components from dampness. (*Id.*) Mr. Mintz opined that the glass jelly jar is the "component most essential to the use, visual impression, function and performance of th[ese] lighting fixture[s]." (Pl. Ex. W-5 at 3; Pl. Ex. W-36 at 3.)

This Court finds that the metal component: consists of a standard fitter; comprises approximately one-half of the total visible surface area; weighs approximately one-fourth of the entirety of the fixture; contributes to the decorative appearance and structure; affixes the fixture to the wall; and houses the electrical components. This Court finds that the glass component: consists of a stylized jelly jar-shaped shade that gives the fixtures its name; comprises approximately one-half of the visible surface area; weighs approximately three-fifths of the entirety of the fixture; reflects and refracts light; protects the lamp; protects the electrical

components from dampness; contributes to the decorative appearance and structure; establishes the fixture's scale; defines this fixture from design and marketability standpoints; and distinguishes this fixture by it jar shape and nautical motif. Upon careful consideration of the totality of these various factors, this Court finds that the essential character of SKUs 113-892 and 280-740 is imparted by its glass. Accordingly, this Court holds that SKU 280-740 and representative SKU 113-892 and its agreed upon represented SKUs 113-908, 113-925, 113-942, and 252-552 properly fall under HTSUS subheading 9405.10.80.

### (c)      SKU 252-550 (Pl. Ex. W-25)

SKU 252-550 is a "[f]lush mounted wall fixture known as 'Jelly Jar.' The fixture has a jelly jar-shaped shade of clear glass with horizontal fluting, surrounded by a metal fitter linked to a mounting plate, each with black finish." (Pl. Ex. W-25 at 1.) Plaintiff produced as evidence a SKU information packet consisting of a clear image of the fixture. (Pl. Ex. 25.) Mr. St. John and Mr. Mintz offered that this fixture is the same as SKU 113-892, except that the finish is black. (*Compare* Pl. Ex. W-25 at 1 *with* Pl. Ex. W-5 at 1; Trial Tr. 933, Oct. 24; Trial Tr. 1224, Oct. 27.)

Upon examination of all the evidence, this Court agrees with the witnesses. This Court finds that SKUs 113-892 and 252-550 are substantially identical fixtures. This Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 113-892 to SKU 252-550, this Court finds that the essential character of SKU 252-550 is imparted by the glass. Accordingly, this Court holds that SKU 252-550 properly falls under HTSUS subheading 9405.10.80.

## 2.     BULKHEAD

<u>SKU 240-238 (Pl. Ex. W-19)</u>

SKU 240-238 is a "[f]lush mounted wall fixture consisting a translucent, glass lens, mounted into a black metal housing out of which four thin members crisscross the lens." (Pl. Ex. W-19 at 1.)  This type of fixture is referred to as a "bulkhead fixture" in the lighting industry (Trial Tr. 1075, Oct. 26, Trial Tr. 1337, Oct. 27).  Plaintiff produced as evidence a SKU information packet consisting of an adequate image of the fixture.  (Pl. Ex. 19.)  According to Mr. St. John, this fixture is "meant to be a replica of an actual naval bulkhead light."  (Trial Tr. 1076, Oct. 26.)  He explained that customers often place this fixture around swimming pools and exterior doors (Pl. Ex. W-19 at 3) because its gaskets make it waterproof (Trial Tr. 1075, Oct. 26).  The gaskets allow this fixture to be UL labeled for "wet locations," providing more protection than a mere damp location fixture.  (*Id*. at 1060.)  Mr. St. John elaborated that the glass has "prismatic cuttings in it so you get almost 180 degrees of light from it."  (*Id*. at 1075.)  Although this Court notes that the fixture was neither imported in an illuminated state nor illuminated for illustration anytime during the trial, this Court finds persuasive Mr. St. John's testimony regarding the importance of the glass in the fixture's illuminated state to the performance of the fixture.

Mr. St. John also advanced that the glass has more visible surface area than the metal, but the glass and metal components work together for the design purpose.  (Trial Tr. 1077, Oct. 24.)  Mr. St. John stated the glass and metal are distinct components, separated by approximately an eighth of an inch.  (*Id*. at 1076.)  Mr. Mintz corroborated that the metal cage distinguishes this fixture with a domed glass from a design perspective.  (Trial Tr. 1338, Oct. 27.)  Mr. Mintz also

stated that the metal framework serves to protect the shade and lamp, articulating that "a large object would be deflected by that wire guard, [although] a small object would not be." (*Id*. at 1412-13.)

This Court finds that the glass component: consists of a translucent glass lens with ridges; directs and softens light through diffusion; protects the lamp; protects the electrical components from wetness; contributes to the decorative appearance and structure. This Court finds that the metal component: consists of a backplate and cage of a black finish that constitutes the framework of the fixture; contributes to the decorative appearance and structure; houses the electrical components; establishes the fixture's scale; protects the glass shade and lamp; defines this fixture from design and marketability standpoints; and distinguishes this fixture as a bulkhead design. This Court finds the metal components are the most important for design and structure. Because this is an exterior fixture, this Court finds the glass component the most important for function and use.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 240-238 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

### 3.    LANTERN

This group of fixtures is known in the lighting industry as "lantern."[55]  The fixtures in this group are substantially identical.  (Trial Tr. 1317-18, Oct. 27.)  Lanterns are "intended for use in damp locations."  (*Id*. at 1319; *see also* Trial Tr. 87-88, Oct. 17.)  Without the glass component, these lantern fixtures are not protected from dampness.  (Trial Tr. 93, Oct. 17; Trial Tr. 1319, Oct. 27.)

### (a)    SKU 240-210 (Pl. Ex. W-17)

SKU 240-210 is an agreed upon representative SKU covering SKUs 240-216 and 280-746.  (Joint Report 3.)  SKU 240-210 is a "flush mounted, octagonal ceiling fixture, 11.5 inches across.  The fixture has a curved, translucent, frosted glass bowl held by black metal ribs extending from the mounting plate."  (Pl. Ex. W-17 at 1.)  The metal is cast aluminum.  (Trial Tr. 86, Oct. 17.)  Plaintiff produced as evidence a physical sample (Pl. Ex. 198), photograph (Pl. Ex. 137), and SKU information packet (Pl. Ex. 17).

Mr. St. John explained that this fixture is "French style" in that it is a "companion to the typical French exterior lantern."  (Trial Tr. 87, Oct. 17.)  Mr. St. John explained that this fixture would not be sold as an interior fixture because it has "a gothic feel to it."  (*Id*. at 94.)  Mr. St. John offered that this fixture had "rubber gaskets around the top where it adheres to the ceiling and another gasket on the inside that further weatherproofs the glass so that moisture and water can't get inside of it."  (*Id*. at 89.)  Therefore, Mr. St. John insisted the most important component was the glass.  (Pl. Ex. W-17 at 3.)

---

[55] Mr. St. John noted that this fixture is known as a "black exterior car port light" (Trial Tr. 1056, Oct. 26) while Mr. Mintz offered "lantern" as the industry term (Trial Tr. 1316, Oct. 27).  This Court uses Mr. Mintz' terminology.

The glass has a visible surface area of 90.3 square inches, which constitutes forty-one percent of the whole, and weighs 28.2 ounces, which constitutes forty-nine percent of the total weight. (Pl. Ex. W-17 at 1.) The metal has a visible surface area of 129.9 square inches, which constitutes fifty-nine percent of the whole, and weighs 25.9 ounces, which constitutes forty-five percent of the total weight. (*Id*.) This Court finds that the metal has greater visible surface area than the glass, but the metal and glass are nearly equal in weight. This Court also considers the factor "material's role in relation to the use of the good" as listed in the EN to GRI 3(b). While both the glass and metal "contribute[] to decorative appearance" and are "part of [the] structure," the glass further functions to direct and diffuse light, to protect the lamp, to shield the lamp from view, and to protect the electrical components from dampness. (*Id*.) However, from a design perspective, Mr. Mintz maintained that the glass shade and metal framework work together for the "overall appearance and function of the fixture." (Trial Tr. 358, Oct. 18.)

This Court finds that the glass component: consists of a translucent glass lens; comprises approximately two-fifths of the total visible surface area; weighs approximately one-half of the entirety of the fixture; directs and softens light through diffusion; protects the lamp; protects the electrical components from dampness; and contributes to the decorative appearance and structure. This Court finds that the metal component: consists of a backplate and cage of a black finish that constitutes the framework of the fixture; comprises approximately three-fifths of the total visible surface area; weighs approximately two-fifths of the entirety of the fixture; contributes to the decorative appearance and structure; houses the electrical components; mounts the fixture to the ceiling; protects the glass shade and lamp; establishes the fixture's scale; defines this fixture from design and marketability standpoints; and distinguishes this fixture as a

lantern. This Court finds the metal components are the most important for design and structure. Because this is an exterior fixture, this Court finds the glass component the most important for function and use. Therefore, this Court finds that both the glass and metal are equally important.

Upon careful consideration of the totality of these various factors, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that representative SKU 240-210 and its agreed upon represented SKUs 240-216 and 280-746 properly fall under HTSUS subheading 9405.10.80 through application of GRI 3(c).

(b)      SKU 113-861 (Pl. Ex. W-4)

SKU 113-861 and agreed upon representative SKU 280-746 are divisional SKUs. As discussed in the divisional SKU section above, this Court accepts Plaintiff's submission that SKUs113-861 and 280-746 are identical fixtures that received different SKU numbers when regional divisions placed orders. *See supra* § IV. Plaintiff produced as evidence a physical sample for SKU 280-746. (Pl. Ex. 204.) Because they are identical fixtures, this Court finds that SKUs113-861 and 280-746 must have the same classification. Furthermore, SKU 280-746 is an agreed upon represented SKU covered by the classification of SKU 240-210 (Joint Report 3), which has already been decided (see *supra* IV.B.3.1). This Court classified SKUs 240-210 and agreed upon represented SKU 280-746 under HTSUS subheading 9405.10.80 through

application of GRI 3(c).  Accordingly, this Court holds that SKU 113-861 also falls under

HTSUS subheading 9405.10.80 through application of GRI 3(c).

(c)    SKU 113-844 (Pl. Ex. W-3)

SKU 113-844 is a "[f]lush mounted, square ceiling fixture consisting of translucent glass

panes held by black metal ribs extending from the mounting plate, of similar finish."  (Pl. Ex. W-

3 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of an adequate

image of the fixture.  (Pl. Ex. 3.)  Mr. St. John advanced that SKU 113-844 is a one lamp version

of SKU 113-861.  (Trial Tr. 1057, 1061, Oct. 26.)

Upon examination of all the evidence, this Court finds that the SKUs 113-861 and 113-

844 are substantially identical fixtures.  This Court finds that one less lamp in an otherwise

identical fixture does not affect the essential character analysis.  Therefore, adopting and

applying the analysis of SKU 113-861 to SKU 113-844, this Court finds that both the glass and

metal are equally important.  Since both the glass and metal components merit equal

consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture.  *See,*

*e.g., Orlando*, 140 F.3d at 1442.  The applicable classifications are subheadings 9405.10.60 and

9405.10.80.  This Court notes that subheading 9405.10.80 occurs last in numerical order.

Accordingly, this Court holds that SKU 113-844 falls under HTSUS subheading 9405.10.80

through application of GRI 3(c).

(d)    SKU 280-706 (Pl. Ex. W-34)

SKU 280-706 is a "[f]lush mounted, square ceiling fixture consisting of translucent glass

panes held by white metal ribs extending from the mounting plate, of similar finish."  (Pl. Ex. W-

34 at 1.)  Plaintiff produced as evidence a SKU information packet consisting of a clear, color

image of the fixture.  (Pl. Ex. 34.)  Mr. St. John and Mr. Mintz testified that SKUs 113-861 and

280-706 are identical except for the finish.  (Trial Tr. 1058-59, Oct. 26; Trial Tr. 1317, Oct. 27.)

Upon examination of all the evidence, this Court finds SKUs 113-844 and 280-706 are

substantially identical fixtures.  This Court finds that a different finish on an otherwise identical

fixture does not affect the essential character analysis.  Therefore, adopting and applying the

analysis of SKU 113-844 to SKU 280-706, this Court finds that both the glass and metal are

equally important.  Since both the glass and metal components merit equal consideration, this

Court finds that application of GRI 3(c) is appropriate for this fixture.  *See, e.g., Orlando*, 140

F.3d at 1442.  The applicable classifications are subheadings 9405.10.60 and 9405.10.80.  This

Court notes that subheading 9405.10.80 occurs last in numerical order.  Accordingly, this Court

holds that SKU 280-706 falls under HTSUS subheading 9405.10.80 through application of GRI

3(c).

(e)      SKU 280-729 (Pl. Ex. W-35)

SKU 280-729 is a "[f]lush mounted, square ceiling fixture consisting of translucent glass

panes held by brass metal ribs extending from the mounting plate."  (Pl. Ex. W-35 at 1.)  Plaintiff

produced a SKU information packet consisting of a clear, color image of the fixture.  (Pl. Ex.

35.)  Both Mr. St. John and Mr. Mintz stated that SKU 280-729 is so similar to SKU 113-844

that their testimony is the same.  (Pl. Ex. W-34 at 3.)  Mr. Mintz testified that SKU 280-729

"appears to be substantially the same [as SKUs 113-861 and 280-706], although [SKU 280-729]

appears to be in a polished brass finish."  (Trial Tr. 1317-18, Oct. 27.)  Mr. St. John affirmed that

SKUs 280-729 and 280-706 are similar fixtures but for the finish on the metal.  (Trial Tr. 1062-

63, Oct. 26.)

Upon consideration of all the evidence, this Court finds that SKUs 280-706 and 280-729 are substantially identical fixtures. As noted above, this Court finds that a different finish on an otherwise identical fixture does not affect the essential character analysis. Therefore, adopting and applying the analysis of SKU 280-706 to SKU 280-729, this Court finds that both the glass and metal are equally important. Since both the glass and metal components merit equal consideration, this Court finds that application of GRI 3(c) is appropriate for this fixture. *See, e.g., Orlando*, 140 F.3d at 1442. The applicable classifications are subheadings 9405.10.60 and 9405.10.80. This Court notes that subheading 9405.10.80 occurs last in numerical order. Accordingly, this Court holds that SKU 280-729 falls under HTSUS subheading 9405.10.80 through application of GRI 3(c).

## CONCLUSION

In accordance with the foregoing findings of fact and conclusions of law, this Court concludes that the subject fixtures are classified under the proper HTSUS subheading as stated herein. In conclusion, the following chart[56] lists the SKU classifications in the order as discussed in the analyses:

---

[56] This chart is provided for convenience only and does not represent a finding by the Court. The Court's written opinion is controlling.

| | 9405.10.60 7.6 % duty | 9405.10.80 3.9 % duty | | |
|---|---|---|---|---|
| SKUs classified by GRI 3(b) (essential character) | 482-393 379-609 457-581 231-088 790-113 690-030 469-258 469-528 469-231 143-553 768-057 774-235 774-553 235-256 686-386 | 385-186 384-894 385-141 385-236 385-303 385-205 385-155 104-305 491-770 104-306 491-798 491-803 385-477 385-544 384-961 491-784 794-187 385-463 385-513 385-334 385-365 385-446 284-604 385-589 385-608 385-625 385-673 385-690 | 385-706 385-740 385-768 385-771 494-935 494-949 385-432 385-429 385-396 369-692 522-787 828-726 828-734 361-570 361-617 361-620 361-634 361-651 361-665 586-307 385-091 385-057 385-060 385-074 385-088 385-124 746-871 492-742 | 537-296 561-748 561-670 561-682 258-008 356-093 794-885 441-371 235-024 258-628 258-776 259-225 259-301 232-963 233-013 233-174 233-196 630-304 342-071 342-103 342-104 280-740 113-892 113-908 113-925 113-942 252-552 252-550 |
| SKUs classified by GRI 3(c) (default provision) | | 629-590 482-397 487-110 487-176 487-209 487-221 246-610 | 246-641 246-651 246-674 263-110 263-107 377-882 240-238 | 240-210 240-216 280-746 113-861 113-844 280-706 280-729 |
| SKUs subject to 28 U.S.C. § 2639(a)(1) (presumption of correctness stands) | 385-219 384-930 385-012 692-320 | | | |

Accordingly, this Court directs Customs to reliquidate the relevant entries to this litigation

consistent with this decision.


                                                     /s/ Gregory W. Carman
                                                    Gregory W. Carman
                                                    Judge


Dated: April 7, 2006
New York, New York